**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| N. K.<br><br>Plaintiff,<br><br>v.<br><br>ANTOINETTE CHOATE, and DAVID L. LEE, individually and in his capacity as the proprietor of the LAW OFFICES OF DAVID L. LEE,<br><br>Defendants. | ) | JURY DEMAND |

# COMPLAINT

Plaintiff N. K. ("Plaintiff"), by her undersigned attorneys, states the following as her Complaint against Defendants Antoinette Choate and David Lee:

## NATURE OF THE ACTION

1. Plaintiff brings this action against her former attorneys for breaches of fiduciary duty and professional negligence arising out of Defendants' representation of Plaintiff in connection with claims for violations of various federal statutes set forth more fully below. Defendants demanded that Plaintiff assign to them any and all of Plaintiff's claims for attorneys' fees which Plaintiff asserted against her former employer, *i.e.,* a provider of consulting services to businesses (hereafter "Employer"). Defendants demanded such assignment as a pre-condition to their representation but did not advise Plaintiff that such assignment had been held void by two federal Courts of Appeal over the past 10 years, violated public policy generally and, specifically, the Illinois Rules of Professional Conduct relating to conflicts of interests. Shortly after Defendants commenced their representation of the Plaintiff, Employer tendered an Offer of Judgment under F.R.Civ.P 68. At that time, Defendants had taken no discovery and had done

nothing to prepare the case for trial, but insisted that Plaintiff accept an inadequate settlement that would provide Defendants with nearly $100,000 in attorneys' fees. When Plaintiff questioned the wisdom of the recommendation to settle, Defendants breached their fiduciary duties and failed to meet the standard of care by, *inter alia*:

- threatening to withdraw their representation if Plaintiff did not accept the settlement;
- threatening to enforce the assignment to Plaintiff's detriment if Plaintiff did not accept the settlement;
- failing to adequately analyze and provide appropriate advice concerning Plaintiff's damage claims;
- failing to adequately analyze and/or properly advise regarding Plaintiff's likelihood of defeating any motion for summary judgment that might be filed by Employer;
- failing to adequately analyze and/or properly advise regarding Plaintiff's likelihood of success at trial; and
- improperly retaining funds belonging to Plaintiff for more than 20 months after Defendants forced Plaintiff to settle.

## PARTIES

2. Plaintiff N.K. is a Massachusetts citizen residing in Worcester County, MA. Plaintiff is well-known to the Defendants and their counsel. Plaintiff is identified here by her initials in order to protect her privacy because, *inter alia,* Defendants failed to take adequate measures to protect Plaintiff's privacy, reputation and professional standing during their representation of her and such failures have and may continue to have deleterious effects upon

Plaintiff. Defendants expressly acknowledged Plaintiff's privacy interests in their Retention Letter, will not be harmed by the designation of Plaintiff by pseudonym and should, accordingly be estopped from raising objection to such designation here.

3. Defendant Antoinette Choate ("Choate) is an Illinois citizen residing and practicing law within this judicial

4. Defendant David L. Lee ("Lee") is an Illinois citizen residing and practicing law within this judicial district under the auspices of the "Law Offices of David L. Lee."

5. At all relevant times, Choate co-counselled with Lee and is legally responsible for the all of tortious conduct of both Defendants. Hereafter and whenever practical the Defendants are jointly referred to as "Choate."

## JURISDICTION AND VENUE

6. Jurisdiction is founded upon 28 U.S.C. §1332. The parties are citizens of different states and the amount in controversy exceeds $75,000 excluding interest and costs.

7. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) & (2). Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to the claims asserted here occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### A. The Underlying Claims for Discrimination.

8. Plaintiff worked for Employer as a business consultant between 2008 and 2010. During such time, Plaintiff was exposed to inappropriate and highly offensive sexually-related comments from her direct supervisor. Such conduct was observed by at least one of the clients which Plaintiff and Employer were serving. In fact, the client raised its concerns with Employer's management prior to the time that Plaintiff brought the matter to Employer's

attention. Ultimately, Plaintiff formally complained about such conduct and the negative impact it was having on her ability to perform her duties. Employer did not respond to her complaint appropriately. Rather, within a few days, Employer retaliated against her by retroactively downgrading her performance evaluations and putting her in its process to terminate her employment. In the following months, Employer's Human Resources department, along with certain partners and senior directors of the firm as well as Employer's chief security officer, engaged in a concerted scheme to cause grave damage to Plaintiff's professional career and contrive pretenses to fire her.

9. Employer's unlawful conduct had a deleterious effect on Plaintiff during her employment and, as a result, she sought to exercise her rights under the Family and Medical Leave Act ("FMLA"). Plaintiff was terminated, without cause, almost immediately after she sought to exercise those rights.

10. Thereafter, Plaintiff filed a Complaint against Employer for violations of the Family and Medical Leave Act ("FMLA"); Unlawful Retaliation in response to her assertion of rights under the FMLA; violations of Title VII (discrimination on the basis of sex and creation of a hostile working environment); Unlawful Retaliation in response to her assertion of rights under Title VII; violation of Americans with Disabilities Act ("ADA"); and Unlawful Retaliation in response to her assertion of rights under the ADA.

