**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

N.K.                       )

           Plaintiff,       )

v.                          )   Case No. 1:16-cv-09415

ANTOINETTE CHOATE, and       )   Honorable Amy J. St. Eve
DAVID L. LEE, individually, and in his    )
capacity as the proprietor of the LAW    )
OFFICES OF DAVID L. LEE,        )

           Defendants.      )

## AMENDED COMPLAINT

Plaintiff, by and through her undersigned attorneys, states the following as her Amended

Complaint against Defendants Antoinette Choate and David Lee:

SUMMARY OF THE CLAIMS

1.      Plaintiff brings distinct and independent claims against her former attorneys for a)

breaches of fiduciary duty, and b) professional negligence arising out of defendants' joint

representation of Plaintiff concerning her claims for violations of various federal employment

discrimination statutes.  Those statutes provide the Plaintiff with personal, non-assignable right

to seek an award of attorneys' fees and expenses  Defendant's improperly demanded and

received an assignment of that personal right – an act which served as the catalyst for both

Plaintiff's breach of fiduciary and negligence claims, set forth below.

A. <u>Breach Of Fiduciary Duty</u>

2.      At the time of their retention, and as a condition of their retention, Defendants required Plaintiff to assign to them any and all of Plaintiff's claims for attorneys' fees which Plaintiff asserted against her former employer, *i.e.,* a provider of consulting services to businesses (hereafter "Employer").

3.      Neither of the Defendants advised Plaintiff that such assignment had been held void by two federal Courts of Appeal during the preceding 10 years and violated public policy and the Illinois Rules of Professional Conduct ("RPC").  Defendants' joint retention agreement specifically provided that their duties were governed by the RPC and their contract was subject to all of those rules.

4.      After Defendants commenced their joint representation of the Plaintiff, Employer tendered an Offer of Judgment under F.R.Civ.P 68.  At that time, Defendants had taken no discovery and had done nothing to prepare the case for trial, but insisted that Plaintiff accept Employer's offer.  The Offer of Judgment provided for:

a.      a fixed, liquidated payment to the Plaintiff which was to cover her damages, all expenses incurred to date and any fees owed to her prior counsel; and

b.      a separate payment to Lee and Choate of an unspecified amount which would be determined pursuant to a hearing before the District Court.

5.      When Plaintiff told Defendants that she did not want to accept the Rule 68 Offer, Lee and Choate each breached their fiduciary duties owed to the Plaintiff (demonstrated more fully in paragraphs 16-20, 28-31, 46-48 & 53 below), *inter alia:*

- failing to advise Plaintiff of, and instead violating, *inter alia,* RPC 1.2, 1.4, 1.5, 1.8 and 1.16;

2

- failing to recognize that the assignment which they required Plaintiff to execute created an inherent and non-waivable conflict of interest from the outset of their retention;

- failing to withdraw from their representation when the Employer's Offer of Judgment and the assignment demonstrated that the conflict of interest inherent in the retention agreement and assignment had matured into an actual conflict of interest which required Defendants to abandon their rights under the assignment and/or withdraw from their representation;

- refusing to abide Plaintiff's decision whether to settle her claims against Employer;

- threatening to withdraw their representation if Plaintiff did not settle;

- threatening to enforce the assignment to Plaintiff's detriment if Plaintiff did not settle;

- advising Plaintiff that if they withdrew their representation, she would not be able to retain new counsel because their rights under assignment substantially impaired any new attorney's ability to earn fees;

- failing to provide Plaintiff with sufficient information for her to provide informed consent to any settlement offer;

- forcing Plaintiff to settle;

- treating Plaintiff in a manner that caused her to suffer emotional distress and psychological injury – separate and apart from the injuries complained of in her suit against Employer -- when they knew from the onset of their representation that such breaches of fiduciary duty were likely to cause new injuries and

exacerbate existing vulnerabilitiesn unrelated to her pecuniary losses about which Defendants had unique knowledge; and

- improperly retaining funds belonging to Plaintiff for more than 20 months after Defendants forced Plaintiff to settle.

B. <u>Professional Negligence</u>

6.      In addition to the breaches of fiduciary duty summarized above, and as separate and independent conduct giving rise to an independent claim, the Defendants failed to meet the standard of care in their roles as litigation attorneys representing a plaintiff in an employment discrimination case.  The Defendants breached the standard of care owed to the Plaintiff by, *inter alia (see, e.g.,* paragraphs 21-27, 31-36 & 39-45 below):

- failing to conduct interviews and/or take the depositions of several key witnesses or persons with knowledge of facts and events pertinent to Plaintiff's claims;
- failing to move to compel the disclosure of information that Employer improperly refused to produce;
- failing to move to compel the disclosure of information that the Employer improperly asserted was protected by attorney-client privilege;
- failing to adequately analyze and provide appropriate advice concerning Plaintiff's damage claims;
- failing to adequately analyze and/or properly advise regarding Plaintiff's likelihood of defeating any motion for summary judgment that might be filed by Employer;
- failing to consult with or engage expert witnesses regarding Plaintiff's claims, Employer's conduct and Plaintiff's damages; and
- failing to prepare the case for trial.

<u>PARTIES</u>

7.      Plaintiff Nagin Kormi is a Massachusetts citizen residing in Worcester County, MA.

8.      Defendant Antoinette Choate ("Choate") is an Illinois citizen residing and practicing law within this judicial district.

9.      Defendant David L. Lee ("Lee") is an Illinois citizen residing and practicing law within this judicial district under the auspices of the "Law Offices of David L. Lee."

10.      At all relevant times, Choate and Lee jointly represented the Plaintiff.  Neither communicated any separation of duties, responsibilities or compensation due.  Both Defendants actively participated in their representation and jointly participated in the actions complained of here.  Each Defendant is legally responsible for the conduct and any breach of fiduciary duty or professional negligence of the other and damages Plaintiff sustained as a result.

<u>JURISDICTION AND VENUE</u>

11.      Jurisdiction is founded upon 28 U.S.C. §1332.  The parties are citizens of different states and the amount in controversy exceeds $75,000 excluding interest and costs.

