**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NAGIN KORMI, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | 16-cv-09415 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ANTOINETTE CHOATE and | ) | |
| DAVID L. LEE. | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AFFIDAVIT**

Having represented the Plaintiff for nearly a year in the underlying case, Defendants now complain that they did not contemplate or understand the case they were handling, either then or in connection with the defense of this case, and, as a result, assert that the Plaintiff's Affidavit in opposition to their Motion for Summary Judgment has them flummoxed about the facts available to them  -- all of which were contained in documents produced by the defendant in the underlying case and *most of which were marked as exhibits in depositions taken in the underlying case*.  Accordingly, they seek to strike the Affidavit for various reasons that lack merit.

At bottom, the motion seeks to distract the Court from the numerous genuine issues of material fact which prohibit the entry of summary judgment.  However, Defendants' motion actually highlights the genuineness and materiality of the facts asserted in Plaintiff's Affidavit and the Exhibits thereto.  Notably, Defendants do not challenge the genuineness of the documents referred to and relied upon in connection with Plaintiff's Affidavit, including and

especially the genuineness of the documents produced by Deloitte in the underlying case.[1] Indeed, these admittedly genuine documents were available both to the Plaintiff *and to the Defendants* in the underlying case and yet Defendants to ignore such documents and proceeded to suggest to this Court that there was no evidence which could support Plaintiff's underlying claims.

As discussed more fully below, the Defendants' principal, substantive complaint about Plaintiff's Affidavit is that Plaintiff identifies Deloitte documents which contradict the purportedly undisputed facts asserted by the Defendants. However, there is nothing procedurally inappropriate about Plaintiff's reference to and/or identification of the evidentiary materials which demonstrate genuine issues of material fact in her Affidavit as a part of her narrative of the genuine issues of material facts.

1.    <u>Plaintiff's Affidavit Is Procedurally Appropriate</u>.

Plaintiff's Affidavit complies with 28 U.S.C. §1746 and Defendants do not and cannot argue to the contrary. Rather, they ask the Court to strike the Affidavit on the basis of their speculation that Plaintiff's signature may not be genuine.

---

[1] Defendants' Rule 56 Statement was replete with unauthenticated documents bearing the production numbers and Confidential designation affixed by Deloitte in the underlying case. *See, e.g.*, Exhibits E, F, G, J, M, N, P, Q, R, V appended to Defendants' Rule 56.1 Statement. No party hereto has articulated any objection as to the authenticity or foundation of documents produced by Deloitte in the underlying case and most, as noted above, were marked as exhibits in depositions of Deloitte witnesses. Plaintiff's Rule 56.1(c) statement noted objections certain of the documents and purported assertions of Deloitte personnel on hearsay grounds. However, since Defendants' motion was, in essence, the motion that Defendants claim Deloitte should have filed, Plaintiff's citation to Deloitte documents from key Deloitte decision makers acting within the scope of their duties do not constitute hearsay within that context because those statements were admissions of a party-opponent.

In a collective 80 years of practice, Plaintiff's counsel have never been accused of fabricating evidence or presenting false evidence to a Court. Yet Defendants motion implies that they have *filed* an affidavit with the Court which lacks a genuine attestation by the Plaintiff. That aspect of Defendants' motion is professionally offensive and relies upon inapposite authority.[2]  However, we recognize that professional offense may not be deemed a complete answer to the Defendants' assertion that Plaintiff's Affidavit was procedurally infirm and, accordingly, Plaintiff submits herewith the affidavits of Alan J. Mandel and a further Affidavit of the Plaintiff (notarized, to meet any further objections from the Defendants) which demonstrate that Plaintiff's Affidavit submitted with her Rule 56.1 Statement complied with 28 U.S.C. §1746, Northern District of Illinois Local Rule 5.2 and the Electronic Signatures in Global and National Commerce Act (15 U.S.C.A. § 7001) and, accordingly, is procedurally sound.