11. At the time her Complaint was filed, Plaintiff was represented by an attorney who is not the subject of the instant Complaint. The original attorney drafted and filed Plaintiff's Complaint and conducted a limited amount of discovery. Thereafter, the original attorney withdrew from the case.

B. Plaintiff's Retention of Choate.

12. After the original attorney withdrew, in the fall of 2013, Plaintiff interviewed Choate and Lee. Choate assured Plaintiff that she and Lee would move forward to trial and expressly confirmed that they would not withdraw or threaten to withdraw if Employer refused to make a settlement offer which Plaintiff found acceptable. Upon such assurance, Plaintiff retained Choate and Lee on or about January 9, 2014. At that time, Choate tendered to Plaintiff a retention agreement for Plaintiff's review and execution. (A redacted copy of the Retention Agreement is attached hereto as Exhibit A.) The material terms of that Retention Agreement, for purposes of the instant Complaint, included:

- As an absolute pre-condition to proceeding with the case, Choate insisted upon an "advance payment" retainer of $20,000 which she would treat as earned when received;
- In addition to the advance payment retainer, Choate insisted upon a fee of one-third of any settlement or judgment above $40,000 (thereby, applying a 50% contingent fee to the first $40,000 recovered despite having eliminated the risk of payment for the first $20,000 in fees earned);
- Choate also required an additional $10,000 cost retainer which Choate referred to as a "war chest." The "war chest" would be held in a trust account to pay for anticipated expenses, which Choate identified could include expert witness fees, court reporter services at depositions and trial, and fees necessary to conduct a mock trial. The "war chest" was to be readily available to Choate so that she could demonstrate to Employer that she was prepared to "fight hard" and to convince Employer to offer a settlement that Plaintiff was "willing to accept;"

- Choate expressly stated to Plaintiff that their representation would continue "through trial";
- Choate expressly disclaimed any duty, obligation or responsibility to enforce upon or collect any judgment which they might obtain as a result of a trial even though Employer was a highly-solvent concern;
- Choate expressly acknowledged that their duties were governed by the Illinois Rules of Professional Conduct ("RPC") and incorporated such Rules into the Retention Agreement.

13. Moreover, the Retention Agreement also required that Plaintiff execute an "Assignment of Claim for Attorneys' Fees" ("Purported Assignment")(a redacted copy of which is attached hereto as Exhibit B). Choate sought the Purported Assignment in order to obtain a complete transfer of all of Plaintiff's rights and claims to attorneys' fees available to her pursuant to the federal statutes which she asserted Employer had violated.

14. Choate never discussed with Plaintiff the terms or significance of the Purported Assignment, never gave Plaintiff any advice about the rights which she required Plaintiff to assign, never identified any potential conflict of interest that would be created by the Purported Assignment, never advised Plaintiff to seek independent legal advice concerning the Purported Assignment, and never advised Plaintiff that federal courts had, over the past 10 years, held that such Purported Assignments are void. Moreover, Choate never advised Plaintiff about the potential negative consequences that the Purported Assignment could impose upon Plaintiff's legal rights.

15. Choate further failed to consider whether the Purported Assignment would place her in a potential conflict with her client, and also failed to consider the mandates of Illinois Rule

of Professional Conduct 1.8 (a) & (i) concerning the particular procedures required to address any potential conflicts.

C. Choate' Subsequent Representation of Plaintiff.

16. Choate and Lee filed their appearance in the case on January 21, 2014. Two days later, Choate obtained an Order from the District Court extending the deadline to take discovery to August 5, 2014 and extending the deadline to file dispositive motions on or before September 2, 2014. The same Order set a trial date for February 23, 2015.

17. Despite Choate' insistence upon a $20,000 advance payment retainer and a $10,000 "war chest" to cover the expenses associated with depositions, expert witnesses and a mock trial, and her express representation that she would pursue an aggressive strategy to either convince Employer to pay a settlement acceptable to Plaintiff or take the case to trial, Choate failed to undertake any of the activities reasonably necessary to provide zealous representation. As examples, Choate never took the deposition of the principal antagonist in the case (the immediate supervisor who created the hostile work environment), never took the deposition of Employer's Chief Security Officer (who headed up a purported internal "investigation" that was focused on attempts to cover up or justify Employer's conduct), never took the deposition of the Rule 30(b)(6) representative of Employer, never conducted interviews or depositions of other material witnesses who had obviously relevant information, never moved to compel the production of documents that Employer had improperly refused to produce, never moved to compel testimony that Employer improperly asserted was protected by attorney-client privilege, failed to retain any consultant or expert witness in the case and failed to make any arrangements for a mock jury trial to test potential avenues of presenting her case most persuasively.

18. On or about April 2, 2014, Employer presented Plaintiff with a Rule 68 Offer of Judgment. In that Offer of Judgment, Employer offered to pay Plaintiff a modest sum (a fraction of Plaintiff's damage claims) and to further pay Choate and Lee an amount to be determined by agreement or pursuant to a fee petition to be filed in the District Court if Plaintiff accepted the Offer. At that time, Choate and Lee had expended little time on the case and failed to communicate to the Plaintiff what work, if any, had been or was being performed on her behalf.

19. Prior to, and after receiving, the Offer of Judgment, Choate failed to adequately analyze the range of Plaintiff's potential award for damages available under the seven separate causes of action she alleged, and failed to independently evaluate Plaintiff's likelihood of defeating any possible motion for summary judgment (due no later than September 2, 2014) and/or her likelihood of success at trial and range of potential verdicts.