12.      Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) & (2).  Defendants reside in this judicial district and a substantial part of the events and omissions giving rise to the claims asserted here occurred in this judicial district.

<u>ADDITIONAL FACTS RELEVANT TO THE CLAIMS</u>

A.  <u>The Underlying Allegations and Claims of Discrimination.</u>

13.      Plaintiff worked for Employer as a business consultant between 2008 and 2010. During such time, Plaintiff was exposed to inappropriate and highly offensive sexually-related comments from her direct supervisor.  Within days of the time when Plaintiff submitted a formal,

written complaint about such conduct, and the negative impact it was having on her ability to perform her duties, Employer retaliated against her by retroactively downgrading her performance evaluations and putting her in its process to terminate her employment.

14.     In the following months, Employer's Human Resources department, along with certain partners and senior directors of Employer, engaged in a concerted scheme to cause grave damage to Plaintiff's professional career and contrive pretenses to fire her.

15.     Employer's unlawful conduct had a deleterious effect on Plaintiff during her employment and, as a result, she sought to exercise her rights under the Family and Medical Leave Act ("FMLA").  Plaintiff was terminated, without cause, almost immediately after she sought to exercise those rights.

16.     Thereafter, Plaintiff filed a Complaint against Employer for violations of the Family and Medical Leave Act ("FMLA"); Unlawful Retaliation in response to her assertion of rights under the FMLA; violations of Title VII (discrimination on the basis of sex and creation of a hostile working environment); Unlawful Retaliation in response to her assertion of rights under Title VII; violation of Americans with Disabilities Act ("ADA"); and Unlawful Retaliation in response to her assertion of rights under the ADA.

17.     At the time her Complaint was filed, Plaintiff was represented by an attorney who is not the subject of the instant Complaint.  The original attorney drafted and filed Plaintiff's complaint and conducted some discovery.  Thereafter, the original attorney withdrew from the case.

B. <u>Plaintiff's Retention of Lee and Choate.</u>

18.     After the original attorney withdrew, in the fall of 2013, Plaintiff interviewed

Choate and Lee.  Choate and Lee assured Plaintiff that they would move forward to trial and

expressly confirmed that they would not withdraw or threaten to withdraw if Employer refused

to make a settlement offer which Plaintiff found acceptable.  Upon such assurance, Plaintiff

retained Choate and Lee on or about January 9, 2014.  At that time, Choate and Lee tendered

Plaintiff a retention agreement to engage both Choate and Lee for Plaintiff's review and

execution.  (A redacted copy of the Retention Agreement is attached hereto as Exhibit A.)  The

material terms of that Retention Agreement, for purposes of this Amended Complaint, included:

    a)  as an absolute pre-condition to their joint representation, Choate and Lee required
        an "advance payment" retainer of $20,000 which they would treat as earned when
        received and divide between themselves as they deemed appropriate;

    b)  in addition to the advance payment retainer, Choate and Lee insisted upon a joint
        fee of one-third of any settlement or judgment above $40,000 (thereby, applying a
        50% contingent fee to the first $40,000 recovered despite having eliminated the
        risk of payment for the first $20,000 in fees earned);

    c)  Choate and Lee also required an additional $10,000 cost retainer which
        Defendants referred to as a "war chest."  The "war chest" would be held in a trust
        account to pay for anticipated expenses, which Choate and Lee stated could
        include expert witness fees, court reporter services at depositions and trial, and
        fees necessary to conduct a mock trial.  The "war chest" was to be readily
        available to Defendants so that they could demonstrate to Employer that Plaintiff
        was prepared to "fight hard" and to convince Employer to offer a settlement that

Plaintiff was "willing to accept" and that Plaintiff had the resources to take

Plaintiff's case to trial;

d)  Choate and Lee expressly stated to Plaintiff that their representation would

continue "through trial";

e)  Choate and Lee expressly disclaimed any duty, obligation or responsibility to

enforce upon or collect any judgment which they might obtain as a result of a trial

even though Employer was a highly-solvent concern;

f)  Choate and Lee agreed that their duties were governed by the RPC and that their

Retention Agreement would at all times be subject to those rules.

19.     The Retention Agreement also required that Plaintiff execute an "Assignment of

Claim for Attorneys' Fees" ("Purported Assignment")(a redacted copy of which is attached

hereto as Exhibit B).  Choate and Lee required the Purported Assignment in order to obtain a

complete transfer (to themselves) of all of Plaintiff's rights and claims to attorneys' fees and

expenses available to her pursuant to the federal statutes which she asserted Employer had

violated.

20.     Neither Choate nor Lee discussed with Plaintiff:

a.  the terms or significance of the Purported Assignment;

b.  the nature of the rights which they required Plaintiff to assign;

c.  any potential, inherent and/or actual conflict of interest that would be created

by the Purported Assignment;

d.  the potential negative consequences that the Purported Assignment could

impose upon Plaintiff's legal rights;

e. her right to seek independent legal advice concerning the Purported
   Assignment and the advisability of such independent review;

f. the fact that federal courts had held that such Purported Assignments are
   void; and

g. the Purported Assignment was governed by RPC 1.8 (a) & (i).

C. <u>Defendants' Subsequent Representation of Plaintiff.</u>

21. Choate and Lee filed their appearance in the case on January 21, 2014. Two days later, Defendants obtained an Order from the court extending the deadline to take discovery to August 5, 2014 and extending the deadline to file dispositive motions on or before September 2, 2014. The same Order set a trial date for February 23, 2015. The Order provided sufficient time for Defendants to complete discovery and prepare the case for trial.