Defendants offer no legal authority for the proposition that this Court may strike Plaintiff's Affidavit because the Plaintiff's signature on the Affidavit appears -- to them -- to differ from other signatures provided by the Plaintiff on prior verifications.  There is no legal authority for the Defendants' argument.  Indeed, for at least 10 years, the prevailing authority in the 7th Circuit is to the contrary.  *Magyar v. Saint Joseph Regional Medical Center*, 544 F.3d

---

[2] Defendants cite *Lujano v. Town of Cicero*, 2011 WL 6822204 at *6 (N.D. Ill. 2011) and *DeBruyne v. Equitable Life Insurance Society of U.S.,* 920 F. 2d 457,  471 (7th Cir. 1990). Neither case supports nor could conceivably support the argument which Defendants advance here, *i.e.,* that Plaintiff's Affidavit should be stricken because the signature on the Affidavit varies from other signatures which Plaintiff has provided in the past.  In *Lujano,* the trial court rejected affidavits of third-party witnesses which were not identified in Plaintiff's Rule 26 disclosures, but allowed other third-party affidavits because the defendant there could not demonstrate prejudice sufficient to justify such a sanction.  There is no discussion of the genuineness of signatures.  In *DeBruyne,* the trial court excluded an affidavit which did not comply with 28 U.S.C. §1746, *i.e.,* it was unsworn and not otherwise acknowledged as subject to the penalties of perjury.  Plaintiff's Affidavit tracks Section 1746.  Neither case suggests that the Defendants had license to impugn the integrity of Plaintiff or her counsel in connection with Plaintiff's Rule 56.1 submission.

766, 770 (7th Cir. 2008)(assuming *arguendo* that a digital signature on an affidavit could be construed to be procedurally defective "in a world where electronic signatures are regularly honored" such purported defect did not justify striking affidavit).

Accordingly, there is no basis for this Court to strike Plaintiff's Affidavit *in toto*.  As discussed more fully below, there is also no basis for this Court to strike the specific paragraphs about which Defendants' motion complains, *i.e*., paragraphs 13, 18, 22, 33, 28 and 49. (Defendants offer no substantive objection to 43 of the 49 paragraphs in Plaintiff's Affidavit.) Defendants' desperate attempt to Plaintiff's Affidavit by challenging her attestation merely serves to amplify that those 43 paragraphs raise numerous issues of material facts which preclude the entry of summary judgment here.[3]

      2.    <u>Plaintiff's Affidavit Is Not Substantively Deficient.</u>

Federal Rule of Civil Procedure 56(c) provides that a non-movant may oppose a motion for summary judgment with "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Those materials "need not [be produced] in a form that would be admissible at trial to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict" in her favor.  *Modrowski v. Pigatto*, 712 F.3d

---

[3]  Defendants nitpicking at a few paragraphs of a 49-paragraph Affidavit was expressly decried recently in by Judge Jorge Alonso in *Lippert v. Hardy*, 2017 WL 3070713, at *1 (N.D.Ill., 2017)(internal citations omitted; emphasis added):

> Defendants ask the Court to strike plaintiff's Local Rule 56.1 response and parts of his statement of additional facts and declaration in support of his response to defendants' motion. Essentially, defendants seek to have the Court carve out what defendants deem to be objectionable or unpersuasive portions of plaintiff's summary judgment materials. *This sort of motion to strike is particularly disfavored and "waste[s] time by requiring judges to engage in busywork and judicial editing without addressing the merits of a party's claim.*

Filed Under Seal

1166, 1168–69 (7th Cir. 2013)(citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251 (1986)). Rather, the non-movant must demonstrate that the evidence demonstrating material issues of fact would be admissible at trial. *E.g., Wheatley v. Factory Card and Party Outlet*, 826 F.3d 412, 420–21 (7th Cir. 2016). Here, there is no question as to the foundation or authenticity of Deloitte's production, and even if there were, Defendants' waived any possible objection by relying on those documents themselves. *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931–32 (7th Cir. 2018)("Courts are entitled to rely on lawyers to decide which potential objections are worth raising and which are not. This is especially so when many such defects in summary judgment evidence could be cured quickly with a supplemental affidavit or two.")