20. In the ensuing days, Choate and Lee discussed the effect of the Offer of Judgment with Plaintiff. However, their primary focus in explaining Rule 68 to Plaintiff was to explain that if the case went to trial and Plaintiff received a favorable judgement in an amount less than the Offer of Judgment, Choate and Lee would only be able to petition the District Court for attorneys' fees incurred before the Offer of Judgment was tendered.

21. Choate's explanation of the terms of the Offer of Judgment did not include any disclosure that Choate had a conflict of interests with the Plaintiff while advising Plaintiff regarding her acceptance or rejection of the Offer: If the case settled, Choate was guaranteed a fee. However, if the case proceeded to trial – as Plaintiff expressly discussed prior to retaining Choate – Choate's fees in excess of the $20,000 retainer already collected were at risk. Choate might earn a lower fee than she anticipated collecting through the Offer of Judgment/settlement

process, or she was at risk of earning no fee other than $20,000 fee which Plaintiff had already paid as a precondition to Choate's appearance in the case.

22. Choate did not suggest that Plaintiff seek independent legal counsel concerning this conflict. When Plaintiff identified the conflict on her own, Choate and the other attorney denied the existence of any possible conflict of interest.

23. As the mid-April deadline to accept the Rule 68 Offer of Judgment approached, Choate demanded that Plaintiff accept the Offer, even though the Offer comprised a small fraction her potential damage claims. At that time, and for the sole purpose of coercing Plaintiff to accept the Rule 68 Offer so that Choate would be freed from undertaking the work necessary to conduct further necessary discovery and effectively prepare the case for trial, Choate presented Plaintiff with a purported damages analysis that was legally and factually flawed and provided estimates that were substantially lower than the potential damages that could be awarded at trial. In particular, the analysis:

- miscalculated Plaintiff's claim for back pay through the date of trial;
- failed to consider Plaintiff's claim for front pay;
- failed to consider Plaintiff's claim for compensatory damages cognizable in some of the pending claims; and
- failed to consider Plaintiff's claim for liquidated damages cognizable pursuant to certain other of the pending claims.

At bottom, Plaintiff's potential damage claims at the time exceeded $2,000,000 plus the attorneys' fees actually incurred. But after Employer made the Offer of Judgment, Choate advised Plaintiff for the first time that Choate believed that Plaintiff would not realize more than

a tiny fraction of that amount. Previously, Choate and Lee advised Plaintiff that the case could have significantly greater value in light of Employer's egregious conduct.

24. Moreover, Choate's attempts to compel Plaintiff to accept the Offer included her express advice that her damage claims would likely be rejected by a jury because of the purported "paper trail" relating to a mediation conducted while prior counsel represented the Plaintiff. Choate told Plaintiff that she believed that:

- Employer would assert that Plaintiff agreed to settle in that mediation;
- Employer would further assert that Plaintiff agreed to settle for an amount less than the Offer of Judgment; and
- Employer would also assert that Plaintiff then reneged on the purported settlement which had been consummated in mediation.

Choate's discussion of the mediation process was woefully uninformed. First, Plaintiff never agreed to settle in any amount at the mediation and hence could not have reneged on the purported settlement. More troublingly, Choate's advice that these "facts" could be used adversely against the Plaintiff was expressly contrary to both F.R.Evid. 408 and the Illinois Mediation Act. Indeed, both the federal rule and the Illinois statute prohibit any reference to, or disclosure about, efforts to settle in mediation.

25. Choate further threatened to withdraw from her representation if Plaintiff did not accept the Offer, because such refusal, in the face of Choate's "strong advice" that rejecting the Offer was "unwise, unreasonable, and will hurt you in the long run" and would render Choate's ability to represent Plaintiff "unreasonably difficult." Choate told Plaintiff that if she did not accept the Offer, Choate's "usefulness as [Plaintiff's] lawyer[] would be at an end" and that Choate would promptly seek to withdraw from her representation. Choate further advised

Plaintiff that if she withdrew, Plaintiff would not be able to retain successor counsel because Plaintiff had executed the Purported Assignment (giving Choate an absolute right to control any claim for attorneys' fees) and because Choate had an effective lien on any monies which would be available to pay successor counsel's fees.

26. Plaintiff did not accept the Offer of Judgment, and Choate did not withdraw in April, 2014. Rather, on April 14, 2014, Choate joined a purported Agreed Motion to extend fact discovery with Employer's counsel. Choate never discussed the purported Agreed Motion with the Plaintiff nor sought Plaintiff's informed consent to Employer's proposed extension of discovery deadlines. Moreover, the Agreed Motion that was presented to the Court contained material false and/or deceptive statements, including but not limited to representations that

a) "[s]ince January 23, 2014, the parties have diligently proceeded with fact discovery" and

b) "the parties succeeded in resolving numerous discovery issues and narrowing their disputes."

Choate never informed Plaintiff that any additional discovery had been conducted, and never discussed with Plaintiff either the discovery disputes referenced in the Agreed Motion nor of the purported resolution of such disputes.