22. Despite Defendants' insistence upon a $20,000 advance payment retainer and a $10,000 "war chest" to cover the expenses associated with depositions, expert witnesses, and a mock trial, and their express representation that they would pursue an aggressive strategy to either convince Employer to pay a settlement acceptable to Plaintiff or take the case to trial, both Choate and Lee wholly failed to undertake any of the activities reasonably necessary to provide representation that would meet the standard of care required of an attorney handling Plaintiff's case. As examples, neither Defendant:

a. served any written discovery;

b. took the deposition of the principal antagonist in the case (the immediate
   supervisor who created the hostile work environment and gave Plaintiff
   negative evaluations and wrongfully stunt her professional progress);

    c.  took the deposition of Employer's inside counsel who directed Employer's purported investigation of Plaintiffs complaints regarding the sexual harassment and hostile work environment;

    d.  took the deposition of the Employer's designated chief of security to determine his role, if any, in the pattern of discriminatory conduct perpetrated by the Employer;

    e.  took the deposition of the Employer pursuant to Rule 30(b)(6);

    f.  conducted interviews or depositions of other material witnesses who had obviously relevant information;

    g.  moved to compel the production of documents that Employer had improperly refused to produce;

    h.  moved to compel testimony that Employer improperly asserted was protected by attorney-client privilege; or

    i.  retained any consultant or expert witness in the case nor made any arrangements for a mock jury trial to test potential avenues of presenting her case most persuasively.

23.    On or about April 2, 2014, Employer presented Plaintiff with a Rule 68 Offer of Judgment. In that Offer of Judgment, Employer offered to pay Plaintiff a modest sum (a fraction of Plaintiff's damage claims) and to further pay Choate and Lee an amount to be determined by agreement or pursuant to a fee petition to be filed in the District Court if Plaintiff accepted the Offer.

24.    At that time, Choate and Lee had expended little time on the case and failed to communicate to the Plaintiff what work, if any, had been or was being performed on her behalf.

25. Prior to, and after receiving, the Offer of Judgment, Defendants failed to correctly analyze the range of Plaintiff's potential award for damages available under the seven separate causes of action she alleged.

26. Defendants further failed to evaluate Plaintiff's likelihood of defeating any possible motion for summary judgment (due no later than September 2, 2014) and/or the likelihood of success at trial and range of potential verdicts.

27. In the ensuing days, Choate and Lee failed to correctly explain to Plaintiff the potential effect of the Offer of Judgment.

28. The limited explanation which the Defendants provided concerning the terms and effect of the Offer of Judgment did not include any disclosure that they had a conflict of interests with the Plaintiff while advising Plaintiff regarding her acceptance or rejection of the Offer.

29. Those conflicts were plentiful and should have been obvious to the Defendants:

   a. If Plaintiff accepted the Offer and the case settled, Defendants were guaranteed to obtain a substantial legal fee; however

   b. if the case proceeded to trial – as Defendants represented to Plaintiff they were prepared to do – the Defendants' fees, in excess of the $20,000 retainer already collected, were at risk. Plaintiff may have obtained more in damages at trial than Employer was offering, but;

      i. Defendants risked losing a guarantee of fees;

     ii. would have to endure additional time delays in collecting their fees;

    iii. risked the possibility that their fees awarded by the Court would have been less (on either an absolute or a per-hour basis) than those they

believed they would have received if the Offer of Judgment was accepted; and

    iv.   risked the possibility that even if their fee award was greater than they could obtain through acceptance of the Offer of Judgment, the attorney fees paid might not match the value of additional time which would have to be incurred along with the opportunity costs sustained as a result of their inability to solicit and settle new cases rather than trying Plaintiff's case.

30.    Moreover, if Defendants had taken Plaintiff's case to trial, the Defendant lawyers risked a potential loss of reputation concerning their skills as trial attorneys if such skills were put under public display and scrutiny by their professional competitors.

31.    Defendants did not suggest that Plaintiff seek independent legal counsel concerning these various conflicts of interest.  When Plaintiff identified the conflict on her own, Choate and Lee each denied the existence of any possible conflict of interest.

32.    As the deadline to accept the Rule 68 Offer of Judgment approached, Choate and Lee demanded that Plaintiff accept the Offer, even though the Offer comprised a small fraction of her potential damage claims and provided none of the non-monetary benefits which a plaintiff in an employment discrimination case would obtain when entering into a settlement agreement.

33.    At that time, and for the sole purpose of coercing Plaintiff to accept the Rule 68 Offer, Defendants (via an email sent by Lee on behalf of both of them) presented Plaintiff with a purported damages analysis that was legally and factually flawed and provided estimates that were substantially lower than the potential damages that could be awarded at trial.   In particular, the analysis:

- miscalculated Plaintiff's claim for back pay through the date of trial;

- failed to consider Plaintiff's claim for front pay;

- failed to consider Plaintiff's claim for compensatory damages cognizable in some of the pending claims; and

- failed to consider Plaintiff's claim for liquidated damages cognizable pursuant to certain other of the pending claims.

34.     Based on Defendants' own projections, and a legally correct analysis of her statutory remedies, Plaintiff's potential damage claims at the time exceeded $2,000,000.  After Employer made the Offer of Judgment, Defendants advised Plaintiff for the first time that they believed that Plaintiff would not realize more than a tiny fraction of that amount.  Previously, Choate and Lee advised Plaintiff that the case had substantial value in light of Employer's egregious conduct.

35.     Moreover, Defendants erroneously advised Plaintiff that the purported "paper trail" relating to a prior mediation conducted would adversely affect her case and, in particular, her damage claims.  Defendants told Plaintiff that:

a)  Employer would assert that Plaintiff agreed to settle in that mediation;

b)  Employer would further assert that Plaintiff agreed to settle for an amount less than the Offer of Judgment; and

c)  Employer would also assert that Plaintiff then reneged on the purported settlement which had been consummated in mediation.

36.     Defendants' professional advice concerning the mediation process – in which neither Defendant participated – was wrong both factually and legally.  First, Plaintiff never agreed to settle in any amount at the mediation and hence could not have reneged on the

13

purported settlement. Defendants' advice that these "facts" – even if they had occurred – could be used adversely against the Plaintiff was expressly contrary to both F.R.Evid. 408 and the Illinois Mediation Act, which unconditionally precludes disclosure or any use of communications or events occurring during or in connection with a mediation.