Moreover, Plaintiff here may properly oppose the motion for summary judgment by *pointing to* documentary evidence that could be authenticated by persons who have been identified as potential witnesses at trial.[4] *Marr v. Bank of America, N.A.*, 662 F.3d 963, 966 (7th Cir. 2011)("the opponent of summary judgment need only point to evidence that can be put in an admissible form at trial"); *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 840 (7th Cir. 2014)(summary judgment reversed because documents submitted in opposition to motion could be authenticated/admitted through potential trial witness).

Here, of course, Plaintiff's Affidavit demonstrates facts based on her personal knowledge of two separate fact matrices, *i.e.,* personal knowledge of facts occurring while she worked at Deloitte and personal knowledge of facts which she and the Defendants learned through discovery in the underlying case. Some of these facts came to light in Deloitte's production of documents and all of the Deloitte documents identified in Plaintiff's Affidavit were documents

---

[4] In addition to submitting the depositions of Niedbala, Shah and Wittenbraker in their Motion for Summary Judgment, Defendants listed these Deloitte representatives as potential trial witnesses in their initial Rule 26.1 disclosures.

acquired by her prior counsel and to which both she and the Defendants here had access (and most of which were marked as exhibits in the depositions of the Deloitte witnesses whose depositions – but not the exhibits – were submitted by the Defendants here in connection with their motion for summary judgment, *i.e.,* Katie Wittenbraker, Nayan Shah and Lorin Niedbala. To the extent that Plaintiff's Affidavit describes or refers to those Deloitte documents, she plainly had personal knowledge that Deloitte made the admissions upon which her Affidavit relies and which would be admissible at trial here either as admissions or business records, or both.

Accordingly, as discussed more fully below, the Defendants' particularized objections to certain paragraphs of Plaintiff's Affidavit which draw upon Deloitte's document production are without merit.

A. Plaintiff's Affidavit is not Inappropriately "Self-Serving."

Defendants assert that Plaintiff's Affidavit is inappropriately "self-serving" and, in support of that talismanic phrase, cite over-ruled authority having no relationship to this case.[5] Defendants simply ignore the 7th Circuits admonition in *Hill v. Tangherlini*, 724 F.3d 965, 967–68 (7th Cir. 2013)(emphasis added; internal citations omitted):

> We begin by noting that the district court discredited Hill's testimony about his interactions with coworkers because of its "self-serving" nature. This was error. Deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving. *As we have repeatedly emphasized over the past decade, the term "self-serving" must not be used to denigrate perfectly admissible evidence*

---

[5] In fact, two of Defendants' authorities, *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003) and *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993) were overruled by *Hill v. Tangherlini,* 724 F.3d at 967, fn.1. Indeed, five years ago, District Judge Kennelly noted that counsel who continue to cite *Palmer* without disclosing that *Hill* is directly adverse to the client's position does so in violation of ethical rules. *Rouei v. Village of Skokie*, 61 F.Supp.3d 765, 774 & fn. 1 (N.D. Ill 2014).

> *through which a party tries to present its side of the story at summary judgment.*

Plaintiff's Affidavit, which is rich with specific references to Deloitte's admissions, is a wholly appropriate vehicle for the Plaintiff to "present [her] side of the story at summary judgment."

      B.    <u>Plaintiff's Affidavit is Appropriately Based on Her Personal Knowledge</u>.

Paragraph 4 of Plaintiff's Affidavit states:

> All of the documents referred to in this Affidavit and/or submitted in Plaintiff's Local Rule 56.1 statement with the prefix "DT" are true and correct copies of documents which Deloitte produced to me in my suit against Deloitte.

Defendants do not challenge that averment. Rather, Defendants challenge various statements in paragraphs 38 and 49 which refer to such documents because, they assert, some aspects of those paragraphs are not based on Plaintiff's personal knowledge. Indeed, as noted above, Defendants' Motion to Strike presents a troubling double-standard since their Motion for Summary Judgment relies heavily on email traffic from the same parties (which contain inadmissible hearsay because the Defendants here cannot claim that Deloitte's emails contain admissions against their interests here).

There is no question that each of the challenged paragraphs make specific reference to documents produced by Deloitte in the underlying litigation, and there can be no question that the Plaintiff (as well as the Defendants) had full access to such documentary evidence. Indeed, Defendants do not offer any argument that Plaintiff could not present any of Deloitte's business records and/or admissions in a form admissible at trial.