27. Rather, as alluded to above, Choate failed to seek the production of documents improperly withheld; failed to test Employer's assertion of the applicability of the attorney-client privilege to Employer's conduct and purported investigation of Plaintiff's charges; failed to take numerous depositions of witnesses with first-hand knowledge of Employer's conduct; failed to fully investigate and document the most egregious of Employer's conduct in its attempt to intimidate and harass the Plaintiff after she complained about her supervisor's conduct (including

attempts to intimidate Plaintiff by retaining private investigators and/or independent contractors with the intent of threatening the peace in her home); failed to investigate and document Employer's mis-use of the Plaintiff's social security number to open up an accounts in her name with venders/provider and otherwise shirked her professional duties to develop evidence that would be useful both in settlement negotiations and at trial.

28. Prior to the entry of the "agreed" motion, Plaintiff did not provide informed consent for Choate to enter into any agreement which would defer Choate's obligation to conduct discovery and prepare the case for trial.

29. After Choate successfully urged the District Court to defer discovery, Choate demanded that the Plaintiff accede to a minimal increase of settlement authority. Choate represented to Plaintiff that this new settlement authority was at the upper range of what she might expect to recover at trial when taking into account all risks, which included a 50% risk of losing a summary judgment motion and a 30% risk of losing at trial, leaving her with "only" a 20% chance of prevailing on the merits. That risk analysis was patently flawed, since it artificially reduced Plaintiff's likelihood of succeeding at trial if no summary judgment motion were brought or was denied by the District Court. (By Choate's own logic, if Employer failed to assert a timely summary judgment motion or if such a motion was made and denied, Plaintiff's likelihood of succeeding at trial was 70%.) Moreover, and as noted above, Choate's damage analysis failed to take into account a complete assessment of all of the back pay, front pay, compensatory damages and liquidated damages which Plaintiff could have been awarded at trial.

30. Plaintiff continued to refuse to settle, and directed Choate to prepare for trial, but Choate did not take any action to prepare the case for trial.

31. In July, 2014, Choate joined Employer's counsel in an "Emergency Motion" to extend the deadlines for both discovery and summary judgment motions. That motion repeated the mis-representation that Choate had conducted "additional discovery." Plaintiff was not advised that her attorney would join such a motion and neither consented to nor authorized such a motion. Indeed, Choate's willingness to extend the time by which Employer might make a motion for summary judgment was inherently adverse to Plaintiff's interests. The trial court extended the deadline to complete all discovery for 30 days past the August 5, 2014 deadline, to September 4, 2014. The dispositive motion deadline (September 2, 2014) was not extended, and thus the District Court placed the responsibility on counsel to prepare the case for trial and placed substantial time pressure on Employer if it wished to proceed on any summary judgment motion.

32. Choate did nothing to take discovery or to consult with an expert after the July, 2014 motion was presented. Rather, Choate decided not to take further discovery or hire any consultants or experts. Choate made such decisions without obtaining Plaintiff's informed consent.

33. Rather than preparing the case for trial, and in order to exert maximum pressure upon Plaintiff to settle, Choate repeatedly threatened to withdraw from the case through September, 2014. Ultimately, Choate sent Plaintiff an email threatening to "seek [the Court's] permission to withdraw as your lawyers" and further threatening to "enforce to the full extent of the law our [sic] attorneys lien, your claim for [sic] attorneys fees that you assigned us, and any other rights we have in this situation." (A redacted copy of that email is attached hereto as Exhibit C.)

34. In the face of inaccurate and unfounded "advice" and as a result of Choate's violation of numerous Rules of Professional Conduct (as listed below), Plaintiff relented to Choate's various threats and pressures and "agreed" to an unacceptable settlement by which she would be paid a small fraction of her damage claims and Choate would be paid $99,500 for her minimal work on the case. The purported settlement was entered into without Plaintiff's informed consent and over her express objections – objections which were addressed by Choate with inaccurate legal advice, material non-disclosures and improper threats.

35. In negotiating the terms of the Settlement Agreement, Choate failed to adequately appreciate and protect Plaintiff's interests in the non-monetary terms of the Settlement Agreement. In particular, Choate failed to properly protect Plaintiff's privacy, professional reputation and ability to circulate freely in the consulting community. Choate recommended that Plaintiff agree to disclose to any future employer that she would be unable to work on matters which in any way related to her former employer or any of its clients. Given the nature of Plaintiff's training and interests, her future prospects were severely limited by this provision in the Settlement Agreement.

36. Plaintiff executed the Settlement Agreement on or about October 16, 2014, as a result of Choate' inappropriate threats, breaches of fiduciary duties and breaches of the standards of care required of Illinois attorneys under the circumstances.

37. Choate has never supplied Plaintiff with an itemized list of time and expenses incurred in connection with her representation nor did Choate undertake any effort to demonstrate the reasonableness of the fee which Choate received.

38. Choate did not expend any of the $10,000 cost retainer, i.e., the "war chest" which Choate insisted upon at the outset of the representation. Moreover, she failed to return

this "war chest" to Plaintiff when the settlement was reached in October, 2014, and did not return such funds until June, 2016 – only after Plaintiff's repeated demands for the funds and for all materials relating to Choate's representation.

39. Indeed, as of the date of filing, Choate has refused to supply Plaintiff with her file, including but not limited to emails between Choate and counsel for Employer, the back-up for Choate's alleged damage and liability analyses, and any materials which could support or justify the $99,500 fee which Choate received.