37.    Defendants further threatened to withdraw from their representation if Plaintiff did not accept the Offer. They told Plaintiff that such refusal, contrary to their "strong advice" that rejecting the Offer was "unwise, unreasonable, and will hurt you in the long run" and would render Defendants' ability to represent Plaintiff "unreasonably difficult." Choate and Lee told Plaintiff that if she did not accept the Offer, their "usefulness as [Plaintiff's] lawyer[] would be at an end" and that they would promptly seek to withdraw from their joint representation.

38.    Defendants further incorrectly advised Plaintiff that if they withdrew, Plaintiff would not be able to retain successor counsel because Plaintiff had executed the Purported Assignment (giving Lee and Choate an absolute right to control any claim for attorneys' fees) and because Lee and Choate had an effective lien on any monies which would be available to pay successor counsel's fees.

39.    Plaintiff did not accept the Offer of Judgment, and Defendants did not withdraw in April, 2014. Rather, on April 14, 2014, Defendants joined a purported Agreed Motion to extend fact discovery with Employer's counsel. Defendants never discussed the purported Agreed Motion with the Plaintiff nor sought Plaintiff's informed consent to Employer's proposed extension of discovery deadlines. Moreover, the Agreed Motion that was presented to the Court contained material false and/or deceptive statements, including but not limited to representations that

    a) "[s]ince January 23, 2014, the parties have diligently proceeded with fact discovery"; and

    b) "the parties succeeded in resolving numerous discovery issues and narrowing their disputes."

Defendants never informed Plaintiff that any additional discovery had been conducted, and never discussed with Plaintiff either the discovery disputes referenced in the Agreed Motion nor of the purported resolution of such disputes.

    40.    At the time of their representations to the Court, Defendants had not:

    a.  sought the production of documents improperly withheld;

    b.  challenged Employer's assertion of the applicability of the attorney-client privilege to Employer's conduct and purported investigation of Plaintiff's charges of sexual harassment and retaliation;

    c.  interviewed or taken the depositions of numerous witnesses with first-hand knowledge of Employer's conduct; and

    d.  investigated the most egregious of Employer's conduct in its attempt to intimidate and harass the Plaintiff after she complained about her supervisor's conduct.

    41.    Prior to the entry of the "agreed" motion, Plaintiff did not provide informed consent for Defendants to enter into any agreement which would defer Defendants' obligation to conduct discovery and prepare the case for trial.

    42.    After Defendants successfully urged the court to defer discovery, they demanded that the Plaintiff accede to a minimal increase of their settlement authority. Defendants represented to Plaintiff that this new settlement authority was at the upper range of what she

might expect to recover at trial when taking into account all risks. Defendants "risk analysis" was patently flawed, since it artificially reduced Plaintiff's likelihood of succeeding at trial if no summary judgment motion were brought or was denied by the court. Moreover, and as noted above, Defendants damage analysis failed to take into account a complete assessment of all of the back pay, front pay, compensatory damages and liquidated damages which Plaintiff could have been awarded at trial.

43.     Plaintiff continued to refuse to settle, and directed Defendants to prepare for trial, but Defendants did not take any action to prepare the case for trial.

44.     In July, 2014, Defendants joined Employer's counsel in an "Emergency Motion" to extend the deadlines for both discovery and summary judgment motions. That motion repeated the representation that Defendants had conducted "additional discovery." Plaintiff was not advised that her attorneys would join such a motion and neither consented to nor authorized such a motion. Indeed, Defendants' willingness to extend the time by which Employer might make a motion for summary judgment was inherently adverse to Plaintiff's interests. The trial court extended the deadline to complete all discovery for 30 days past the August 5, 2014 deadline, to September 4, 2014. The dispositive motion deadline (September 2, 2014) was not extended, and thus the court placed the responsibility on counsel to prepare the case for trial and placed substantial time pressure on Employer if it wished to file any summary judgment motion.

45.     Defendants did nothing to take discovery or to consult with experts after the July, 2014 motion was presented. Rather, they decided not to take further discovery or hire any consultants or experts. Defendants made such decisions without obtaining Plaintiff's informed consent.

16

46.     At the time Defendants and Plaintiff entered into their attorney-client relationship, the record in the underlying case against Employer (which were designated as confidential and protected by a HIPPA protective order) put Defendants on notice that any breach of their fiduciary duties to the Plaintiff or failing to treat Plaintiff civilly and professionally would cause Plaintiff to suffer emotional distress and psychological injury for reasons other than pecuniary loss.

47.     However, despite such knowledge, and in further breach of their fiduciary duties to the Plaintiff, Defendants repeatedly subjected Plaintiff to intimidation, threats, anger, disrespect, disdain and arrogance which they knew, or should have known, would cause Plaintiff additional psychological injury and emotional distress separate and apart from the pecuniary losses which she was seeking to recover from Employer.  In addition, Defendants attempted to manipulate the Plaintiff with repeated "good cop/bad cop" scenarios in which Lee would yell and brow-beat Plaintiff and Choate would subsequently seek to assure Plaintiff that she (Choate) was her friend and would protect her from Lee's angry outbursts.

48.     Rather than preparing the case for trial, and in order to exert maximum pressure upon Plaintiff to settle, Defendants repeatedly threatened to withdraw from the case through September, 2014.  Ultimately, Defendants sent Plaintiff an email threatening to "seek [the Court's] permission to withdraw as your lawyers" and further threatening to "enforce to the full extent of the law our attorneys lien, your claim for attorneys fees that you assigned us, and any other rights we have in this situation."  (A redacted copy of that email is attached hereto as Exhibit C.)

49.     In the face of inaccurate and unfounded "advice" and as a result of Defendants' violation of numerous RPC (as listed below), Plaintiff relented to Defendants' various threats

17

and pressures and "agreed" to an unacceptable settlement by which she would be paid a small fraction of her damage claims and Defendants would be paid $99,500 for their minimal work on the case. The purported settlement was entered into without Plaintiff's informed consent and over her express objections.