At bottom, many of the paragraphs about which Defendants complain contain either an explicit (or a plainly obvious implicit) statement that the assertions in each of the subparagraphs in Paragraphs 38 and 49 are based upon Plaintiff's personal conversations with Deloitte

representatives, or documents produced by Deloitte which Plaintiff reviewed and which contain admissions adverse to Deloitte's interests. Defendants ask the Court to review mere snippets of Plaintiff's Affidavit, ignoring the evidentiary material supporting the basis for the fact asserted.

As one example, Defendants challenge several subparagraphs in Paragraph 38 of the Affidavit, but they ignore the over-arching introductory paragraph which demonstrates Plaintiff's personal knowledge:

> [W]hile I was working on projects for Lockheed, Avaya, Citi, and AT&T projects (all of which occurred after I complained about Mr. Holston's conduct), *I was told by several of my team members* that he or she was receiving an inordinate amount of communication from HR, primarily to urge that my work be particularly scrutinized and/or downgrade my reviews.

Paragraph 38 then goes on to identify several examples of those circumstances, which are further supported by Deloitte's document production. For instance, Defendants object to paragraph 38(a) but merely cite a few words to suggest to the Court that the Plaintiff lacks foundational knowledge -- "Sohigian admitted to Wittenbraker." However, the full text of paragraph 38(a) provides:

> As an example, on October 26, 2009, Sohigian admitted to Wittenbraker that he had personally reached out to one of my reviewers on the Citi project, Ed Tracy, and "told him [my] record has been inconsistent and that they should address accordingly in [my review] if they observed anything like that."

and in further support of that averment, Plaintiff referred to Ex. S to her Appendix (produced by Deloitte as DT 7985), *i.e.,* an October 26, 2009 email exchange between two Deloitte decision makers whom the Defendants ask this Court to find entirely credible (Katie Wittenbraker and James Sohigian) on certain points in their motion for summary judgment based on emails produced by Deloitte. That email makes plain Sohigian's extraordinary effort to negatively influence Plaintiff's reviewer, Ed Tracy:

> [I] told him her record has been inconsistent and that they should address
> accordingly in [performance review] if they observed anything like that as
> well as citi.

Similarly, Defendants complain about Paragraph 38(b) but only draw the Court's attention to the words "Niedbala instructed my counselor, Nyan Shah" while ignoring the full text of paragraph 38(b), which provides:

> Ms. Niedbala instructed my counselor, Nayan Shah to contact one of my
> reviewers on the Citi project (Ed Tracy) and advise him that I had
> developmental areas that "really need to be tested" and that he "will be
> looking for honest, objective straight forward feedback on how Megan is
> doing."

Again, Plaintiff's Affidavit supports that averment with specific reference to a Deloitte email (Appendix, Exhibit T, DT 10125), an August 26, 2009 email exchange between, *inter alia*, two Deloitte HR Managers (Lorin Niedbala and Nayan Shah) in anticipation of a conversation with the same reviewer – Ed Tracy.  HR Manager Niedbala instructed Shah on what to say to Tracy:

> Say that Megan has some Development Areas coming out of year end that
> really need to be tested – highlight the areas.  Tell him that you'd
> appreciate him providing ample opportunity to test these skills and will be
> looking for honest, objective, straight forward feedback on how Megan is
> doing and how he's [sic] rate her overall to other 2nd year SC campus
> hires.

Defendants also object to paragraph 38(c) but again cite only a few words, "Shah contacted my Lockheed project manager (Sudhir Menon)."  The full text of the paragraph provides (emphasis supplied):

> Mr. Shah contacted my Lockheed project manager (Sudhir Menon) and
> demanded that I be removed from the project after a few weeks (this is not
> a normal action, *as Mr. Menon stated*). Months later, HR contacted Mr.
> Menon and demanded that he write a negative performance review,
> claiming I had been removed from the project for "poor performance",
> which was not true and *which Mr. Menon told me resisted.*