<u>COUNT I: BREACH OF FIDUCIARY DUTY</u>

1-39. Plaintiff realleges and incorporates paragraphs 1-36 of her Complaint as paragraphs 1-39 of this Count I as if fully set forth herein.

40. No later than the time she received Plaintiff's executed Retention Agreement, Choate assumed all of the fiduciary duties which the law imposes upon the attorney-client relationship. Those fiduciary duties included, but were not limited to, full compliance with the duties identified in the Illinois Rules of Professional Conduct – duties which Choate expressly recognized were applicable to her representation of the Plaintiff when she expressly incorporated such terms in the Retention Agreement.

41. Choate either intentionally or negligently (as will be shown by the evidence and determined by a jury at trial), breached numerous Rules of Professional Conduct ("RPC"), and fiduciary duties owed to Plaintiff:

a. She failed to obtain Plaintiff's informed consent concerning most aspects of her representation in violation of RPC 1.0(e)("'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has

communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.");

b. She failed to provide reasonable counsel and/or to provide competent legal advice concerning matters about which Choate accepted professional responsibility in violation of RPC 1.0(h)(" 'Reasonable' or 'reasonably' when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.) 1.0(j)(" 'Reasonably should know' when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.);

c. She failed to provide competent representation in connection with her advice concerning damages, likelihood of success at summary judgment or trial or the proper protection of the client's interests in violation of RPC 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.");

d. She failed to abide by her client's decisions concerning the objectives of representation and failed to abide by her client's decision whether to settle a matter in violation of RPC 1.2 ("a lawyer shall abide by a client's decisions concerning the objectives of representation and … shall abide by a client's decision whether to settle a matter.");

e. She failed to act with reasonable competence and reasonable diligence in violation of RPC 1.1 and 1.3 by, *inter alia*, failing to take any discovery or retain any consultants or expert witnesses as she expressly advised the Plaintiff she would do, thereby failing to prepare the case for trial;

f. She failed to properly inform Plaintiff regarding all of the circumstances necessary to obtain Plaintiff's informed consent and failed to explain matters to Plaintiff accurately enough to permit her to make informed decisions regarding her representations in violation of RPC 1.4;

g. She charged an unreasonable fee in light of the size of the fee ($99,500) compared to the limited amount of work performed in violation of RPC 1.5;

h. She failed to disclose conflicts of interest and adverse consequences to her client resulting from the Purported Assignment at the time she required Plaintiff to execute the Purported Assignment; failed to advise Plaintiff that she had a right to seek the advice of independent legal counsel concerning such adverse consequence, failed to inform her that the Purported Assignment was void and unenforceable, and asserted the Purported Assignment as a property right which she would enforce to Plaintiff's detriment if Plaintiff refused to accept the settlement which Choate sought to impose upon her in violation of RPC 1.4(b) and 1.8(a);

i. She demanded the Purported Assignment as a condition of representation, and acquired a pecuniary interest in the subject matter of the litigation, in violation of RPC 1.8(i);

j. In further violation of the Rules, she failed to identify and advise concerning the potential conflicts of interest raised by the Purported Assignment when Employer made the Offer of Judgment and when Employer made future offers to settle;

k. She failed to safeguard Plaintiff's cost retainer in a separate and identifiable Trust account and failed to return such funds, or take diligent efforts to return such funds, at the conclusion of Choate's representation in violation of Rule 1.15;

l. She threatened to withdraw as Plaintiff's counsel knowing that any attempted withdrawal would result in a material adverse effect on Plaintiff's interests is violation of RPC 1.16;

m. She threatened to withdraw as Plaintiff's counsel without disclosing Choate's obligations and Plaintiff's rights under RPC 1.16, including the fact that a Court would independently evaluate whether withdrawal was appropriate under the circumstances and the fact that the Court could enforce her authority to decide whether to settle and require Choate to continue to represent her, in violation of RPC 1.2(a) and 1.16(c);

n. She failed to advise Plaintiff that if she were permitted to withdraw, or required to withdraw as a result of the conflicts of interest associated with her enforcement of the Assignment, her contingent fee agreement and statutory lien would be unenforceable and, pursuant to RPC 1.5(e)(2), Choate would not be permitted to share any fees resulting from the service of subsequent counsel without Plaintiff's written consent to the division of any such fee; and

o. She utterly and completely failed to represent Plaintiff competently and diligently, or prepare the case in a manner that maximized Plaintiff's leverage in any settlement discussions.

42. At bottom, Choate failed to perform the work which the scope of her engagement required, failed to properly prioritize the client's objectives over her own desire for a quick and largely unearned fee, and coercively asserted her interests through either intentional or negligent misstatement or non-disclosure of the law. The coercive tactics described above demonstrate an abject abuse of her fiduciary duties owed to Plaintiff.

43. Because Choate owed fiduciary duties to Plaintiff, Choate bears the burden to prove that the settlement she imposed on Plaintiff, and the fee which she received, were "fair in fact" to Plaintiff.

44. As a result of her breaches of fiduciary duty, Choate must be ordered to disgorge and return to Plaintiff any and all attorneys' fees collected in connection with her representation.