50. To ensure that Employer would settle the case and agree to pay them legal fees, Defendants abandoned negotiation efforts which would protect Plaintiff's interests in the non-monetary terms of the Settlement Agreement. In particular, Defendants failed to properly protect Plaintiff's privacy, professional reputation and ability to seek and obtain future employment in the consulting industry. Defendants insisted that Plaintiff agree to disclose to any future employer that she would be unable to work on matters which in any way related to Employer or any of its clients. Given the nature of Plaintiff's training, employment experience with multiple consulting firms and interest in further developing her career in the consulting profession, Plaintiff's ability to offer her services to traditional consulting firms and traditional consulting clients was effectively eliminated by this provision in the Settlement Agreement. Defendants also insisted the Plaintiff agree not to apply for future employment with Employer, even though Defendants knew, or should have known, that the Equal Employment Opportunity Commission advised that such agreements constituted unlawful retaliation under applicable federal statutes.

51. Plaintiff executed the Settlement Agreement on or about October 16, 2014, as a result of Defendants' threats, breaches of fiduciary duties and breaches of the standards of care required of Illinois attorneys under the circumstances.

52. Defendants never supplied Plaintiff with an itemized list of time and expenses incurred in connection with her representation nor did Defendants undertake any effort to

demonstrate the reasonableness of the fee which Defendants had negotiated with and received from Employer.

53.     Defendants did not expend any of the $10,000 cost retainer, i.e., the "war chest" which Defendants insisted upon at the outset of the representation.  Defendants failed to return this "war chest" to Plaintiff when the settlement was reached in October, 2014, and did not return such funds until June, 2016 – only after Plaintiff' retained counsel who demanded return of her funds.

54.     As of the date of filing of this Amended Complaint, Defendants have refused to supply Plaintiff with her file as it existed prior to her demands for it, including but not limited to emails between Defendants and counsel for Employer, the back-up for Defendants' damage and liability analyses, and any materials which could support or justify the $99,500 fee which Defendants received.

## COUNT I: BREACH OF FIDUCIARY DUTY

Plaintiff realleges and incorporates paragraphs 1-11, 16-20, 23-24, 27-30-33, 36-38 and 40-53 of her Amended Complaint into her Count I as if fully set forth herein.

55.     No later than the time Defendants received Plaintiff's executed Retention Agreement, Defendants assumed all of the fiduciary duties which the law imposes upon the attorney-client relationship.  Those fiduciary duties included, but were not limited to, full compliance with the RPC – duties which Defendants expressly incorporated in the Retention Agreement.

56.     Defendants either intentionally or negligently (as will be shown by the evidence and determined by a jury at trial), breached numerous RPCs and fiduciary duties owed to Plaintiff:

a. Defendants failed to obtain Plaintiff's informed consent concerning most aspects of her representation in violation of RPC 1.0(e)("'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.");

b. Defendants failed to abide by their client's decisions concerning the objectives of representation and failed to abide by thier client's decision whether to settle with Employer in violation of RPC 1.2 ("a lawyer shall abide by a client's decisions concerning the objectives of representation and … shall abide by a client's decision whether to settle a matter.");

c. Defendants failed to properly inform Plaintiff regarding all of the circumstances necessary to obtain Plaintiff's informed consent and failed to explain matters to Plaintiff sufficiently to permit her to make informed decisions regarding her representations in violation of RPC 1.4;

d. Defendants collected an unreasonable fee in light of the amount of the fee ($99,500) compared to the limited amount of work performed in violation of RPC 1.5;

e. In violation of RPC 1.4(b) and 1.8, Defendants:

   i. failed to disclose conflicts of interest and adverse consequences to their client resulting from the Purported Assignment at the time they required Plaintiff to execute the Purported Assignment;

    ii.   failed to advise Plaintiff that she had a right to seek the advice of independent legal counsel concerning such adverse consequences;

    iii.   failed to advise Plaintiff that the Purported Assignment would eliminate her unconditional right to waive her right to statutory attorneys' fees and transferred to Defendants her right to pay them their contingent fee under their Retention Agreement, rather than statutory fees, if that were in her best interest;

    iv.   failed to inform her that the Purported Assignment was void and unenforceable;

    v.   and asserted the Purported Assignment as a property right which they would enforce to Plaintiff's detriment if Plaintiff refused to accept the settlement which Lee and Choate sought to impose upon her in violation of RPC 1.4(b) and 1.8(a).

f.   Defendants demanded the Purported Assignment as a condition of representation, and acquired a pecuniary interest in the subject matter of the litigation, in violation of RPC 1.8(i);

g.   Defendants failed to identify the potential conflicts of interest raised by the Purported Assignment at the time the Retention Agreement was executed, failed to provide correct legal advice at that time or when Employer made the Offer of Judgment when the potential conflict of interest manifested into an actual and un-waivable conflict, and when Employer made future offers to settle, in violation of RPC 1.16;

h.  Defendants failed to safeguard Plaintiff's cost retainer in a separate and identifiable Trust account and failed to return such funds, or take diligent efforts to return such funds, at the conclusion of their representation in violation of Rule 1.15;

i.  Defendants threatened to withdraw as Plaintiff's counsel knowing that any attempted withdrawal would result in a material adverse effect on Plaintiff's interests is violation of RPC 1.16;

j.  Defendants threatened to withdraw as Plaintiff's counsel without disclosing their obligations and Plaintiff's rights under RPC 1.16, including the fact that a Court would independently evaluate whether withdrawal was mandatory as a result of the conflicts of interests which the Defendants created under the circumstances and the fact that the Court could enforce Plaintiff's authority to decide whether to settle and allow Plaintiff sufficient time to engage new counsel and void the purported assignment to place Plaintiff in a position to obtain new counsel, in violation of RPC 1.2(a) and 1.16(c);

k.  Defendants failed to advise Plaintiff that if they were permitted to withdraw, or required to withdraw as a result of the conflicts of interest associated with their enforcement of the Assignment, their contingent fee agreement and statutory lien would be unenforceable and, pursuant to RPC 1.5(e)(2), Defendants would not be permitted to share any fees resulting from the services provided by subsequent counsel without Plaintiff's written consent to the division of any such fee; and

    l.   Defendants subjected Plaintiff to highly offensive practices which they knew, or should have known, would cause Plaintiff to suffer emotional distress and psychological injury separate and apart from her pecuniary interests which they had a fiduciary duty to protect.