As these examples demonstrate, there is no basis to strike Plaintiff's Affidavit for lack of personal knowledge. The Affidavit plainly demonstrates that Plaintiff was expressly advised by her reviewers that they were under undue pressure to review her negatively and that those comments (about which she plainly had personal knowledge) were fully substantiated by Deloitte's document production. Each of the paragraphs about which Defendants' motion complains contains similar citations to the appropriate combination of Plaintiff's actual experiences and admissible evidence produced by Deloitte in the underlying case corroborative of such experience. As Judge Alonso instructed in *Lippert v. Hardy*, *supra*,

> [t]he way to point out errors in an [opponent's filing] is to file a reply brief, not to ask a judge to serve as editor [pursuant to a motion to strike].... The judiciary has quite enough to do deciding cases on their merits.

*Lippert v. Hardy*, 2017 WL 3070713, at *1 (N.D.Ill., 2017).

Neither the Plaintiff (whose opposition memorandum is limited to 15 pages), nor this Court, should be put to the task of demonstrating to the Defendants that their blind-eyed belief that their client lacked admissible evidence to rebut Deloitte' unfiled motion for summary judgment is erroneous.

      C.     The Purported Inconsistencies Between Plaintiff's Affidavit and Other Evidentiary Materials Do Not Justify Striking Any Portion of the Affidavit.

In an effort to bolster their purported -- but never asserted in an Answer -- statute of limitations affirmative defense, Defendants point to certain purported inconsistencies between Plaintiff's deposition and her Affidavit. There are no genuine inconsistencies; rather Defendants offer a series of red-herrings:

a)      The date upon which Plaintiff's EEOC complaint was stamped.  There is

no discrepancy between the statement by Plaintiff's counsel in May of 2013 ("we are not

challenging" the date the document was stamped and Plaintiff's Affidavit (at paragraphs

18 and 19) that she submitted documentation prior to the date of the file stamp, that she

reviewed those documents with Lee and Choate and was advised that Deloitte's statute of

limitations defenses would not be successful.  And indeed, the purported defense was not

successful in the underlying case and was never raised by the Defendants in the instant

case until a year after discovery closed.

b)      The date upon Deloitte provided actual notice of Plaintiff's termination.

There is no dispute that Deloitte dated its termination letter as of June 8, 2010 and that

Plaintiff placed that date on her EEOC charge.  But the date on the charge is not

dispositive of the question of when Plaintiff received actual notice of the termination.

Defendants ignore paragraph 44 of Plaintiff's Statement of Additional Facts[6], which

demonstrates that Deloitte could not aver to the date upon which Plaintiff was provided

with actual notice of her termination.  Moreover, Plaintiff's Affidavit here (that she did

not receive Deloitte's termination letter until June 15, 2010 at the earliest) is entirely

consistent with her May 2, 2013 deposition in the underlying case (Exhibit T to

Defendants' Motion for Summary Judgment) at pp. 270 – 276 that she did not receive the

letter dated June 8, 2010 on that date or any date shortly thereafter.  There is, therefore,

no basis to strike the discussion in Plaintiff's Affidavit regarding the date upon which she

received notice of termination from Deloitte.

---

[6] "Wittenbraker could not confirm the date upon which she actually mailed Plaintiff's
termination letter. Wittenbraker Dep., Exhibit C to Defendants' Motion. pp. 296-298."

      c)     The "Continued ***Effects*** of Alleged Harassment." There is no dispute or discrepancy between Plaintiff's May 1, 2013 deposition testimony and her current Affidavit concerning the continuing effects of Holston's harassment. Plaintiff testified that her interactions with Holston ended when the Pepsi America's project ended, and her affidavit draws the distinction between her day-to-day interactions with Holston and the continuing effects which that experience had upon her, and which Deloitte's Managers chose to exacerbate through a pattern of retaliatory conduct designed to create a pretextual reasons to fire her.