45. In addition, Choate is liable to Plaintiff for all of the damages which Choate should have reasonably anticipated, including, but not limited to:

a. An amount of damages and other favorable terms which Plaintiff would have obtained either i) after necessary discovery was completed, experts were consulted, the case were prepared for trial and competent settlement negotiations were conducted based on that work, or ii) at trial;

b. The foreseeable damages associated with Plaintiff's pain, suffering and emotional distress caused by Choate's coercive and abusive conduct and violations of her fiduciary duties, as described above, including the attorneys' fees incurred herein

c. The damages incurred in connection with the 20-month delay in returning Plaintiff's $10,000 cost retainer, i.e., the unused "war chest."

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee in an amount in excess of One Million Dollars ($1,000,000) and for such other and further relief as this Court deems appropriate.

COUNT II: PROFESSIONAL NEGLIGENCE

1-45. Plaintiff realleges and incorporates paragraphs 1-45 of her Count I as paragraphs 1-45 of this Count II as if fully set forth herein.

46. Choate entered into an attorney-client relationship with Plaintiff on or about January 9, 2014 and, pursuant to that relationship, entered her appearance in the Employer matter on January 21, 2014.

47. Choate owed professional duties to Plaintiff to accurately advise her concerning her claims, to competently and diligently represent her and to perform sufficient work to achieve reasonable results consistent with Plaintiff's objectives.

48. Choate breached the standards of care applicable in Cook County, Illinois and the Northern District of Illinois concerning a matter involving violations of federal statutes enacted to protect the Plaintiff's civil rights, by, *inter alia*:

a. Failing to take any discovery after she was retained or otherwise diligently prosecute Plaintiff's claims, including failing to comply with Court imposed deadlines and to prepare for a pretrial conference, and otherwise prepare the case for trial;

b. Failing to fully and adequately conduct legal research and ascertain facts necessary to prepare the case for trial and evaluate the strengths and weaknesses of the case when Choate agreed to handle the case;

c. Failing to take adequate steps to determine and ameliorate the possible adverse consequences of any error or weakness in the conduct or strategy of prior counsel which she should have determined existed during the time that discovery remained open;

d. Failing to adequately evaluate the various types of damages recoverable pursuant to each of the federal claims which Plaintiff' asserted, the likelihood of success at trial, and the "settlement value" of her claims;

e. Failing to adequately communicate with Plaintiff about the reasonableness of her objectives, the range of damages which she could reasonably expect to recover at trial, the likelihood of success at trial, and alternative settlement strategies;

f. Failing to identify and/or communicate regarding possible conflicts of interests between Choate and Plaintiff which arose at various times from the outset of the relationship through the end of the formal engagement in October, 2014;

g. Failing to advise Plaintiff of the advisability of seeking independent counsel concerning conflicts of interest and other matters that required her informed consent;

h. Failing to know the law applicable to the Purported Assignment and that it was void and unenforceable;

i. Failing to inform Plaintiff of the law applicable to the Purported Assignment;

j. Failing to recognize the conflicts of interest arising out of the Purported Assignment and as a result failing to advise Plaintiff of the existence of the conflicts;

k. Failing to prepare the case for trial;

l. Failing to advise Plaintiff regarding the likelihood that Employer would file a motion for summary judgment, given numerous genuine issues of material facts and the burdens and expense of preparing such motion before the soon approaching deadlines;

m. Failing to know that RPC 1.2(a) gives a client the absolute authority to decide whether to settle a matter;

n. Failing to properly account for and return client funds for more 18 months;

o. Failing to know and expressly advise Plaintiff that the Illinois Mediation Act absolutely barred disclosure and use of anything that occurred during mediation; and

p. Failing to know and advise Plaintiff regarding her obligations and Plaintiff's rights in the event Choate attempted to, or (as a result of a conflict of interest) was required to, withdraw pursuant to RPC 1.16(a)(1), (b)(1), (c) and (d).

49. As a result and proximate cause of such breaches of the standard of care applicable to attorneys practicing in Cook County and the Northern District of Illinois, Plaintiff has sustained substantial actual damages. Accordingly, Plaintiff seeks a refund of any and all attorneys' fees collected in connection with Choate's representation since, pursuant to PRC 1.5, any fee paid would be unreasonable.

50. In addition, Choate is liable to Plaintiff for all of the damages which Choate should have reasonably anticipated, including, but not limited to:

a. An amount of damages which Plaintiff would have obtained either at trial or as a result of a settlement (after discovery had been completed, experts had been consulted, the case had been prepared for trial, etc.) had Choate complied with the Rules of Professional Conduct and fulfilled the terms of the retention agreement by which she promised to either try the case or obtain a settlement that was acceptable to Plaintiff; and

b. The foreseeable damages associated with Plaintiff's pain, suffering and emotional distress caused by Choate's coercive and abusive conduct and violations of her fiduciary duties, as described above, including her attorneys' fees and costs incurred herein.

c. The damages incurred in connection with the 20-month delay in returning Plaintiff's $10,000 cost retainer, *i.e.*, the unused "war chest."

WHEREFORE, Plaintiff respectfully urges this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee in an amount in excess of One Million Dollars ($1,000,000) and for such other and further relief as this Court deems appropriate.

**COUNT III: FAILURE TO RETURN CLIENT'S MATERIALS AND FILES**

1-50. Plaintiff realleges and incorporates paragraphs 1-50 of her Count II as paragraphs 1-50 of this Count III as if fully set forth herein.