57.    Because Defendants owed fiduciary duties to Plaintiff, Defendants bear the burden to prove that the settlement they imposed on Plaintiff, and the fee which they appropriated for themselves pursuant to the Purported Assignment, were fair in fact to Plaintiff and did not otherwise put the lawyers/fiduciaries' interests above their client's interests.

58.    As a result of their breaches of fiduciary duty, Defendants must be ordered, by way of restitution or forfeiture, to disgorge and turn over to Plaintiff the $99,500 attorneys' fees which they appropriated to themselves directly from Employer pursuant to the Purported Assignment.

59.    In addition, Defendants are jointly and severally liable to Plaintiff for all of the damages which they should have reasonably anticipated would result from their breaches of fiduciary duty, including, but not limited to:

    a.   an amount of damages to compensate Plaintiff for the loss she suffered as a result of Defendants' forcing her to enter into a settlement that was not fair to her, including but not limited to past and futures loss resulting from non-monetary terms in the Settlement Agreement;

    b.   all foreseeable damages associated with Plaintiff's pain, suffering and emotional distress caused by Defendants' coercive and abusive conduct and other violations of their fiduciary duties;

    c.   Plaintiff's costs, expenses and attorneys' fees incurred herein in order to make her whole for the damages which Defendants caused; and

    d.   The damages sustained in connection with the 20-month delay in returning Plaintiff's $10,000 cost retainer.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee in an amount in excess of Two Million Dollars ($2,000,000) and for such other and further relief as this Court deems appropriate.

## COUNT II: PROFESSIONAL NEGLIGENCE

Plaintiff realleges and incorporates paragraphs 1, 6-17, 21-27, 31-35, 39, 41-42 and 44 of her Amended Complaint into her Count II as if fully set forth herein.

60.    Defendants entered into an attorney-client relationship with Plaintiff on or about January 9, 2014 and, pursuant to that relationship, entered their joint appearances in the Employer matter on January 21, 2014.

61.    Defendants owed professional duties of care to Plaintiff to accurately advise her concerning her claims, to competently and diligently represent her, and to perform sufficient work to achieve reasonable results consistent with Plaintiff's objectives.

62.    Defendants breached the standards of care applicable in Cook County, Illinois and the Northern District of Illinois concerning a matter involving violations of federal statutes enacted to protect the Plaintiff's employment rights, by, *inter alia*:

    a.   failing to provide reasonable counsel and/or to provide competent legal advice concerning matters about which Defendants accepted professional responsibility;

24

b. failing to act with reasonable competence and reasonable diligence by, *inter alia*, failing to take any discovery or retain any consultants or expert witnesses as they expressly advised the Plaintiff they would do, thereby failing to prepare the case for trial;

c. failing to provide competent representation in connection with their advice concerning damages, likelihood of success at summary judgment or trial or the proper protection of the client's interests;

d. failing to fully and adequately conduct legal research, ascertain facts and adduce evidence necessary to evaluate the strengths and weaknesses of the case and prepare the case for trial and thereby place Plaintiff, at a minimum, in a position for settlement negotiations which could be conducted with maximum strength and leverage;

e. failing to take adequate steps to determine and ameliorate the possible adverse consequences of any error or weakness in the conduct or strategy of prior counsel which they should have determined existed during the time that discovery remained open;

f. failing to adequately evaluate the various types of damages recoverable pursuant to each of the federal claims which Plaintiff asserted, the likelihood of success at trial, and the "settlement value" of her claims;

g. failing to maximize Plaintiff's settlement position by preparing the case for trial;

    h.   demonstrating almost immediately to Employer and its counsel that Defendants had no intention of going to trial and were only interested in a modest increase in the Offer of Judgment previously made;

    i.   failing to properly advise Plaintiff regarding the likelihood that Employer would file a motion for summary judgment, given numerous genuine issues of material facts and the burdens and expense of preparing such motion before the soon approaching court-ordered deadlines; and

    j.   failing to know and correctly advise Plaintiff that the Illinois Mediation Act absolutely barred disclosure or use of anything that occurred during mediation in the course of litigation or otherwise.

63.    As a result and proximate cause of such breaches of the standard of care applicable to attorneys practicing in Cook County and the Northern District of Illinois, Plaintiff has sustained substantial actual damages.

64.    In addition, Defendants are liable to Plaintiff for all of the damages which they should have reasonably anticipated, including, but not limited to:

    a.   Aa amount of damages which Plaintiff would have obtained either at trial or as a result of a settlement (after discovery and other investigation had been completed, experts had been consulted, the case had been prepared for trial, etc.) had Defendants representation met the standard of care applicable to them; and

    b.   Plaintiff's costs, expenses and attorneys' fees incurred herein in order to make her whole for the damages which Defendants caused.

WHEREFORE, Plaintiff respectfully urges this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee in an amount in excess of One Million Dollars ($1,000,000) and for such other and further relief as this Court deems appropriate.

## COUNT III: FAILURE TO RETURN CLIENT'S COST RETAINER AND FILES

Plaintiff realleges and incorporates paragraphs 1, 7, 18-22 & _____ of her Amended Complaint into her Count III as if fully set forth herein.

65. Defendants' representation of Plaintiff concluded shortly after the settlement they demanded Plaintiff accede to was effectuated and her case was dismissed.

66. Between such time and May, 2016, Defendants did not return Plaintiff's "war chest" cost retainer or provide her with any portion of her file.

67. In May, 2016, Plaintiff instructed Defendants to provide all of the files and material relating to their case to the undersigned attorneys and to return Plaintiffs $10,000 cost retainer.

68. Defendants had a professional duty to comply with Plaintiff's request.

69. Although Choate's personal counsel claimed to have collected all of Choate's materials on a thumb drive which he would make available to Plaintiff's counsel, he subsequently refused to do so. Plaintiff's counsel then made a demand for Plaintiff's file on Choate's litigation counsel, but as of the date of filing of the instant Amended Complaint both Choate and Lee have refused to provide any client-related materials to Plaintiff's current counsel.