      d)     Deloitte's Purported Promotion Track. There is no actual discrepancy between Plaintiff's May 1, 2013 testimony and her affidavit. There is a discrepancy between her May 1, 2013 testimony and the spin which Defendants wish to put on it. Rather than offering *any* testimony from a Deloitte manager with actual knowledge of Deloitte's policies, practices and procedures, Defendants are relying on testimony concerning Plaintiff's understanding of Deloitte's purported promotion track, and her answers clearly demonstrate that her understanding was, at best, vague and (oddly enough in the context of Defendants' current motion), not based on her first-hand knowledge of Deloitte's promotion track policy (since plainly, she was not a member of Deloitte's management team). There is no basis to strike the assertions in Plaintiff's Affidavit regarding promotion track.

      e)     The Date of Plaintiff's Purported Conclusive Agreement to Settle. Defendants' suggestion that an August 4, 2014 email exchange should be deemed dispositive of the date upon which Plaintiff agreed to settle – again in support of an unpleaded statute of limitations affirmative defense – simply cannot be credited. *See*

Plaintiff's Additional Facts, paragraphs 9 through 15 and Plaintiff's Affidavit, paragraph

24. Defendants are simply blind to their own email correspondence demonstrating in late

September, 2014 they acknowledged that Plaintiff had refused to execute the Settlement

Agreement and, in fact, Defendants believed that Plaintiff's claim was sufficiently vital

that they threatened to withdraw from their representation of that still-vital suit:

> In a last-ditch effort to save our attorney/client relationship and conclude
> the settlement, David and I are available tomorrow morning at 10:00
> Central time to discuss with you the terms of the Final Settlement
> Agreement as written in that Agreement.
> ****
> Should you continue to refuse to inform David and me which specific
> terms of the Final Settlement Agreement concern you …, you would leave
> David and me no choice but to seek Judge Darrah's permission to withdraw
> as your lawyers. In that case, of course, David and we will enforce to the full
> extent of the law our attorneys lien, your claim for attorneys' fees that you
> assigned us, and any other rights we have in this situation.

> D.     There Is No Basis to Strike Any Portion of Plaintiff's
>        Affidavit as "Irrelevant."

Notwithstanding Plaintiff's current motion to strike references to the failed mediation in

Defendants' Motion for Summary Judgment, Defendants raise the failed mediation in their

current motion without any justification. They include it in their argument that certain portions

of Plaintiff's Affidavit are purportedly irrelevant, but Plaintiff's Affidavit makes no mention of

the failed mediation whatsoever. Putting to one side the Defendants' gratuitous distraction, the

thrust of their argument is that Plaintiff's assessment of her performance at Deloitte is not

relevant, citing *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992), a

pre-*Hill* case which held that a plaintiff's self-serving performance assessments could not be

used to demonstrate a pre-text for the employer's adverse employment decisions. Good law or

not, the case has no bearing here. Plaintiff is not asserting that her self-assessment justifies the

denial of the motion for summary judgment. Rather, Plaintiff is relying upon: a) the very

positive assessments of some Deloitte reviewers with whom she worked after Holston, and b) the

startling internal communications among decision-makers seeking to terminate Plaintiff, to

demonstrate that Deloitte took adverse employment actions for an improper reason – retaliation

for her justified complaints about Deloitte's hostile work environment.

E.    Plaintiff's Affidavit is Replete with References to
      Specific Evidentiary Facts  -- Not Mere Conclusions.

Defendants' final argument is that Plaintiff's Affidavit is conclusory and not fact-

specific.  They cite no authority for the proposition that the Affidavit should be stricken for that

reason, and, amazingly, argue that the Plaintiff is the individual who concluded that Deloitte was

creating a "paper trail" as a pretext to terminating her.  Defendants' simply ignore the fact that it

was not the Plaintiff, but rather Deloitte's decision-maker, James Sohigian, who was the person

who coined the phrase "paper trail" in connection with Deloitte's adverse and improper

employment practices.  *See* Plaintiff's Affidavit, Paragraph 38(d), and the document containing

Deloitte's adverse admission referred to therein (Plaintiff's Exhibit U, DT 5620-24, esp. p.

5621),[7] *i.e.* the email chain between decision-makers Sohigian, Shah and Wittenbraker, stating,

in relevant part:

> Sohigian:  Katie – if I recall correctly, reason why we didn't make a move
> at YE was due to the lack of a paper-trial / evidence / etc.
> ***
> Shah:  I think the bigger reason for not making the YE move was the 'HR
> complaint' that Megan had filed (or at least that is what was positioned to
> me).
> ***
> Sohigian:  Assuming it was found that was groundless.