51. In May, 2016, Plaintiff instructed Choate and Lee to provide all of the files and material relating to her representation to the undersigned attorneys.

52. As of the date of filing of the instant Complaint, Choate and Lee have refused to provide any client-related materials to Plaintiff's current counsel.

53. Defendants' refusal to supply the materials relating to their representation to either Plaintiff or her counsel constitutes an additional breach of fiduciary duty owed by the Defendants.

54. Plaintiff is concerned that the materials relating to her representation have been altered, destroyed, modified and/or supplemented since her instruction to supply such materials to her current counsel.

55. These circumstances require that the Court impose requirements upon Defendants in addition to those contemplated by full compliance with F.R.Civ.P. 16 and 26.

56. Plaintiff respectfully urges this Court to enter a mandatory injunction, compelling Defendants to immediately deliver to Plaintiff's counsel all material relating to Defendants' representation of the Plaintiff and further requiring an accounting of the location and status of all materials relating to Defendants representation of the Plaintiff, including but not limited to production of all electronic media and the meta-data relating thereto; a listing of all dates after October 1, 2013 upon which emails or other materials were deleted and/or destroyed; and a listing of all dates after October 1, 2013 upon which the files related to Defendants' representation were modified, altered and/or supplemented.

WHEREFORE, Plaintiff respectfully urges this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee, to enter the injunction sought herein, to award Plaintiff her attorneys' fees and costs incurred in securing such injunction, for the entry of additional damages which may be proven at trial as a result of this breach of fiduciary duty, and for such further and other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on the claims set forth herein as well as any additional claims which may be filed in any amendment hereto.

Plaintiff N. K.

By: /s/ Alan J. Mandel
One of her attorneys

Alan J. Mandel
Joseph E. Tighe
ALAN J. MANDEL, LTD.
7520 Skokie Boulevard
Skokie, IL 60077
847-329-8450

Philip C. Stahl
P Stahl LLC
333 South Wabash Avenue
Suite 2700
Chicago, IL 60604
312-659-7406

**COMPLAINT**

# EXHIBIT A

# Law Offices of David L. Lee

53 W. Jackson Blvd.
Suite 801
Chicago, Illinois 60604-3437

Voice: 312-347-4400
Fax: 312-347-3272
staff@davidleelaw.com

David L. Lee, Attorney at Law

Jeffrey Bush, Law Clerk

January 9, 2014

re: REDACTED

Dear N.K. ,

Anne and I really enjoyed talking to you on the telephone. Employer treated you really badly, and I hope that Anne and I can help get you at least some compensation for the way Employer treated you.

This letter revises Anne and my January 2 letter based on your January 6 e-mail and your, Anne's and my telephone conference yesterday.

For our services, Anne and I will charge you $20,000 (i.e., $10,000 each) plus ⅓ of anything we recover for you over $40,000. The $20,000 fee is what Illinois law calls an "advance payment retainer". Any portion of this advance payment retainer that Anne and I do not earn (for example, should you change your mind and decide not to go through with the lawsuit immediately after we deposit your checks) will be refunded to you, even though the advance payment retainer becomes our property upon payment and will be deposited upon receipt to our operating accounts rather than to our trust accounts. Because of the time and effort Anne and I put into pursuing a lawsuit for you, we would not be willing to represent you without this advance payment retainer. The advantage to you in paying by an advance payment retainer rather than paying Anne and me hourly is that the advance-payment retainer limits your up-side risk of attorney's fees as compared to paying us hourly.

In addition to the attorney's fees, you are responsible for any expenses Anne and I incur on your behalf. As Anne and I explained to you, there easily could be additional expenses, depending on how hard we have to fight with Employer to convince them to give you what you want. If Employer fights this lawsuit very hard and is not willing to offer you a settlement that you are willing to accept, then the expenses of a lawsuit can be considerable and can include not only the expenses you've already paid by such additional expenses as witness subpoena fees, witness appearance fees, expert-witness fees, witness-travel fees, court-reporter appearance fees, court-reporter transcript fees, fees for the service of subpoenas, fees to put on a mock trial before mock jurors, travel (other than normal commuting), outsourced photocopying jobs, etc. As we discussed, these expenses could reach thousands and thousands of dollars. There is no way to predict how hard Employer will fight this lawsuit, so it is important you understand that you might have to spend $10,000 or more in additional expenses before Employer decides to offer you a settlement you are willing to accept.

Because it can be difficult to write a check for $1,000 or $2,000 on the drop-of-a-hat, I typically suggest that clients set-up a "war chest" through my trust account. Any trust account money that you send to me is your money; it will just be sitting in my trust account for me to pay the expenses of your lawsuit. If there is money left over after the expenses of your lawsuit have been paid, I will refund you the left-over money. No interest is paid to you on your trust fund account money, because the interest on lawyer trust accounts goes to legal charities, like Legal Aid.

For your lawsuit against Employer, Anne and I will require a "war chest" of $10,000 in my trust account before we will become your lawyers. If any time the money deposited to my trust account appears to Anne and me to be insufficient to cover the expenses of this lawsuit, then you will deposit an additional amount to my trust account based on Anne's and my estimate at the time of how much more of a "war chest" we will need. As I explained above, this is your money; it's just sitting in my trust account for Anne and me to pay the expenses, and I will refund you any money over the costs of the expenses of the lawsuit.