70. Defendants' refusal to supply the materials relating to their representation to either Plaintiff or her counsel constitutes an additional breach of fiduciary duty owed by the Defendants.

71.     Plaintiff is concerned that the materials relating to her representation have been altered, destroyed, modified and/or supplemented since the termination of the litigation with Employer and/or her instruction to supply such materials to her current counsel.

72.     These circumstances require that the Court impose requirements upon Defendants to provide Plaintiff's file as it existed pre-litigation in addition to full compliance with F.R.Civ.P. 16 and 26 & 34.

73.     Plaintiff respectfully urges this Court to enter an Order or Orders compelling Defendants to immediately deliver to Plaintiff's counsel Plaintiff's file relating to Defendants' representation of the Plaintiff (in the manner maintained pre-litigation) and further requiring an accounting of the location and status of all materials relating to Defendants representation of the Plaintiff, including but not limited to production of all electronic media and the meta-data relating thereto; a listing of all dates after October 1, 2013 upon which emails or other materials were deleted and/or destroyed; and a listing of all dates after October 1, 2013 upon which the files related to Defendants' representation were modified, altered and/or supplemented.

74.     Plaintiff anticipates the possibility that she will have to sustain substantial costs for forensic computer experts and, accordingly further seeks the appointment by the Court, at Defendants' expense, of a special, independent master to evaluate the Defendants' conduct concerning record creation, access, modification and storage, and to render a report to the Court concerning their findings.

WHEREFORE, Plaintiff respectfully urges this Court to enter judgment in her favor and against Defendants Antoinette Choate and David Lee, to enter any and all Orders necessary to compel full disclosure of Plaintiff's file and any alterations to that file which may have occurred since October, 2014, to award Plaintiff attorneys' fees and costs incurred in securing her file and

such injunction, to award Plaintiff an investment rate of interest on monies improperly withheld for more than 18 months, for the entry of additional damages which may be proven at trial as a result of this breach of fiduciary duty, and for such further and other relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by jury on the claims set forth herein as well as any additional claims which may be filed in any amendment hereto.

Plaintiff Nagin Kormi


By: _____ /s/ Alan J. Mandel_____
One of her attorneys

Alan J. Mandel
Joseph E. Tighe
Philip C. Stahl
ALAN J. MANDEL, LTD.
7520 Skokie Boulevard
Skokie, IL 60077
847-329-8450

**AMENDED COMPLAINT**

# EXHIBIT A

# Law Offices of David L. Lee

| | | |
|---|---|---|
| 53 W. Jackson Blvd. | Voice: 312-347-4400 | David L. Lee, Attorney at Law |
| Suite 801 | Fax: 312-347-3272 | |
| Chicago, Illinois 60604-3437 | staff@davidleelaw.com | Jeffrey Bush, Law Clerk |

January 9, 2014

re:  | REDACTED |

Dear  N.K.  ,

     Anne and I really enjoyed talking to you on the telephone.  Employer treated you really badly, and I hope that Anne and I can help get you at least some compensation for the way  Employer  treated you.

     This letter revises Anne and my January 2 letter based on your January 6 e-mail and your, Anne's and my telephone conference yesterday.

     For our services, Anne and I will charge you $20,000 (i.e., $10,000 each) plus ⅓ of anything we recover for you over $40,000.  The $20,000 fee is what Illinois law calls an "advance payment retainer".  Any portion of this advance payment retainer that Anne and I do not earn (for example, should you change your mind and decide not to go through with the lawsuit immediately after we deposit your checks) will be refunded to you, even though the advance payment retainer becomes our property upon payment and will be deposited upon receipt to our operating accounts rather than to our trust accounts.  Because of the time and effort Anne and I put into pursuing a lawsuit for you, we would not be willing to represent you without this advance payment retainer.  The advantage to you in paying by an advance payment retainer rather than paying Anne and me hourly is that the advance-payment retainer limits your up-side risk of attorney's fees as compared to paying us hourly.

     In addition to the attorney's fees, you are responsible for any expenses Anne and I incur on your behalf.  As Anne and I explained to you, there easily could be additional expenses, depending on how hard we have to fight with  Employer  to convince them to give you what you want.  If  Employer  fights this lawsuit very hard and is not willing to offer you a settlement that you are willing to accept, then the expenses of a lawsuit can be considerable and can include not only the expenses you've already paid by such additional expenses as witness subpoena fees, witness appearance fees, expert-witness fees, witness-travel fees, court-reporter appearance fees, court-reporter transcript fees, fees for the service of subpoenas, fees to put on a mock trial before mock jurors, travel (other than normal commuting), outsourced photocopying jobs, etc.  As we discussed, these expenses could reach thousands and thousands of dollars.  There is no way to predict how hard  Employer  will fight this lawsuit, so it is important you understand that you might have to spend $10,000 or more in additional expenses before  Employer  decides to offer you a settlement you are willing to accept.



January 9, 2014
p. 2

Because it can be difficult to write a check for $1,000 or $2,000 on the drop-of-a-hat, I typically suggest that clients set-up a "war chest" through my trust account. Any trust account money that you send to me is your money; it will just be sitting in my trust account for me to pay the expenses of your lawsuit. If there is money left over after the expenses of your lawsuit have been paid, I will refund you the left-over money. No interest is paid to you on your trust fund account money, because the interest on lawyer trust accounts goes to legal charities, like Legal Aid.

For your lawsuit against            Employer            , Anne and I will require a "war chest" of $10,000 in my trust account before we will become your lawyers. If any time the money deposited to my trust account appears to Anne and me to be insufficient to cover the expenses of this lawsuit, then you will deposit an additional amount to my trust account based on Anne's and my estimate at the time of how much more of a "war chest" we will need. As I explained above, this is your money; it's just sitting in my trust account for Anne and me to pay the expenses, and I will refund you any money over the costs of the expenses of the lawsuit.