---

[7]  Plaintiff's Rule 56.1 Statement and paragraph 49(v) misidentified the Exhibit as FF when in
fact the email exchange is found at Plaintiff's Appendix Exhibit U.

Filed Under Seal

Plainly, Sohigian admitted that Deloitte was motivated to create a pretextual paper trail and ignored Deloitte's own conclusion that Plaintiff's complaints about Holston were far from groundless. *See* Defendants Rule 56.1 Statement, paragraph 20 (Deloitte determined that Holston made unprofessional comments that were inappropriate in a professional services firm), Plaintiff's response thereto, Plaintiff's Affidavit, paragraph 49(m) & Plaintiff's Rule 56.1(c) Additional Facts, paragraphs 21-25.

## CONCLUSION

At a hearing in January, 2019 concerning Plaintiff's Motion to Strike certain aspects of Defendants' Motion for Summary Judgment, the Court inquired as to why the Defendants had never moved to amend their Answers to assert any affirmative defenses. Defendants advised the Court that, in light of the fact that each defendant's counsel had previously been sanctioned, they were being circumspect and did not wish to make assertions before they could be fully vetted and verified. As their current motion (and this Opposition Memorandum) demonstrate Defendants' motivation to be assiduous before this Court has abated. Plaintiff respectfully urges this Court to deny Defendants' Motion to Strike and to enter such other and further relief as this Court believes is justified under the circumstances.

Plaintiff

By: _____/s/ Alan J. Mandel_____
One of her attorneys

Alan J. Mandel (alan@mandelaw.net)
ALAN J. MANDEL, LTD
7520 Skokie Blvd.
Skokie, IL 60077
847-329-8450

Phillip Stahl (pstahl48@gmail.com)
P. Stahl LLC
120 North La Salle Street, Suite 2800
Chicago IL 60602
312-659-7406

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NAGIN KORMI, | ) | |
| | ) | |
| Plaintiff, | ) | 16-CV-09415 |
| v. | ) | |
| | ) | |
| ANTOINETTE CHOATE and DAVID L. | ) | Judge Andrea Wood |
| LEE, individually and in his capacity of the | ) | |
| proprietor of the LAW OFFICES OF DAVID L. | ) | Magistrate Judge Sidney I. Schenkier |
| LEE, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ALAN J. MANDEL

Alan J. Mandel, an attorney, provides the following Affidavit in connection with Plaintiff's

Memorandum in Opposition of Defendants' Motion to Strike Plaintiff's Affidavit:

1. I am one of the attorneys representing the Plaintiff in the above-captioned case.

2. I have personal knowledge of all matters set forth herein.

3. I have been licensed to practice in Illinois since November, 1984.

4. In the intervening 34 plus years of practice up until Defendant David Lee filed his

Motion to Strike Plaintiff's Affidavit (a motion subsequently joined by Defendant Antionette

Choate), I have never been accused by any party of adducing false or fraudulent evidence or

adducing it to a court.

5. I was the attorney who signed (electronically pursuant to Local Rule 5.2) and filed

Plaintiff's Local Rule 56.1(B)(3)(B) Statement Responding To Defendants' Rule 56.1 Statement

And Local Rule 56.1(B)(3)(C) Statement Of Additional Facts and Plaintiff's Affidavit supplied

therewith.

1

6.     Prior to filing such materials, I had numerous communications with the Plaintiff concerning those materials, including her Affidavit. I am quite confident that it was the Plaintiff with whom I was communicating with based on, *inter alia*: a) the telephone number I used to reach the Plaintiff; b) the email address I used to communicate with the Plaintiff; c) my recognition of her voice and conversational mannerisms; and d) the common topics and subject matter discussed in phone calls in February, 2019 which had been previously discussed in face-to-face communications with her.

7.     After such communications, on February 11, 2019, I prepared a signature page for the Plaintiff's Affidavit, tracking the language authorized by 28 U.S.C. §1746.