Anne and I will do our best to have Employer pay our attorney's fees and any expenses. If Anne and I do negotiate some fees as part of a settlement or if the judge makes Employer pay me some attorney's fees, we don't double-dip: any such fees that Anne and I receive will reduce, dollar for dollar, the attorneys' fee that you would otherwise owe Anne and me. (The one exception to this is that Anne and I will not offset against our fee any attorney's fees a judge awards us for researching, drafting, filing, arguing, or otherwise pursuing an attorney-fee petition.) By the same token, the fee Anne and I are charging you does not limit the amount of fees Anne and I may collect from Employer. This means that if Anne and I are paid a fee from Employer that is more than the $20,000 plus ⅓ over $40,000 that you would owe us, we would refund to you the $20,000 plus ⅓ over $40,000 and keep the entire fee paid by Employer.

As we also discussed, it is possible that you could never win any money in this lawsuit, never recover the money you spend on costs and expenses, and end up having lost money by bringing this lawsuit. You told Anne and me that you understood that. **This is crucial, because Anne and I will not represent you in this lawsuit unless you understand this.**

Because Anne and I am not tax lawyers, we cannot advise you as to the proper tax treatment of any money we recover, any attorney's fees and expenses that Employer pays us, and any attorney's fees and expenses that you pay. Therefore, Anne and I urge you to talk to a qualified tax professional about the proper tax treatment of these matters if and when it becomes relevant.

Unless you instruct Anne and me otherwise, we will, in our discretion, use information relating to our representation of you to help us represent you better by consulting with other lawyers, posting about your case on lawyer listservs, etc., and to help us represent other clients and future clients. With regard to helping Anne and me

market our law practices, we explained to you that describe the type of case without any information identifying you as part of our explanations of our general experience in various areas of the law. Before Anne or I used your name or any identifying information about you to market, we would get your permission first.

It is extremely important that Anne and I are able to contact you about your case. If your phone number, e-mail address, home address, fax number, or other contact information changes, you will let Anne and my offices know immediately. Similarly, if Anne's office or my office contacts you, you will contact us back in a reasonable amount of time or sooner if requested.

The fee Anne and I are quoting you and our agreement is just for us to represent you in this lawsuit through trial. Neither you nor Anne nor I are committed to filing any appeals or to enforcing any judgments.

Anne's and my duties as lawyers are governed by the Rules of Professional Conduct and other provisions of law, and this contract is subject to those Rules and provisions of law.

If you want to hire Anne and me to be your lawyer as set forth in this letter, then please print out the signature page and the Assignment of Claim for Attorney's Fees, sign and date them both where indicated, and mail them to me at my office: 53 W. Jackson Blvd., Suite 801 Chicago, IL 60604 along with your check for $30,000. Once Anne and I receive these back and your check clears the banking system Anne and I will be your lawyer as set out in this letter.

Please call or email Anne or me if you have any questions. I hope that the three of us will be working together on this lawsuit against Employer .

Very truly yours,

David

David L. Lee

**Agreed:**

____________________________ ______________________
N.K. Date

____________________________ ______________________
Antoinette Choate Date

**COMPLAINT**

EXHIBIT B

REDACTED

## Assignment of Claim for Attorneys' Fees

N.K. may become indebted to the Law Offices of David L. Lee and/or to Choate Law for attorneys' fees under a contract for legal services dated January 9, 2014.

For valuable consideration, receipt of which is hereby acknowledged, N.K. assigns to the Law Offices of David L. Lee all claims for attorneys' fees growing out of any claims that N.K. has or may have against Employer for wages, employee benefits, discrimination, retaliation, wrongful discharge, retaliatory discharge, tort, breach of statutory duty, breach of contract, or estoppel or for or under any lawsuit, administrative proceeding, or arbitration growing out of those claims.

This Assignment is binding upon N.K. and her successors and assigns, and inures to the benefit of the Law Offices of David L. Lee, Choate Law, their successors, and their assigns.

# Agreed:

______________________________ _________________________
N.K. Date

Notice mailed to Employer certified #

_________________________ _________________________
David L. Lee Date

**COMPLAINT**

EXHIBIT C

REDACTED

## Follow up to call

**Antoinette Choate** <choate@achoatelaw.com> Sun, Sep 21, 2014 at 7:44 PM
To: N.K.
Cc: David Lee <d-lee@davidleelaw.com>

N.K.

In a last-ditch effort to save our attorney/client relationship and conclude the settlement, David and I are available tomorrow morning at 10:00 Central time to discuss with you the terms of the Final Settlement Agreement as written in that Agreement. David and I will block out half-an-hour for that telephone conference.

To make that telephone conference as productive and efficient as possible, please e-mail David and me as soon as possible the specific terms of the Final Settlement Agreement that concern you and precisely what your concern is for each such term.

Should you continue to refuse to inform David and me which specific terms of the Final Settlement Agreement concern you and what your concern is for each such term, you would leave David and me no choice but to seek [the judge's] permission to withdraw as your lawyers. In that case, of course, David and we will enforce to the full extent of the law our attorneys lien, your claim for attorneys fees that you assigned us, and any other rights we have in this situation.

Anne

Sent from my iPhone