Anne and I will do our best to have            Employer            pay our attorney's fees and any expenses. If Anne and I do negotiate some fees as part of a settlement or if the judge makes            Employer            pay me some attorney's fees, we don't double-dip: any such fees that Anne and I receive will reduce, dollar for dollar, the attorneys' fee that you would otherwise owe Anne and me. (The one exception to this is that Anne and I will not offset against our fee any attorney's fees a judge awards us for researching, drafting, filing, arguing, or otherwise pursuing an attorney-fee petition.) By the same token, the fee Anne and I are charging you does not limit the amount of fees Anne and I may collect from            Employer            This means that if Anne and I are paid a fee from  Employer that is more than the $20,000 plus ⅓ over $40,000 that you would owe us, we would refund to you the $20,000 plus ⅓ over $40,000 and keep the entire fee paid by            Employer            .

As we also discussed, it is possible that you could never win any money in this lawsuit, never recover the money you spend on costs and expenses, and end up having lost money by bringing this lawsuit. You told Anne and me that you understood that. **<u>This is crucial, because Anne and I will not represent you in this lawsuit unless you understand this.</u>**

Because Anne and I am not tax lawyers, we cannot advise you as to the proper tax treatment of any money we recover, any attorney's fees and expenses that   Employer pays us, and any attorney's fees and expenses that you pay. Therefore, Anne and I urge you to talk to a qualified tax professional about the proper tax treatment of these matters if and when it becomes relevant.

Unless you instruct Anne and me otherwise, we will, in our discretion, use information relating to our representation of you to help us represent you better by consulting with other lawyers, posting about your case on lawyer listservs, etc., and to help us represent other clients and future clients. With regard to helping Anne and me



January 9, 2014
p. 3

market our law practices, we explained to you that describe the type of case without any information identifying you as part of our explanations of our general experience in various areas of the law. Before Anne or I used your name or any identifying information about you to market, we would get your permission first.

It is extremely important that Anne and I are able to contact you about your case. If your phone number, e-mail address, home address, fax number, or other contact information changes, you will let Anne and my offices know immediately. Similarly, if Anne's office or my office contacts you, you will contact us back in a reasonable amount of time or sooner if requested.

The fee Anne and I are quoting you and our agreement is just for us to represent you in this lawsuit through trial. Neither you nor Anne nor I are committed to filing any appeals or to enforcing any judgments.

Anne's and my duties as lawyers are governed by the Rules of Professional Conduct and other provisions of law, and this contract is subject to those Rules and provisions of law.

If you want to hire Anne and me to be your lawyer as set forth in this letter, then please print out the signature page and the Assignment of Claim for Attorney's Fees, sign and date them both where indicated, and mail them to me at my office: 53 W. Jackson Blvd., Suite 801 Chicago, IL 60604 along with your check for $30,000. Once Anne and I receive these back and your check clears the banking system Anne and I will be your lawyer as set out in this letter.

Please call or email Anne or me if you have any questions. I hope that the three of us will be working together on this lawsuit against  .

Very truly yours,

*David*

David L. Lee

# Agreed:

_____          _____
N.K.                                 Date

_____          _____
Antoinette Choate                    Date

**AMENDED COMPLAINT**

# EXHIBIT B

REDACTED

## Assignment of Claim for Attorneys' Fees

N.K.  may become indebted to the Law Offices of David L. Lee and/or to Choate Law for attorneys' fees under a contract for legal services dated January 9, 2014.

For valuable consideration, receipt of which is hereby acknowledged, N.K. assigns to the Law Offices of David L. Lee all claims for attorneys' fees growing out of any claims that N.K.  has or may have against Employer  for wages, employee benefits, discrimination, retaliation, wrongful discharge, retaliatory discharge, tort, breach of statutory duty, breach of contract, or estoppel or for or under any lawsuit, administrative proceeding, or arbitration growing out of those claims.

This Assignment is binding upon N.K.  and her successors and assigns, and inures to the benefit of the Law Offices of David L. Lee, Choate Law, their successors, and their assigns.

# Agreed:

_____     _____
N.K.                                                Date

Notice mailed to  Employer         certified #

_____     _____
David L. Lee                                       Date

**AMENDED COMPLAINT**

# EXHIBIT C

REDACTED

## Follow up to call

**Antoinette Choate** <choate@achoatelaw.com>                    Sun, Sep 21, 2014 at 7:44 PM
To:    N.K.
Cc: David Lee <d-lee@davidleelaw.com>

N.K.

In a last-ditch effort to save our attorney/client relationship and conclude the settlement, David and I are available tomorrow morning at 10:00 Central time to discuss with you the terms of the Final Settlement Agreement as written in that Agreement.  David and I will block out  half-an-hour for that telephone conference.

To make that telephone conference as productive and efficient as possible, please e-mail David and me as soon as possible the specific terms of the Final Settlement Agreement that concern you and precisely what your concern is for each such term.

Should you continue to refuse to inform David and me which specific terms of the Final Settlement Agreement concern you and what your concern is for each such term, you would leave David and me no choice but to seek [the judge's] permission to withdraw as your lawyers.  In that case, of course, David and we will enforce to the full extent of the law our attorneys lien, your claim for attorneys fees that you assigned us, and any other rights we have in this situation.

Anne

Sent from my iPhone

## CERTIFICATE OF SERVICE

Alan J. Mandel, an attorney, hereby certifies that he caused to be served a true and correct copy of the foregoing AMENDED COMPLAINT upon:

Counsel for Defendant, Antoinette Choate

Daniel Francis Konicek
Thomas James Long
KONICEK & DILLON
70 West Madison Street, Suite 2060
Chicago, Illinois  60602
(312) 239-0283
*dan@konicekdillonlaw.com*
*tlong@konicekdillonlaw.com*

Counsel for Defendant, David L. Lee

David Sorenson
Bryan J. Kirsch
THE LAW OFFICE OF EDWARD J. KOZEL
333 South Wabash Street, 25th Floor
Chicago, Illinois  60604
(312) 882-6789
*david.sorensen@cna.com*
*bryan.kirsch@cna.com*

by electronic mail to the e-mail address above from the service e-mail address or that of a duly directed law firm administrator carbon-copying the service e-mail address of Alan J. Mandel, alan@mandelaw.net, on February 8, 2017.

/s/ Alan J. Mandel

Alan J. Mandel