8.     After numerous communications between February 1 and February 11, 2019, and after Plaintiff had reviewed and commented upon her proposed Affidavit, Plaintiff supplied me (via email) with a pdf of her digital signature on February 11, 2019 and authorized me to affix such signature to her Affidavit.

9.     I believed and continue to believe that such digitized signature was appropriate pursuant to 15 U.S.C.A. § 7001, *i.e.,* the Electronic Signatures in Global and National Commerce Act and Northern District of Illinois Local Rule 5.2.

10.     As an officer of the Court, I hereby affirm that the signature affixed to Plaintiff's Affidavit filed February 11, 2019 is a true, authorized signature of the Plaintiff.

11.     I have asked the Plaintiff to supply a further Affidavit affirming that her signature on the February 11, 2019 Affidavit is genuine and that she authorized me to affix such signature page to her Affidavit on February 11, 2019. Plaintiff's further Affidavit is also supplied in connection with her Memorandum in Opposition to Defendants' Motion to Strike Plaintiff's Affidavit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2019

_____
ALAN J. MANDEL

OFFICIAL SEAL
ANGELA KAROFF
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/28/22

3

OFFICIAL SEAL
ANGELA KAROFF
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 05/25/22

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NAGIN KORMI, | ) | |
| | ) | |
| Plaintiff, | ) | 16-CV-09415 |
| v. | ) | |
| | ) | |
| ANTOINETTE CHOATE and DAVID L. | ) | Judge Andrea Wood |
| LEE, individually and in his capacity of the | ) | |
| proprietor of the LAW OFFICES OF DAVID L. | ) | Magistrate Judge Sidney I. Schenkier |
| LEE, | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF NAGIN KORMI

Plaintiff Nagin Kormi provides the following Affidavit in connection with her Memorandum in Opposition of Defendants' Motion to Strike her Affidavit:

1.      I am the Plaintiff in the above-captioned case.

2.      I have personal knowledge of all matters set forth herein.

3.      I have reviewed Plaintiff's Local Rule 56.1(B)(3)(B) Statement Responding To Defendants' Rule 56.1 Statement And Local Rule 56.1(B)(3)(C) Statement Of Additional Facts and my Affidavit supplied therewith.

4.      The signature affixed to my Affidavit is in fact my personal, digitized signature which I provided to my counsel on February 11, 2019 to be affixed to the Affidavit which I reviewed with counsel and I understood would be filed in connection with the opposition to Defendants' Motion for Summary Judgment.

5.      I again affirm the authenticity of the signature affixed on my February 11, 2019 Affidavit.  However, since the Defendants have questioned the authenticity of my

1

signature on that Affidavit, I am tendering the instant Affidavit with the certification of a

Notary Public.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2019

NAGIN KORMI

On this 14 day of March 20 19
before me, the undersigned notary public, personally appeared
Nagin Kormi
and proved to me through satisfactory evidence of identification,
which were U.S. Passport
to be the person whose name is signed on the proceeding or
Attached document in my presence

ANDRE GOMEZ
NOTARY PUBLIC
Commonwealth of Massachusetts
My Commission Expires Nov. 23, 2019

2

## CERTIFICATE OF SERVICE

Alan J. Mandel, an attorney, hereby certifies that he caused to be served a true and correct copy of the foregoing Plaintiff's Memorandum In Opposition To Defendants' Motion To Strike Plaintiff's Affidavit upon.

Counsel for Defendant, Antoinette Choate

Daniel Francis Konicek
Michael Corsi
KONICEK & DILLON
70 West Madison Street, Suite 2060
Chicago, Illinois 60602
(312) 239-0283
*dan@konicekdillonlaw.com*
*mcorsi@konicekdillonlaw.com*

Counsel for Defendant, David L. Lee

David Sorenson
Bryan J. Kirsch
THE LAW OFFICE OF EDWARD J. KOZEL
333 South Wabash Street, 25th Floor
Chicago, Illinois 60604
(312) 882-6789
*david.sorensen@cna.com*
*bryan.kirsch@cna.com*

pursuant to the District Court's ECF system on March 14, 2019.

_____ */s/ Alan J. Mandel*_____