## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NAGIN KORMI,

        Plaintiff,

   v.

ANTIONETTE CHOATE AND DAVID L. LEE,

        Defendants.

No. 16 CV 9415

Magistrate Judge McShain

## ORDER

Pending before the Court are the parties' motions *in limine* [443, 444, 447, 448].[1] The Court recently issued rulings on some of the parties' requests in these motions [482, 494, 496]. This order rules on the remaining outstanding issues and requests in the parties' motions *in limine*. The Court incorporates the background section and relevant legal standards from those prior orders.

## Discussion

### I.   Plaintiff's Motions *in Limine* [447]

#### A.   MIL No. 2 – Defendants' Advice/Admonitions to Plaintiff Regarding Prior Mediation

In connection with the allegations made in paragraphs 35 and 36 of plaintiff's amended complaint, [27] ¶¶ 35–36, and in light of the Court's March 12, 2024 ruling on the 2013 mediation [440], plaintiff requests that the Court enter an order holding the following:

   (1)   Defendants' advice that the "purported 'paper trail' relating to a prior mediation conducted would adversely affect [Plaintiff's case against her former employer] and, in particular, [Plaintiff's] damage claims" was inconsistent with governing Illinois law; and

   (2)   If Plaintiff's underlying case against her former employer had gone to trial, Plaintiff's former employer would have been

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

prohibited from making any reference to the mediation or any communication concerning it.

[447] 3. Plaintiff seeks a ruling as a matter of law on two allegations in its amended complaint but has provided no reason for the Court to do so prior to trial.

Defendants dispute the factual allegations in paragraphs 35 and 36 of the amended complaint. [64] 14–15; [65] 14–15. In opposition, defendants assert this is an improper motion *in limine* as there has been no summary judgment as to the issue of whether defendants' advice was "consistent with Illinois law." [454] 4.

The Court denies the motion. Plaintiff may argue at trial that defendants gave certain advice and that advice was wrong, provided such an argument is supported by the evidence and conforms with the Court's pretrial rulings, and defendants may refute that claim.

### B.  MIL No. 3 – Require Defendants to Adduce All Evidence Relevant to their Rebuttal of the Presumption of Fraud Concerning Self-Dealing During Their "Cross Examination" in Plaintiff's Case in Chief

Plaintiff asserts that once she establishes a *prima facie* case on her breach of fiduciary duty claim, the law then imposes a presumption that defendants breached their fiduciary duties and defendants must rebut that presumption with clear and convincing evidence that their representation (and the settlement agreement which resulted from it) was fair and did not result from any undue influence. [447] 4 (citing *Ball v. Kotter*, 723 F.3d 813, 826–27 (7th Cir. 2013)). Plaintiff describes what defendants specifically must demonstrate to rebut the presumption of self-dealing in this case as follows:

In this case, they must offer clear and convincing evidence that (1) the Retention Agreement, Assignment and, ultimately, the Settlement Agreement were offered by the lawyers with unquestionable good faith and with complete disclosure; (2) the client entered into the Retention Agreement, Assignment and Settlement agreement with a full understanding of all facts and their legal importance; and (3) the client's ultimate decision to settle her case was free from undue influence, and the settlement the Defendants demanded she consummate was fair to her.

[*Id.*] (citing *Ball*, 723 F.3d at 829, citing *Bruzas v. Richardson*, 945 N.E.2d 1208, 1215 (Ill. App. Ct. 2011)).

Plaintiff asserts that according to *Ball*, the Court shall decide whether the presumption has been rebutted after an evidentiary hearing. [447] 4 (citing *Ball*, 723 F.3d at 828, citing *Spring Valley Nursing Ctr., L.P. v. Allen*, 977 N.E.2d 1230, 1234 (Ill. App. Ct. 2012)). Plaintiff proposes that judicial economy will be best served by requiring defendants to present their evidence to overcome the presumption during their rehabilitative cross examination in plaintiff's case-in-chief. [*Id.*] According to plaintiff, the Court can then decide the applicable burdens of proof on plaintiff's breach of fiduciary duty claim "well in advance of the final conference on jury instructions and closing arguments." [*Id.*] 4–5.

This issue of "undue influence" relates to plaintiff's allegations surrounding the retention agreement and the assignment, and eventually the settlement agreement. At the time the parties briefed this request, defendants noted that the Court had not determined "that the Retention Agreement or the Settlement Agreement were legally or ethically improper." [454] 4. Defendants argued that there could be no presumption of fraud or undue influence with respect to the retainer agreement and assignment because defendants were not yet representing plaintiff at that point. [*Id.*] 5. In its April 29, 2024 order, the Court ruled as a matter of law that defendants' fiduciary duties did not attach at the time of the assignment and that the assignment was not void. [482] 3–13, 31. Accordingly, there is no remaining allegation that defendants breached a fiduciary duty to plaintiff or engaged in self-dealing as to the retention agreement and assignment.

Furthermore, there is no presumption of fraud or undue influence as to the settlement agreement because that was not a transaction or agreement between defendants and plaintiff. [454] 5; *see Maksym v. Loesch*, 937 F.2d 1237, 1242 (7th Cir. 1991) (noting that a presumption of undue influence only arises when the attorney enters into a transaction with his client during the existence of the fiduciary relationship); *Block v. Rosenberg*, No. 20 C 1053, 2021 WL 2660730, at *3 (N.D. Ill. June 29, 2021) (same); *Estate of Alford v. Shelton*, 89 N.E.3d 391, 397 (Ill. 2017) ("A presumption of fraud arises when a fiduciary benefits from a transaction involving the principal."). And plaintiff's allegations that defendants exercised undue influence in advising or "forcing" plaintiff to enter into the settlement agreement stem from plaintiff's assertion that defendants had a conflict of interest arising from the void and unenforceable assignment. Again, the Court has since ruled as a matter of law that the assignment is not void. The Court denies plaintiff's Motion *in Limine* No. 3 as moot.

C.     **MIL No. 4 – Bar Evidence of Extrinsic Facts, Prior Acts, and Propensity Evidence**

Plaintiff anticipates that at trial, defendants will seek to offer evidence of plaintiff's purported prior acts and/or plaintiff's "propensity to act" for improper

purposes. [447] 5. Plaintiff requests that under Federal Rule of Evidence 404, the Court bar evidence of the following:

a)     purported evidence that Plaintiff has a pattern or practice of "reneging" on agreements;

b)     purported evidence concerning the reasons why the attorney who represented Plaintiff prior to Defendants withdrew from the representation;

c)     purported evidence of Plaintiff's consultation with attorneys during the time that she was represented by Defendants concerning potential malpractice claims she might have against her former counsel;

d)     purported evidence concerning Deloitte's unproven allegation that Plaintiff had contrived a document in discovery;

e)     purported evidence of Plaintiff's employment experience at Intuit (after she was terminated by Deloitte and before she retained the Defendants) and the reasons/circumstances concerning the termination of her employment;

f)     a purported email from a purported landlord of the plaintiff concerning any aspect of Plaintiff's landlord tenant relationship;

g)     purported evidence concerning any other legal dispute involving the Plaintiff; and

h)     Plaintiff's personal beliefs and/or activities.

[*Id.*] 5. The Court denies this request as premature. The Court presumes the parties will follow the Federal Rules of Evidence and expects the parties to follow the procedures and limitations of the Court's pretrial ruling during trial. Plaintiff's Motion *in Limine* No. 4 is denied.

## II.   Defendants' Motions *in Limine* [443]

### A.   MIL No. 1 – Bar Examination of Witnesses Regarding the Illinois Rules of Professional Conduct Without First Having Provided the Rules and Comments to the Witness

Defendants argue that questioning any witness at trial about the Illinois Rules of Professional Conduct without providing the witness with the full text of the rules would be highly prejudicial. [443] 2. Defendants do not cite any case law in support of their assertion that the Court should require that any witness being questioned and testifying on the content and nature of the Illinois Rules of Professional Conduct, and whether defendants' representation of plaintiff properly conformed to the requirements of the rules, must first be provided the complete text of the rules. The Court denies defendants' Motion *in Limine* No. 1. The parties will be permitted to use

admitted exhibits freely and will be expected to follow the Federal Rules of Evidence to properly refresh witness recollection at trial, if necessary, with the Rules.

### B. MIL No. 4 – Bar Evidence Regarding Count III of the Plaintiff's Amended Complaint

Defendants request that the Court bar evidence of previously dismissed Count III of plaintiff's amended complaint alleging that defendants failed to return plaintiff's expense retainer and failed to provide her with a copy of her underlying litigation file. [443] at 8. *See* [27] ¶¶ 65–74 (Count III of amended complaint), ¶¶ 18(c), 53 (alleging that defendants did not spend any of the $10,000 cost retainer "war chest" and that defendants "failed to return this 'war chest' to" plaintiff after settlement was reached in October 2014 and "did not return such funds until June, 2016"). In February of 2017, defendants filed motions to dismiss plaintiff's amended complaint. [30, 31]. In a June 7, 2017 decision, Judge St. Eve granted in part and denied in part defendants' motions and dismissed Count III of the amended complaint:

> Defendants argue that Count III does not state a cause of action and improperly seeks injunctive relief. Indeed, Plaintiff's allegations in Count III pertain to her breach of fiduciary duty claim as alleged in Count I, and thus Defendants are put on notice that Plaintiff's breach of fiduciary duty claim incorporates these allegations. That being said, the proper way for Plaintiff to get the recovery she seeks is to file a motion to compel the underlying litigation files under Rule 37(a) and substantiate her motion with the necessary legal memorandum and exhibits. With this caveat, the Court grants Defendants' motion to dismiss Count III without prejudice.

[58] 4–5.

Defendants assert that discovery has concluded and plaintiff has presented no expert opinion in support of her Count I breach of fiduciary duty claim addressing what actions defendants purportedly should have taken and when they should have acted to return plaintiff's unused expense retainer and plaintiff's files from the underlying case. [443] 9. Defendants argue that because expert testimony is required to establish the standard of care and the Illinois "common knowledge" exception does not apply,[2] any testimony alleging that defendants violated a fiduciary duty to

---

[2] Defendants argue that "it would not be readily apparent to a lay juror (1) whether a duty to return the cost retainer and/or files existed; (2) at what time the Defendants were required to return the cost retainer and/or files; (3) the method by which the cost retainer and/or files would have been properly returned; (4) and what specific files and/or amounts that the Defendants were required to return." [443] 9–11 (citing *Barth v. Reagan*, 564 N.E.2d 1196 (Ill. 1990); *Ball v. Kotter*, 723 F.3d 813 (7th Cir. 2013)).

plaintiff or were otherwise wrongful in their handling of plaintiff's cost retainer and files would be improper, as well as highly prejudicial to defendants. [*Id.*] 9–12.

In response, plaintiff states that she "has not revived Count III and will not seek relief associated with the recovery and condition of the materials accumulated by" defendants in the underlying case but asserts that she "does seek to adduce evidence concerning the economic consequences of Defendant's failure to return her $10,000 cost retainer 18 months after [Defendant Lee] returned her security retainer." [455] 6. Plaintiff accordingly argues that she should be permitted to adduce evidence of defendants' failure to meet their fiduciary duties to protect and timely return plaintiff's property (*i.e.*, money and files). [*Id.*] 6–7 (citing Ill. Sup. Ct. R. 1.15 (2010)). Plaintiff also disagrees with defendants' assertion that the "common knowledge" exception does not apply and expert testimony is required to establish the standard of care for defendants' failure to timely return the cost retainer. Plaintiff characterizes this as a "plain and obvious breach of duty and the Rules of Professional Conduct," arguing that no expert opinion is necessary to prevail on an allegation of breach of duty "that a jury with common knowledge and an ability to read can easily assess." [*Id.*] 7 (quoting *House v. Maddox*, 360 N.E.2d 580, 584 (Ill. App. Ct. 1977) ("applying common knowledge exception to expert testimony requirement where lawyer failed to meet widely recognized time deadline that was 'so grossly apparent . . . that a layman would have no difficulty in appraising it'")).

Count I of the amended complaint claiming breaches of fiduciary duty alleges that defendants "failed to safeguard Plaintiff's cost retainer in a separate and identifiable Trust account and failed to return such funds, or take diligent efforts to return such funds, at the conclusion of their representation in violation of" Illinois Rule of Professional Conduct 1.15. [27] ¶ 56(h). Count I also asserts that defendants are jointly and severally liable to plaintiff "for all of the damages which they should have reasonably anticipated would results from their breaches of fiduciary duty," including the "damages sustained in connection with the 20-month delay in returning Plaintiff's $10,000 cost retainer." [*Id.*] 23–24 at ¶ 59(d).

Although plaintiff's expert Mary Robinson opines on the Illinois Rules of Professional Conduct, as the Court concludes below, Robinson's expert report does not mention Rule 1.15 or the cost retainer, *see* [444-3], nor was Rule 1.15 discussed during Robinson's deposition, *see* [444-4]. *See infra* III.A.3.c (Court's ruling prohibiting Robinson from testifying at trial as to defendants' alleged violations of Rule 1.15). In addressing the broad relief requested by defendants in their motion to exclude Robinson's testimony, the Court also concludes below that an attorney's handling of client funds and property, accompanied by many layers of requirements and exceptions enumerated in Rule 1.15, is not within "the common knowledge of laypersons." *See infra* III.A.3.d. But as further explained below, the Court will refuse to essentially strike or bar whole allegations or paragraphs from the plaintiff's

amended complaint via motions that address only evidentiary matters for trial and the testimony of experts.

To the extent that allegations in Count III overlap with allegations in Count I of the amended complaint, the Court denies defendants' Motion *in Limine* No. 4. The Court will not strike allegations from the amended complaint, but this ruling is subject to the Court's other pretrial rulings, most notably that Rule 1.15 does not fall within the "common knowledge" rule and that expert testimony is required to establish the standards of care.

## III. Defendants' *Daubert* and Expert-Related Motions *in Limine* [444]

### A. Mary Robinson

Mary Robinson, an Illinois attorney and former Administrator of the Attorney Registration and Disciplinary Commission of the Illinois Supreme Court, is plaintiff's proposed expert on professional responsibility who will opine regarding defendants' fiduciary obligations to their client. [460] 2. Defendants' motion seeks to limit and/or exclude Robinson's expert testimony in three ways: (1) bar Robinson from opining that defendants violated the Illinois Rules of Professional Conduct as providing impermissible legal conclusions; (2) bar Robinson from testifying that the assignment is illegal, void, unenforceable, unethical, or the like; and (3) bar Robinson from testifying as to allegations that defendants violated Rules of Professional Conduct 1.0, 1.4, 1.5, 1.15, or 1.16. *See* [444] 29–33, 33–34, 35–37.[3]

### 1. Impermissible Legal Conclusions

Defendants criticize Robinson's expert report as offering impermissible legal conclusions and argue that "Robinson should not be permitted to offer opinions to the effect that the Defendants violated any of the Rules of Professional Conduct." [444] 30–33.

"Opinions that amount to legal conclusions do not assist the trier of fact, and expert testimony that is 'largely on purely legal matters and made up of solely legal conclusions' is not admissible." *Client Funding Sols. Corp. v. Crim*, 943 F.Supp.2d 849, 863 (N.D. Ill. 2013) (quoting *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003)). *See also CDX Liquidating Tr. ex rel. CDX Liquidating Tr. v. Venrock Assocs.*, 411 B.R. 571, 587 (N.D. Ill. 2009) ("Expert testimony about the governing law is barred under Rule 403 because it would be a waste of time if witnesses or counsel should duplicate the judge's statement of the law, and it would intolerably confound the jury to have it stated differently. . . . [The proffered expert] cannot judge what Defendants did or did not do; nor whether they

---

[3] Defendants' motion includes a fourth request as to Robinson's expert opinion, [444] 46–58, which the Court addressed in its May 6, 2024 order. [493, 494].

violated the law in that if he were to opine (and to explain how) their conduct constituted a breach of fiduciary duty, he would necessarily be deeming Plaintiff's version of the facts to be the credible account, which is prohibited. After all, the issue of whether Defendants breached their duties is an issue for the trier of fact to decide.").

In *Client Funding Solutions Corporation v. Crim*, third party plaintiff Crim proffered Robinson as her ethics expert and third party defendant VLG's motion *in limine* sought to exclude Robinson's opinion that VLG "breached its fiduciary duties of competence and loyalty to" Crim. 943 F.Supp.2d at 863. VLG argued that this opinion was improper "because whether VLG breached its fiduciary duty is a legal conclusion for the Court." *Id.* Judge Dow agreed and granted the motion "to the extent that Robinson may not testify that any conduct by VLG . . . constituted a breach of fiduciary duty." *Id.* Judge Dow clarified that Robinson was allowed to "testify as to the professional and ethical obligations imposed on attorneys and may provide her take on the 'concrete information' of record that the fact-finder may consider in drawing its own conclusions as to whether VLG . . . breached their fiduciary duties." *Id.* at 863–64. *See Webster Bank, N.C. v. Pierce & Assocs., P.C.*, No. 16-cv-2522, 2020 WL 616467, at *4 (N.D. Ill. Feb. 10, 2020) ("In considering whether the proposed testimony is improper, courts and parties must recognize the difference between stating a legal conclusion (which is not permitted) and providing concrete information against which to measure abstract legal concepts (which is permitted).").

Similarly, in *Webster Bank, N.C.*, plaintiff alleged legal malpractice under Illinois law asserting that defendant negligently handled a suit-on note claim. Defendant moved to strike plaintiff's expert, G. Patrick Murphy, a practicing attorney and retired federal judge. The court denied the motion, but barred Murphy from testifying to legal conclusions:

> Murphy will not be permitted to offer the following testimony as it amounts to legal conclusions that impinges on the duty of the jury: "Pierce's action is an egregious violation of the standard of care" (Dkt. 174, Ex. B, 11), "Pierce's actions evidence a conscious indifference by Pierce to Webster," (*Id.*) "[t]he unauthorized dismissal of the second action on February 26, 2014 by Pierce is a deviation of the standard of care." (*Id.*)

> Murphy can testify as to the standard of care, what reasonably careful lawyers would have done, and what mistakes Pierce made. Murphy cannot tell the jury that Pierce violated the standard of care—that is the very question the jury will answer. It is the jury's role to determine whether Pierce violated the standard of care, not Murphy's. *See Halcomb v. Washington Metropolitan Area Transit Authority*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007) ("[A]n expert may offer

his opinion as to facts, that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."). Murphy may also testify as to causation for Webster's damages in terms of attorneys' fees and costs. But any causation testimony must be based on Pierce's conduct, not on conclusory statements that Pierce violated the standard of care. Again, Murphy may testify that Pierce's actions caused Webster to irretrievably lose its cause of action against Ms. Jasinski, that Pierce could have prevailed on the underlying suit-on-note action if it behaved differently, and that reasonably careful Illinois attorneys would have behaved differently. But Murphy cannot conclusively state that Pierce violated the standard of care.

*Webster Bank, N.C.*, 2020 WL 616467, at *5.

For these reasons, the Court grants defendants' request to bar Robinson from offering legal conclusions, including testimony that defendants violated the Illinois Rules of Professional Conduct or breached their fiduciary duties. *See, e.g.*, [444-3] 6 (opining that defendants, "in failing to exercise reasonable care and skill, breached the fiduciary duty of loyalty required of Illinois attorneys"), 6 (stating that defendants "violated their duties as fiduciaries" and acted "in violation of Rule 1.8(i)"), 7 (opining that defendants "fail[ed] to comply with the requirements of Rule 1.8(a)"), 8 (stating that defendants "violated their duties as fiduciaries to [p]laintiff, and are deemed to have secured her assent to the assignment by means of undue influence").

### 2. Bar Robinson from testifying that the assignment is illegal, void, unenforceable, *etc.*

The Court grants defendants' motion to bar Robinson[4] from testifying that the assignment is illegal, void, unenforceable, unethical, or the like. [444] 33–35. In its April 29, 2024 order, the Court ruled as a matter of law that defendants' fiduciary duties did not attach at the time of the assignment and that the assignment was not void. [482] 3–13, 31. Robinson herself acknowledged during her deposition that if her conclusion regarding the assignment were incorrect, her opinion as to Illinois Rule of Professional Conduct 1.8(a) (addressing when lawyers entered into business transactions with clients) would be negated. [444-4] 16 (Tr. 55:18–24, 56:1–12). Accordingly, any opinions by Robinson relating to the assignment are excluded and corresponding objections to those opinions are moot.

---

[4] Defendants' motion more broadly requests that the Court "bar plaintiff and plaintiff's witnesses and experts (specifically including Robinson) from making any statements, offering or eliciting testimony or opinions, or making any arguments that relate, refer or pertain to the assignment as illegal, void, unenforceable, unethical, or the like." [444] 33, 35. However, this goes beyond the purported scope of this motion (*i.e.*, experts) and the motion's applicable heading focusing on Bucheit and Robinson. But the Court's ruling on that legal issue applies to all aspects of the trial, and thus this restriction defendants seek has already been ruled upon.

### 3. Failure to Opine on Rules 1.0, 1.4, 1.5, 1.15, or 1.16 in the Expert Report

Defendants' expert-related motions *in limine* include a section particularly directed at the opinions of Robinson but generally requesting that the Court bar plaintiff and plaintiff's witnesses and experts[5] from making or eliciting any testimony, opinions, or arguments that relate, refer, or pertain to accusations in the amended complaint that are unsupported by expert opinions, more specifically, plaintiff's allegations that defendants violated certain Illinois Rules of Professional Conduct. [444] 35–37, 40.

Count I of the amended complaint alleges that defendants breached their fiduciary duties to plaintiff in the underlying case by, *inter alia*, violating several Illinois Rules of Professional Conduct. *See* [27] ¶¶ 3, 5, 49, 55–56. Defendants seek to bar references to Rules 1.0, 1.4, 1.5, 1.15, and 1.16 because plaintiff has failed to provide expert testimony substantiating any purported violations of these rules. [464] 20. Accordingly, defendants argue such allegations must be excluded from trial because it is generally required that the standard of care against which an attorney defendant's conduct will be measured be established through expert testimony, and failure to present expert testimony is usually fatal to a plaintiff's case. [444] 35–37 (citing *Barth v. Reagan*, 564 N.E.2d 1196, 1199–1200 (Ill. 1990); *Ball v. Kotter*, 723 F.3d 813, 823–24, 829 (7th Cir. 2013)). Defendants point out that although the amended complaint alleges defendants violated Rules 1.0(e), 1.2, 1.4, 1.5, 1.8, 1.15, and 1.16, Robinson's expert report only opines on Rules 1.2, 1.7,[6] and 1.8.[7] [444] 36–37 (citing [27] ¶ 56; [444-3] 6–9). Defendants argue that because plaintiff has not offered expert opinion testimony to substantiate plaintiff's allegations relating to Rules 1.0(e), 1.4, 1.5, 1.15, or 1.16, it would be inappropriate and highly prejudicial for plaintiff to present those allegations to the jury. [*Id.*] 36–37.

In response, plaintiff simply asserts that she "is entitled to augment her legal malpractice claim with reference to the Rules of Professional Conduct." [460] 23–24. In support, plaintiff quotes one Illinois state court case stating that "[b]ecause legal malpractice actions involve conduct failing to adhere to certain minimum standards, ethical standards are relevant considerations." [*Id.*] (quoting *Brannen v. Seifert*, 1 N.E.3d 1096, 1116–17 (Ill. App. Ct. 2013)). It is not clear to the Court how this quote supports plaintiff's position, nor how it refutes defendants' assertion that without

---

[5] The only other expert that defendants identify in this section is Bucheit, but the Court has previously ruled on defendants' requests in this section of defendants' motion as to Bucheit. *See* [482] 26–28 (granting defendants' request as to Bucheit's Opinion 1 but denying as to Opinion 2).

[6] Although Robinson's expert report opines on Rule 1.7(a)(1), [444-3] 7–8, the amended complaint does not allege violations of Rule 1.7. *See* [27].

[7] Robinson's report also generally addresses attorneys' duties to "act toward their client with the highest degree of honesty, candor, fairness, good faith, and undivided loyalty." [444-3] 6.

expert testimony opining on these rules of professional conduct, plaintiff cannot sustain her allegations as to those rules. Furthermore, the *Brannen* case upon which plaintiff relies involved the question of whether jury instructions including the text of the attorney disciplinary rules were improper. *Brannen*, 1 N.E.3d at 1116–17.

"It is true that, under Rule 26, experts must provide written reports with 'complete statement[s] of all opinions the witness[es] will express and the basis and reasons for them.'" *Ploss v. Kraft Foods Grp., Inc.*, 637 F.Supp.3d 561, 579 (N.D. Ill. 2022) (quoting Fed. R. Civ. P. 26(a)(2)(B)(i)). "But an expert report need not cover every detail of what an expert might say in his or her forthcoming testimony. The purpose of an expert report 'is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion ... so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.'" *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, 379 F.Supp.3d 687, 703 n.8 (N.D. Ill. 2019) (alteration in original) (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)). *See also Smith v. City of Chi.*, No. 15-cv-03467, 2019 WL 4825232, at *5 (N.D. Ill. Oct. 1, 2019) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010)) (same). And "experts are not 'strictly limited' to the words in their reports." *Ploss*, 637 F.Supp.3d at 579 (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)). "Even testimony outside the scope of experts' reports does not automatically render such testimony inadmissible. Rather, in such circumstances, courts must assess whether the experts' non-disclosure—the testimony they offer ostensibly beyond that promised in the experts' reports—'was justified or harmless.'" *Id.* (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)). *See also* Fed. R. Civ. P. 37(c)(1); *Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) ("The consequences for violating these rules can be dire. Under Rule 37(c)(1), '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness ... at a trial, unless the failure was substantially justified or is harmless.'"); *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) ("The consequence of non-compliance with Rule 26(a)(2)(B) is exclusion of an expert's testimony ... unless the failure was substantially justified or is harmless.") (cleaned up).

### a.     Rules 1.0(e) and 1.4

The Court does not agree with defendants' assertion that plaintiff has not offered expert testimony to substantiate her allegations relating to Rules 1.0(e) (defining informed consent) and 1.4 (addressing communication with and keeping a client informed). [444] 37. Directly citing these rules, Robinson's expert report states that "[t]o secure informed consent, a lawyer must provide sufficient information and explanation to allow a client to understand the significance of a decision, the material risks involved and available alternatives." [444-3] 8.

11

However, in applying these rules and their standard to the case, Robinson only opines on whether defendants secured plaintiff's informed consent as to the assignment of her claim for statutory attorneys' fees. [444-3] 8. The amended complaint alleges much broader violations, stating that defendants "failed to obtain Plaintiff's informed consent concerning most aspects of her representation in violation of Rule 1.0(e)[.]" [27] 19–20 at ¶ 56(a). As to Rule 1.4, the amended complaint alleges that defendants failed to properly inform plaintiff "regarding all of the circumstances necessary to obtain Plaintiff's informed consent and failed to explain matters to Plaintiff sufficiently to permit her to make informed decisions regarding her representations[.]" [*Id.*] 20 at ¶ 56(c). *See also* [*id.*] 20–21 at 56(e) (allegations involving Rule 1.4, but in relation to the assignment). Throughout the amended complaint, plaintiff refers to moments during the representation that defendants did not acquire her informed consent. *See* [27] 14 at ¶ 39 (alleging defendants never discussed nor sought plaintiff's informed consent to joint motion to extend fact discovery deadlines), 15 at ¶ 39 (alleging defendants never informed plaintiff that an additional discovery had been conducted), 15 at ¶ 41 ("Prior to the entry of the 'agreed' motion, Plaintiff did not provide informed consent for Defendants to enter into any agreement which would defer Defendants' obligation to conduct discovery and prepare the case for trial."), 16 at ¶ 45 (alleging that after July 2014, defendants "decided not to take further discovery or hire any consultants or experts" and that defendants "made such decisions without obtaining Plaintiff's informed consent"). Robinson's report provides no expert opinion on defendants' alleged violations of Rule 1.0(e) or Rule 1.4 as to any other aspect of defendants' representation. The Court reiterates that with the Court's ruling as a matter of law that the assignment was not void, plaintiff is barred from arguing or providing any expert testimony as to the assignment, including Robinson's testimony. *See supra* III.A.2; [482] 10–13.

Rule 1.4 was also mentioned at Robinson's deposition. *See* [444-4] 17, 29, 35–37. "Questions asked at depositions may expand the scope of the expert's testimony." *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. July 26, 2013). *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 659 (N.D. Ill. 2006) (stating that questions asked at a deposition that go beyond the reports "may well have a bearing on the permissible scope of testimony at trial").

The first mention of Rule 1.4 during Robinson's deposition involved "quantum meruit" and when that constitutes a material circumstance that the attorney would have to advise a client about. [444-4] 17 (Tr. 63:10–24, 64:1–18). The second discussion of Rule 1.4 was more general:

Q.    We previously talked about what that rule requires. Would you agree with me that there's no boilerplate that an attorney can turn to that tells them what to advise a client under a particular set of circumstances?

A. I agree that there's no boilerplate, yes.

Q. An attorney, in order to comply with 1.4, must rely on, among other things, their own understanding of the client and the client's ability to best receive information?

A. That would be relevant.

Q. To determine how best to provide a client with the information reasonably necessary for the client to make an informed decision, the attorney would draw on their experience of past communications with that client to ensure that they're communicating effectively?

A. Yes.

[*Id.*] 35 (Tr. 136:21–24, 137:1–24), 36 (Tr. 138:1–24, 139:1–4). These questions and responses during Robinson's deposition did not expand the scope of Robinson's testimony to include opinions on whether defendants obtained plaintiff's informed consent about discovery and extensions of discovery deadlines in the underlying case.

And the final referral to Rule 1.4 in Robinson's deposition clarified that Robinson offered no opinion as to Rule 1.4 and the settlement: "Well, my section of the report is clearly directed at the first end of the representation. . . . And it had nothing to do with – I don't think I've offered a 1.4 opinion on the settlement." [*Id.*] 37 (Tr. 142: 22–24, 143:2–4). *See also* [*id.*] 36 (Tr. 140:21–24, 141:1), 37 (Tr. 142:9–14). Robinson herself therefore indicates that the focus of her expert report was the beginning of the representation and that she has provided no opinion on whether defendants violated Rule 1.4 in connection with the settlement.

While Robinson's opinions focus on the assignment, the Court denies the defendants' motion as to Rules 1.0(e) and 1.4. Robinson may testify as to Rules 1.0(e) and 1.4, but any further testimony she offers at trial as to those rules must also fall within the scope of her expert report and deposition testimony. This ruling is also subject to the Court's pretrial rulings, to include that the assignment is not void and that Robinson may not testify to legal conclusions within the jury's domain.

### b. Rule 1.5

The amended complaint also alleges that defendants collected an unreasonable fee in light of the limited amount of work they performed and that defendants failed to advise plaintiff about the effect withdrawing their representation would have on the fees in violation of Rule 1.5. [27] 20 at ¶ 56(d), 22 at ¶ 56(k). *See* Ill. Sup. Ct. R.

1.5(a), (f)(2) (2010). Robinson's expert report does not opine on Rule 1.5, but the rule did come up once during Robinson's deposition:

> Q.    Are there any admonishments or forms of advice that an attorney is required to give to a prospective client in relation to a potential contingency fee arrangement between an attorney and that prospective client?

> A.    I would say that the bear minimum would have to be in writing, and it would have to be the essential terms have to be spelled out.

>       . . .

> A.    Well, whatever rule 1.5 requires to be in writing, yes.

> Q.    Well, right. So 1.5 is the ethical obligation on the attorney and, furthermore, says that any contingency fee needs to be in writing?

> A.    Yes.

> Q.    My question is more so an attorney sitting across the table from a client, a prospective client proposing to that person entering into a contingency fee agreement with that attorney in order for that attorney to handle that person's matter, is there any advice that that attorney is required to give that person?

> A.    Beyond what is required under 1.5, I would say not unless there's some unusual -- different about the case.

> Q.    1.5 doesn't require advice, it simply requires that that advice has to be in writing?

> A.    Well, it requires that the agreement include some recitations so that the client understands what the actual terms are.

> Q.    Okay. Such as?

> A.    It doesn't require advice beyond that, right.

>       . . .

> Q.    I'm talking about advice that this attorney must communicate to the client rather than the contents of the contingency fee agreement.

14

A.     Beyond that, probably not. Depends on the case.

[444-4] 28.

As the Court noted in the preceding section, "[q]uestions asked at depositions may expand the scope of the expert's testimony." *Guarantee Tr. Life Ins. Co.*, 291 F.R.D. at 237. *See also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. at 659 (stating that questions asked at a deposition that go beyond the reports "may well have a bearing on the permissible scope of testimony at trial"). However, Robinson's deposition did not add any opinion as to plaintiff's allegations that defendants collected an unreasonable fee in light of the purportedly limited amount of work they performed or that defendants failed to inform plaintiff of the effect withdrawing their representation would have on the fees.

Again, the Court denies defendants' motion as to Rule 1.5, as Robinson may testify as to the content of the rule and her understanding of it, again subject to the scope of her report and deposition testimony, as well as the Court's prior rulings on the legal issue of the assignment and barring Robinson from testifying as to legal conclusions within the jury's domain.

## c.     Rules 1.15 and 1.16

The amended complaint alleges that defendants violated Rule 1.15 by "fail[ing] to safeguard Plaintiff's cost retainer in a separate and identifiable Trust account and failed to return such funds, or take diligent efforts to return such funds, at the conclusion of their representation[.]" [27] 22 at ¶ 56(h). Rule 1.15 involves the general duties of a lawyer regarding safekeeping property. *See* Ill. Sup. Ct. R. 1.15 (2010). The amended complaint also alleges that defendants violated Rule 1.16, which involves lawyers declining or terminating a representation, by threatening to withdraw as plaintiff's counsel "knowing that any attempted withdrawal would result in a material adverse effect on Plaintiff's interests." [27] 22 at ¶ 56(i). To the extent this "material adverse effect on Plaintiff's interests" refers to the assignment, any such allegation is no longer viable. *See supra* III.A.2; [482] 10–13. For example, the amended complaint's other allegations under Rule 1.16 clearly refer to and involve the assignment. *See* [27] 21 at ¶ 56(g), 22 at ¶ 56(j). Now that the Court has ruled as a matter of law that the assignment is void, these allegations are excluded from the case.

Nevertheless, Robinson's expert report does not mention Rules 1.15 or 1.16. *See* [444-3]. Nor were these rules discussed during Robinson's deposition. *See* [444-4]. It would not be harmless to allow plaintiff to present expert testimony at trial on topics that the expert did not opine on in either her report or during her deposition. Plaintiff needed to convey the full substance and scope of Robinson's opinion so that

15

defendants could be "ready to rebut, to cross-examine, and to offer a competing expert if necessary.'" *Huntington Chase Condo. Ass'n*, 379 F.Supp.3d at 703 n.8.

The Court prohibits plaintiff from presenting testimony from Robinson at trial as to defendants' alleged violations of Illinois Rules of Professional Conduct 1.15 and 1.16.

### d.    Scope of the Requested Relief

The Court acknowledges that defendants' motion requests a broader scope of relief than the Court is addressing in this ruling. Defendants argue that plaintiff "has failed to sustain most of her allegations in Count I through expert testimony" and that because expert testimony is required to establish the standard of care, plaintiff should not be allowed to present those accusations to the jury. [444] 35–37. There is a disconnect between the relief requested in the header to this section of defendants' motion ("Bar Bucheit and Robinson From Offering Gratuitous Testimony Regarding Breaches of the Standard of Care or Fiduciary Duties, or Violations of the Rules of Professional Conduct") and the overall scope of the motion itself which was filed as addressing experts, and then the broader relief requested at the end of this particular section of the motion:

> Wherefore, the Defendants respectfully request that this Honorable Court enter an Order barring the Plaintiff, and her witnesses, experts and attorneys, from making any statements, offering or eliciting any testimony or opinions, or making any arguments, directly or indirectly, that relate, refer or pertain to accusations in the Plaintiff's Amended Complaint that are unsupported by expert opinions and/or expert criticisms of actions or omissions that did not proximately cause any of the Plaintiff's asserted damages.

[444] 35–37, 40. This latter requested relief—*i.e.*, to essentially dismiss certain allegations from the amended complaint and plaintiff's claims—goes beyond the purported scope of a motion to limit and/or bar opinions in Robinson's expert testimony at trial and certainly goes beyond the purported focus of this motion (*i.e.*, experts) and the motion's applicable heading.

As noted earlier, the Court recognizes that "[g]enerally, a plaintiff must establish the standard of care against which the defendant attorney's conduct must be measured through expert testimony, and the failure to present expert testimony is typically fatal to the plaintiff's case. *See Barth v. Reagan*, 564 N.E.2d 1196, 1199–1200 (Ill. 1990)." *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, 2022 WL 540662, at *1 (N.D. Ill. Feb. 23, 2022). *See also Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1130 (Ill. 2000) ("Expert testimony is necessary to establish both (1) the standard of care expected of the professional[,] and (2) the professional's deviation

from the standard."); *Advincula v. United Blood Servs.*, 678 N.E.2d 1009, 1021 (Ill. 1996) (stating that "in professional negligence cases, unlike negligence actions in general, the plaintiff bears a burden to establish the standard of care through expert witness testimony"). "Illinois courts, however, have carved out a niche from this general requirement, known as the 'common knowledge rule.'" *Ball v. Kotter*, 723 F.3d 813, 822 (7th Cir. 2013) (citing *House*, 360 N.E.2d at 584). Under this "common knowledge rule," "no expert testimony is needed 'where the professional's conduct is so grossly negligent . . . that a layperson could readily appraise it[.]" *Id.* (alterations in original) (quoting *Advincula*, 678 N.E.2d at 1021). *See also Hatchett v. W2X, Inc.*, 993 N.E.2d 944, 966 (Ill. App. Ct. 2013) (stating that the "general rule does not apply where the common knowledge of laypersons allows them to recognize the attorney's negligence"). Although defendants' motion refers to the common knowledge rule, [444] 35–36, it does not evaluate whether any of the rules Robinson failed to opine on in her report fall within this exception. Rather, defendants make a blanket assertion that because Robinson failed to include Rules 1.0, 1.4, 1.5, 1.15, and 1.16 and plaintiff provides no other expert witness opining on these rules, then plaintiff is prohibited from raising these allegations at trial.

"[T]he Illinois Rules of Professional Conduct and the affirmative obligations required under them and Illinois case law are relevant to the standard of care." *Ball*, 723 F.3d at 822 (citing *Owens v. McDermott*, 736 N.E.2d 145, 157 (Ill. App. Ct. 2000)). But because the Rules "do not establish a separate duty or cause of action" and are "not an independent font of liability," "a violation of the Rules in and of itself does not establish liability in a legal malpractice case, and there is a difference between having a 'duty' to do something under the Rules and determining just what that 'something'—i.e., the standard of care—encompasses." *Id.* at 823. And "what is required to satisfy a more complex 'duty'—one based on a professional's *skill*—is different than when an attorney misses a deadline, fails to comply with a statute of limitations, or completely neglects to take any action regarding a case." *Id.* (emphasis in original) (citing *Barth*, 564 N.E.2d at 1201). "'Standard of care' is an abstract concept to a non-attorney, especially in a legal malpractice claim where the particular type of services rendered to [clients] are material to the analysis, and attorneys are subject to unique duties and limitations . . . ." *Signal Fin. Holdings*, 2022 WL 540662, at *2.

The nuances of what constitutes "informed consent" under Rules 1.0(e) and 1.4 are not within the common knowledge of laypersons. *See Ball*, 723 F.3d at 823–24 ("Some negligence is obvious; other types are not. Communicating with clients and recognizing conflicts of interest in a legal transaction do not fit within these 'obvious' examples or the purview of a lay juror."). So too the reasonableness of the fee defendants charged plaintiff, particularly in light of the many factors to consider under Rule 1.5, does not present a situation "where the record discloses obvious and explicit carelessness in defendant's failure to meet the duty of care owed by him to plaintiff[.]" *Id.* at 822 (quoting *Brainerd v. Kates*, 386 N.E.2d 586, 589 (Ill. App. Ct.

1979)). As to Rule 1.15, an attorney's handling of client funds and property, accompanied by many layers of requirements and exceptions, is not within "the common knowledge of laypersons." Nor is the question of whether the representation was terminated "without material adverse effect on the interests of the client" under Rule 1.16.[8]

In short, the allegations in this case do not involve "the most obvious cases of negligence," *Signal Fin. Holdings*, 2022 WL 540662, at *2, such that a layperson could readily appraise it. Expert testimony is therefore required to establish the standards of care as to the allegations in the second amended complaint that defendants violated the Illinois Rules of Professional Conduct.

So, the motion is granted in so much as expert testimony is required to establish the standards of care. However, the Court refuses to reach the full breadth of defendants' requested relief and will not essentially strike or bar whole allegations or paragraphs from the plaintiff's amended complaint via this motion that addresses only the testimony of experts Robinson and Bucheit. The Court has addressed particularized and specific argument raised by defendants as to both experts and their testimony will be subject to those rulings and the Court's other rulings, for example on the legal issue of the assignment.

### B. Kathleen Graham

As part of her breach of fiduciary duty claim, plaintiff alleges that certain non-monetary terms of the underlying settlement agreement, particularly the "no future employment" clause, prohibit her from obtaining gainful employment. [444] 41. *See* [27] ¶¶ 50, 59(a). Defendants raise another *Daubert* challenge, arguing that plaintiff should be barred from offering opinions provided by Kathleen Graham in her expert report and during her deposition because Graham's opinions employed "flawed and unreliable methodology." [444] 41.

"In performing its gatekeeper role under Rule 702 and *Daubert*, 'the district court must engage in a three-step analysis before admitting expert testimony.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). The Court "'must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting *Myers*, 629 F.3d at 644). Defendants attack Graham's opinions under the second prong: "Methodologically speaking, Graham's opinions derive from building upon one flawed assumption after another to reach a conclusion that while testable, was never tested."

---

[8] The Court notes that the amended complaint contains allegations that defendants violated Rule 1.16 in connection with the assignment. [27] 21 at ¶ 56(g), 22 at ¶ 56(j). Now that the Court has ruled as a matter of law that the assignment is void, these allegations are excluded from the case.

[444] 46. Although they do not explicitly identify it as such, defendants also raise an issue with Graham's qualifications, which falls under prong one: "Graham was clear that she was not retained to offer a legal interpretation. . . . Graham has no legal training . . . . Thus, she had no basis to analogize the 'no future employment' clause to a non-compete agreement in the first instance." [*Id.*] 44.

Plaintiff describes Graham as an executive search, recruitment, and compensation consultant and offers her as an expert to opine on economic consequences of Section 12 of the Settlement Agreement. [468] 6. The district court's "'gatekeeping' obligation . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.'" *Gopalratnam*, 877 F.3d at 779 (alteration in original) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)). *See also Lees*, 714 F.3d at 521 (noting that "the *Daubert* analysis applies to all expert testimony under Rule 702, not just scientific testimony"). And because "there are many different kinds of experts, and many different kinds of expertise," the test of reliability is flexible. *Gopalratnam*, 877 F.3d at 780 (quoting *Kumho Tire*, 526 U.S. at 141, 150). The Advisory Committee Notes to Rule 702 emphasize that "[a]n opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist." Fed. R. Evid. 702, Advisory Committee Note (2000). *See id.* ("While the relevant factors for determining reliability will vary from expertise to expertise, the amendment rejects the premise that an expert's testimony should be treated more permissively simply because it is outside the realm of science.").

In short, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* "The district court holds broad discretion in its gatekeeper function of determining the relevance and reliability of the expert opinion testimony." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017) (citing *Kumho Tire*, 526 U.S. at 141). And "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (emphasis in original).

Plaintiff's amended complaint alleges that defendants forced her into a settlement that was not fair to her, which included a nonmonetary "no future employment or relationship" clause:

> To ensure that Employer would settle the case and agree to pay them legal fees, Defendants abandoned negotiation efforts which would protect Plaintiff's interests in the nonmonetary terms of the Settlement Agreement. In particular, Defendants failed to properly protect Plaintiff's privacy, professional reputation and ability to seek and obtain future employment in the consulting industry. Defendants insisted that Plaintiff agree to disclose to any future employer that she would be

unable to work on matters which in any way related to Employer or any of its clients. Given the nature of Plaintiff's training, employment experience with multiple consulting firms and interest in further developing her career in the consulting profession, Plaintiff's ability to offer her services to traditional consulting firms and traditional consulting clients was effectively eliminated by this provision in the Settlement Agreement. Defendants also insisted the Plaintiff agree not to apply for future employment with Employer, even though Defendants knew, or should have known, that the Equal Employment Opportunity Commission advised that such agreements constituted unlawful retaliation under applicable federal statutes.

[27] ¶¶ 50, 59(a).

Graham's expert report opines that "certain aspects of the Settlement Agreement were and are unreasonable, unprecedented, and caused harm to" plaintiff. [444-5] 6. In Section I of her report, Graham criticizes five paragraphs of the settlement agreement: (1) Section 1(a) defining the scope of "Deloitte entities,"[9] (2) Section 12(a), (3) Section 12(b), (4) Section 12(c), and (5) Section 12(d). [*Id.*] 6–9.

**12. No Future Employment or Relationship.** a) Kormi expressly waives and releases any and all rights or claims (if any) to employment, re-employment, assignment or reinstatement with or to any Deloitte Entity insofar as Kormi is aware of the identity of the same as a Deloitte Entity and insofar as the same has not otherwise ended its relationship with Deloitte Consulting. Kormi further specifically agrees not to seek or accept a position or assignment as an employee or to seek or accept a position or assignment as a direct contractor with or to any Deloitte Entity (herself, or by seeking or accepting a position or assignment with another person or entity where she knows or has reason to know that such position or assignment would involve her providing services to a Deloitte Entity (hereinafter, a "direct subcontractor")) of which she is aware is a Deloitte Entity, insofar as such Deloitte Entity has not otherwise ended its relationship with Deloitte Consulting. For avoidance of doubt, the foregoing sentence is not breached solely by Kormi (x) responding to a blind ad, to a written solicitation that does not reveal the name of the employer, or to a written solicitation from an employer whose name does not make it reasonably apparent that it is

---

[9] "'Deloitte Entities' shall mean Deloitte Consulting, Deloitte LLP, Deloitte & Touche LLP, Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, Deloitte Services LP, the Deloitte Touche Tohmatsu verein, Deloitte Global Services Limited, Deloitte Global Services Holdings Limited, Deloitte Touche Tohmatsu Limited ('DTTL') and any and all DTTL associate and member firms, and all their respective past, present and future parent companies, subsidiaries, other affiliates, divisions, related entities, and joint venturers, and all their respective predecessors, successors, transferees and assigns." [182] 1.

affiliated with any of the Deloitte Entities, in each case unless Kormi otherwise is or reasonably should be aware that the entity in question is one of the Deloitte Entities, or (y) seeking or accepting a position or assignment with another person or entity that performs services for a Deloitte Entity, as long as she neither knows nor has reason to know that such position or assignment would involve her providing services to a Deloitte Entity; and, in each case, provided further that nothing herein limits or restricts the Deloitte Entities' other respective rights under this Section 12, including without limitation to cease any further interviewing, consideration, employment or retention (if any) that may result from any such response by Kormi.

b) In the event that Kormi does seek or obtain a position or assignment as an employee or a direct contractor (including a direct subcontractor) with or to any of the Deloitte Entities (whether or not in breach of this Agreement), it is agreed and understood that this Agreement shall constitute good cause and a legitimate and non-discriminatory basis for the applicable Deloitte Entity or Deloitte Entities: 1) to refuse to accept an application for employment or proposal for retention or assignment as a direct contractor (including a direct subcontractor) from or involving Kormi; 2) to refuse to interview Kormi; 3) to refuse to hire or retain or accept an assignment of Kormi; and 4) in the event Kormi is somehow hired, rehired, assigned or retained in contravention of this Agreement, to terminate Kormi's employment, assignment or retention including any agreement for same, in each case without cost or obligation except as and to the extent expressly provided in Section 12(c) below.

c) Without limiting the foregoing in any way, in the event that Kormi at any time is or becomes employed by an entity that subsequently directly or indirectly is acquired by or merges with Deloitte Consulting or any of the other Deloitte Entities (an 'Acquired/Merged Entity'), Deloitte Consulting or its Acquired/Merged Entity can terminate Kormi's employment (including if such employment is with any of the Deloitte Entities) and this Agreement shall constitute good cause and a legitimate and non-discriminatory basis for doing so. In that event, such termination of Kormi's employment will be treated for severance and other benefit purposes (to the extent permitted under applicable plans, policies and law) as an economic postmerger/acquisition layoff. The Parties understand and agree that Deloitte Consulting or its Acquired/Merged Entity shall not be obligated to create or offer any particular type or minimum of severance or other benefits above, but rather shall, under the foregoing circumstances, allow Kormi to receive the same severance and other benefits, as applicable, as other similarly

situated employees (i.e., with comparable titles and years of experience) laid off in that acquisition or merger by Deloitte Consulting and any such severance or other benefit would be conditioned on Kormi's obligation to agree to and abide by the same terms and conditions as required by any severance plan or policy generally applicable to such other similarly situated employees (including without limitation any generally applicable requirement to sign a release of claims as a condition of any such severance or other benefit).

d) If Deloitte Consulting or any of the other Deloitte Entities engages a contractor that employs or has retained Kormi (whether directly or through any subcontractor), Deloitte Consulting or any of the other Deloitte Entities can instruct the contractor that Kormi is not to work on the engagement as a condition of the engagement, but shall not request that the contractor terminate Kormi's employment with such contractor.

[182] 17–19.

In Section II of her report, Graham opines that had Kormi not signed the 2014 settlement agreement, there is a "high probability" that she would have obtained certain titles and salary ranges. [444-5] 10, 14. But at her deposition, Graham testified that she is not offering an opinion that Plaintiff lost out on certain dollar figures as a result of the settlement aIgreement (despite the chart that appears as Exhibit 4 to Graham's report with specific dollar figures). [444-6] (Tr. 84:21–24; 85:1–22).

With an emphasis on Section I of Graham's report, defendants identify the flaw in Graham's methodology "driving all of her conclusions" as Graham's "conclusion that the 'no future employment' clause is a non-compete agreement[.]" [444] 43. *See also* [464] 21 ("Graham equates the subject provision in the Underlying Settlement Agreement to a non-compete provision. This is akin to equating a grape to a carrot."), 22 ("[Graham] goes from the underlying settlement clause as Point A, to a non-compete agreement as Point B, to a requirement to disclose the non-compete or be in jeopardy for not disclosing it as Point C, to being unemployable as Point D. But her methodology crumbles when one realizes that one cannot actually go from Point A to Point B."). Plaintiff's opposition brief provides little argument on this point, simply stating that "[t]his is not a methodological 'flaw' worthy of a *Daubert*-related motion": "If Defendants are asserting that the employment restrictions in a 'non-compete' provision are not comparable to the 'No Future Employment' clause, that is the subject of cross examination and closing argument." [460] 21–22.

Defendants assert that the "no future employment" provision in paragraph 12(a) of the settlement agreement "can only be described as a <u>pro</u>-compete agreement

because it allows her to work for Deloitte's competitors, and it was methodological error for Graham to attempt analogy between legal polar opposites." [444] 44 (emphasis in original). *See also* [464] [21] ("Not only is the subject provision not a non-compete clause, it is actually a please-do-compete clause."). In contrast, Graham throughout her report and in her deposition testimony refers to this same provision as a non-compete provision.

In defining and articulating what noncompetition contracts, agreements, and covenants are, Black's Law Dictionary provides the following:

> A promise, usu. in a sale-of-business, partnership, or employment contract, not to engage in the same type of business for a stated time in the same market as the buyer, partner, or employer.

> Noncompetition covenants are valid to protect business goodwill in the sale of a company. In employment contexts, requiring the employee, after leaving the employment, not to do a particular type of work, they are disfavored as restraints of trade. Courts generally enforce them for the duration of the relationship, but provisions that extend beyond that relationship must be reasonable in scope, time, and territory.

Covenant, *Black's Law Dictionary* (11th ed. 2019). The "no-future employment" condition in the settlement agreement does not require plaintiff "not to engage in the same type of business for a stated time in the same market as" her former employer. Nor is it "requiring the employee," here, plaintiff, "after leaving the employment, not to do a particular type of work[.]"

Graham's deposition testimony confirms her incorrect impression that the "no future employment" clause in Section 12 is a non-compete provision:

> Q.    Would you consider the language that was in this particular settlement agreement involving Ms. Kormi to be a noncompete clause?

> A.    The word noncompete means an agreement not to compete between an employer and an employee, and looking at the terms in that Section 12, it was a highly restrictive employee agreement between a former employee and the employer. That would be a noncompete.

[444-6] 9 (Tr. 30:1–9). This is not just a matter of Graham's choice of words. A non-compete and a no-rehire are not synonymous. Even if both types of conditions may constitute a "highly restrictive employee agreement between a former employee and

23

the employer" because of the limitations imposed on the employee, that does not mean the two covenants are the same.

But the Court recognizes that Graham is likely attempting to liken the restraints inherent in the "no future employment" sections to those imposed by non-compete provisions. For example, citing Deloitte's website, Graham's report states that Deloitte "is 'one of the largest professional services organizations in the United States . . . providing services to over 80 percent of the Fortune 500,' with 'a key component of Deloitte LLP's strategy is growth through acquisition,' and 'Deloitte has more than 263,900 professionals at member firms delivering services . . . in more than 150 countries and territories.'" [444-5] 6 (alterations in original). Graham opines that "[t]he consequence of not limiting this Agreement's scope to just Deloitte Consulting basically leaves Kormi with very limited employment opportunities in the consulting industry." [*Id.*] Although not explicitly stated in Graham's report this way, the implication appears to be that due to Deloitte's size and prevalence in the consulting industry, as well as its potential future growth, plaintiff's future employment within the consulting industry is severely limited in a way similar to a non-compete's restrictions on an individual's abilities to work in a certain industry.

In opining that the "no rehire" conditions are "unreasonable, unprecedented, and caused harm to" plaintiff, Graham relies on "fairly standard practice[s]" and data from non-compete agreements. In other words, Graham applies the industry standards and practices of non-compete agreements to the "no rehire" provision in the settlement agreement at Section 12. The same is true for Graham's other opinions. [*Id.*] 7, 8, 9. The report also opines on the imposed duration of the "no future employment" condition, asserting that although the provision expires after eleven years, "[i]t is highly irregular for even a senior non-owner executive to receive more than a two year non-compete, which is in line with *Society for Human Resource Management's (SHRM)* November 28, 2017 article 'Are Noncompete Agreements Right for You?' by Rita Zeidner." [*Id.*] 9. Graham simply equates the no rehire with a non-compete with no explanation or even acknowledgement of how the two differ or the different circumstances surrounding each. Rather, what Graham has presented in her report and deposition testimony are clear statements that she considers the settlement agreement's "no-rehire" condition *to be* a non-compete.

But all of these points raised by the defense go to the weight of Graham's testimony, as opposed to her methodology. The Seventh Circuit has acknowledged that even "'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). *See also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013) ("An expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt. It is the role of the jury to weigh these sources of doubt."). "The district court holds broad discretion in its gatekeeper

function of determining the relevance and reliability of the expert opinion testimony." *Krik*, 870 F.3d at 674 (citing *Kumho Tire Co.*, 526 U.S. at 141). And "the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 142 (emphasis in original). "Rejection of expert testimony is the exception, not the rule." *Mill Creek Country Club, Inc. v. Evergreen All. Golf Ltd., LP*, No. 19 C 1971, 2023 WL 2838536, at *3 (N.D. Ill. Apr. 7, 2023) (citing Fed. R. Evid. 702, Advisory Comm. Notes (2000)). All of these proposed flaws in Graham's terminology, comparisons, and opinions raised by the defense will be brought out on cross examination, as they were during her deposition. The Court is also not concerned that these flaws will confuse the jury.[10] For these reasons, the defendants' motion to exclude Graham is denied.

## IV. Plaintiff's Expert-Related Motions *in Limine* [448]

### A. David Rolewick

Defendants produce Illinois attorney David Rolewick as their legal expert to opine on how a reasonably careful attorney would act under the circumstances and whether the specific actions of defendants in the underlying case were in keeping with that standard. *See* [453] 2, 4; [448] 13–18 (expert report and resume of David Rolewick). *Compare* [444-1] 3 (plaintiff's expert Bucheit proffered to opine on the knowledge, skill, and care a reasonably careful lawyer would have exercised under the circumstances). Plaintiff seeks to bar and/or limit the scope of Rolewick's expert testimony.

### 1. Overarching Objection to Rolewick's Report as Deficient Under Rule 26

Plaintiff first argues as a threshold matter that Rolewick's report does not supply the basis and reasons for his opinions or the data he considered in forming his opinions. [448] 2 (citing Fed. R. Civ. P. 26). Plaintiff includes this "basis for exclusion" in several objections to specific statements made in Rolewick's report.

Rule 26 requires expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). "Expert reports cannot be 'sketchy, vague, or preliminary in nature.'" *Chappel v. SBC-Ameritech*, 2007 WL 2076028, at *1 (N.D. Ill. July 13, 2007) (quoting *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998)). "Rather, expert reports must be 'detailed and complete' so that 'opposing counsel is not forced to

---

[10] "[T]he Supreme Court's overriding concern in *Daubert* was with the problem of jury exposure to confusing and unreliable expert testimony." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F.Supp.2d 1104, 1122 (N.D. Ill. 2005) (citing *Daubert*, 509 U.S. at 595–97).

depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Id.* (quoting *Salgado by Salgado*, 150 F.3d at 741 n.6). "The consequence of non-compliance with Rule 26(a)(2)(B) is 'exclusion of an expert's testimony ... "unless the failure was substantially justified or is harmless."'" *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) (quoting *Gicla v. United States*, 572 F.3d 407, 410 (7th Cir. 2009), quoting Fed. R. Civ. P. 37(c)(1)). *See also Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) ("The consequences for violating these rules can be dire. Under Rule 37(c)(1), '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness ... at a trial, unless the failure was substantially justified or is harmless.'").

Rolewick's expert report begins with a list of the documents he reviewed before providing his opinions on whether defendants' conduct breached the standard of care required of them or their fiduciary duty as plaintiff's counsel. [448] 13–14. This list includes the opinion of plaintiff's expert, Mary Robinson; the transcripts of defendants', plaintiff's, and plaintiff's first attorney's depositions and accompanying exhibits; and client emails produced by Defendant Choate. [*Id.*] Rolewick's report states that he "also reviewed case law that [he] considered relevant to the claims in the case." [*Id.*] 14.

In her reply brief, plaintiff criticizes Rolewick's report for failing to list or mention the case law he reviewed with any specificity. [462] 10. "But an expert report need not cover every detail of what an expert might say in his or her forthcoming testimony. The purpose of an expert report 'is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion ... so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary.'" *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, 379 F.Supp.3d 687, 703 n.8 (N.D. Ill. 2019) (alteration in original) (quoting *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)). *See Smith v. City of Chi.*, No. 15-cv-03467, 2019 WL 4825232, at *5 (N.D. Ill. Oct. 1, 2019) (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010)) (same). *See also Walsh*, 583 F.3d at 995 ("In our view, the district court erred in concluding that whatever flaws existed in the expert reports that the Walshes submitted went to their admissibility, as opposed to their weight. When one bears in mind the purpose of the Rule 26 reports, there is no reason to find that these reports were insufficient to alert the defendants to the best strategy for combating the Walshes' case."); *Duro Inc. v. Walton*, 2021 WL 4453741, at *12 (N.D. Ind. Sept. 29, 2021) (explaining that the reason for Rule 26's "disclosure requirement is so that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial'") (quoting *Salgado by Salgado*, 150 F.3d at 741 n.6). Notably, after receiving disclosure of Rolewick's expert report, plaintiff did not depose Rolewick. *See Richman v. Sheahan*, 415 F.Supp.2d 929, 940 (2006) (stating that "by waiting until after the close of discovery, the plaintiff has waived any conceivable

claim that the reports adversely affected their ability to depose the expert"). The Court will not exclude Rolewick based on this general objection.

## 2. Specific Individual Statements in Rolewick's Report

Plaintiff's motion includes a chart of eleven statements that she argues the Court must exclude from Rolewick's report and bar from Rolewick's testimony. [448] 2–4 (citing [448] 13–15). The Court presents and addresses these challenges in the format provided by plaintiff, as well as with defendants' responses. *See* [453] 4–8.

First, several of the statements that plaintiff seeks to exclude involve Rolewick's opinions on what point defendants owed plaintiff a fiduciary duty and the validity of the assignment. Now that the Court has ruled as a matter of law that defendants owed no fiduciary duty to plaintiff at the time of the assignment and that the assignment itself was not void, *see* [482] 3–13, these topics and any related objections are no longer at issue:

- "[A] as [sic] attorneys who were considering engagement to represent a potential client they did not yet have a fiduciary relationship with Ms. Kormi and were therefore not obligated to advise her in writing to seek the advice of other counsel before signing and entering into a contract for legal services with them."
- "The engagement agreement and assignment of attorney fees claim entered into by Ms. Kormi and the defendants is not prohibited by case law in the Seventh Circuit Court of Appeals and the assignment of the attorney fees claim is suggested to attorneys in at least one Seventh Circuit Court of Appeals opinion and recognized in other opinions."
- "The assignment 'does not violate the Illinois Rules of Professional Conduct; and even if it did, it would be enforceable.'"
- "The Assignment 'did not violate any rule of law, since the decisions of the Court of Appeals of the Seventh Circuit is the law of the Seventh Circuit until it is otherwise determined by the Court of Appeals of the Seventh Circuit en banc or the United States Supreme Court.'"
- "[N]or did the defendants taking the assignment breached the standard of care imposed on lawyers practicing in Illinois."

[448] 2–4 (citing [448] 13–15). Accordingly, the Court denies plaintiff's requests to exclude these statements as moot.

On the remaining objections, the Court rules as follows.

| Portion of Challenged Rolewick Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
|  |  |  |

| | | |
|---|---|---|
| Page 2: "The defendants did not put themselves in a position where their interests and that of their client were adverse." | This is a fact question for the jury. | The opinion is not fully stated by Plaintiff. . . . This explanation of his opinion is the method endorsed by the Seventh Circuit, as he explains why the Defendants were allowed to negotiate the transfer of the assignment and not run afoul of their fiduciary obligations, i.e. elevate their interests over the clients. |

As defendants point out, plaintiff's motion does not quote the entire sentence from Rolewick's report. [453] 5. Rolewick's report states that "*[b]y taking an assignment of Ms. Kormi's attorney fees claim in her suit against Deloitte*, the defendants did not put themselves in a position where their interests and that of their client were adverse." [448] 14 (emphasis added). Immediately following that sentence, Rolewick opines that "[t]he contingent fee portion of the engagement agreement negated any adversity of shifting settlement amounts away from the attorney fee settlement in favor of the basic settlement amount." *Id.* Read in full, this is another opinion relating to the assignment, which the Court has ruled is not void as a matter of law and on which there is no longer any need for experts to opine during trial. Accordingly, this challenge is denied as moot.

| Portion of Challenged Rolewick Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 3: "It should also be noted that a contract for legal services entered into by an attorney and her client is not necessarily rendered unenforceable in all cases if it violates the rules of professional conduct." | Speculation unrelated to any facts or other basis in support thereof. | No objection. |

Plaintiff challenges this statement as speculation unrelated to any facts or other basis in support thereof. [448] 3 (citing [448] 15). Defendants state that they

have no objection. [453] 6. Accordingly, defendants are barred from eliciting this testimony from Rolewick at trial.

| Portion of Challenged Rolewick Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 3: "Having accomplished what they concluded was the best possible result for their client through negotiations, they had a right to withdraw if their client refused their advice which was based on their reasonable belief that trying the case had a high likelihood of resulting in a less favorable result for their client or failure" | The purported opinion is not tied to a date, so the trier of fact cannot determine if Rolewick is referring to the $150,000 offer of judgment, or the much higher settlement offer that was made in September, 2014.<br><br>Moreover, Defendants never sought to withdraw; they only threatened to withdraw. The opinion does not identify any standard of care or duty as to when or whether an attorney may appropriately threaten to withdraw. | The opinion is based on Mr. Rolewick's review of thousands of pages of testimony and email exchanges between the Defendant attorneys and Plaintiff. Mr. Rolewick has linked his review of records, his experience as an attorney to the facts. He has a basis for his opinion. Plaintiff has the opportunity to crossexamine Mr. Rolewick. A court examining a *Daubert* challenge is a gatekeeper, not an arbiter of truth: "The key to the gate is not the ultimate correctness of the expert's conclusions." *Schultz v. Azko Nobel Paints LLC*, 721 F.3d 426, 431 (7th Cir. 2013) |

Plaintiff's first and second objections to this statement (that it is not tied to a date and that defendants "never sought to withdraw; they only threatened to withdraw") do not constitute reasons to exclude the expert testimony. Rather, plaintiff will have the chance to cross-examine Rolewick at trial to clarify these points.

Plaintiff also raises her overarching objection that this statement "does not identify any standard of care or duty as to when or whether an attorney may appropriately threaten to withdraw." [448] 3. More specifically, Rolewick's report does not identify the standard for an attorney's "right to withdraw." It is clear to the Court that Rolewick is a seasoned attorney who is applying the general standard of what a reasonable attorney would do under the circumstances, just as plaintiff's

expert, Bucheit, does in his report. Again, this is not a reason to exclude Rolewick's testimony and opinions as inadmissible, but rather a purported weakness in Rolewick's report that goes to the weight of the evidence before the jury. *See Walsh*, 583 F.3d at 992, 995 ("In our view, the district court erred in concluding that whatever flaws existed in the expert reports that the Walshes submitted went to their admissibility, as opposed to their weight."). Plaintiff's request to exclude this opinion is denied.

Finally, although not explicitly identified as such, statements in rows 9, 10, and 11 in plaintiff's chart all appear to involve *Daubert* challenges. Plaintiff's expert-related motions *in limine* do not mention *Daubert* or the applicable standards. *See* [448] 1–2. However, plaintiff's objections to these last three statements in her chart seeking to limit Rolewick's expert testimony include (among other criticisms) attacks on Rolewick's qualifications. [448] 4. *See* [453] 1 (defendants' opposition brief demonstrating they are also apparently not aware that plaintiff raises these challenges: "In this case, Plaintiff does not dispute that both Mr. Rolewick and Mr. DeGrand are qualified as experts by knowledge, skill, experience, training or education."). Plaintiff's reply brief does not mention *Daubert* either or provide any helpful argument. *See* [462].

"In *Daubert*, the Supreme Court interpreted Rule 702 to require 'the district court to act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.'" *Gopalratnam*, 877 F.3d at 778 (quoting *Krik*, 870 F.3d at 674). "In performing its gatekeeper role under Rule 702 and *Daubert*, 'the district court must engage in a three-step analysis before admitting expert testimony.'" *Id.* at 779 (quoting *Myers*, 629 F.3d at 644). Under the first prong of this analysis, the Court "must determine whether the witness is qualified[.]" *Id.* (quoting *Myers*, 629 F.3d at 644).

"In regard to qualifications, Federal Rule of Evidence 702 allows parties to introduce expert opinions if the expert has the requisite 'knowledge, skill, experience, training, or education.'" *Client Funding Sols. Corp.*, 943 F.Supp.2d at 859 (quoting Fed. R. Evid. 702). "Anyone who has relevant expertise and can offer responsible opinion testimony that is helpful to a judge or jury may qualify as an expert witness." *Id.* (citing *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)). "In assessing an expert's qualifications, a court should consider the proposed expert's full range of education, experience, and training." *Id.* (citing *LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F.Supp.2d 940, 951 (N.D. Ill. 2009)). "The question we must ask is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for [him] to answer a specific question.'" *Gayton*, 593 F.3d at 617 (alteration in original) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "Because we are not concerned with the witness's general qualifications but instead with his 'foundation for ... answer[ing] a specific question[,] ... we must look at each of the conclusions [the expert] draws

individually to see if he has the adequate education, skill, and training to reach them.'" *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016) (alterations in original) (quoting *Gayton*, 593 F.3d at 617). "This fact-intensive inquiry depends in part on the area of specialty and the scope of the opinion expressed . . . ." *Rivera v. Guevara*, No. 12-CV-04428, 2018 WL 3093339, at *6 (N.D. Ill. June 22, 2018).

As a whole, the Court agrees that Rolewick's report is fairly bare bones and does not analyze or refer to the facts of the case with much specificity. *See Landeen v. PhoneBILLit, Inc.*, 519 F.Supp.2d 844, 848 (S.D. Ind. Sept. 11, 2007) (agreeing that the expert's report was "nothing but legal conclusions without factual foundation and without evidence that [the expert was] unusually qualified to testify to the standard of care for a lawyer"). "However, the Seventh Circuit has ruled that the nature of the statements alone is not sufficient justification to preclude the testimony because Federal Rule of Evidence 705 . . . 'allows experts to present naked opinions.'" *Id.* (quoting *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989)).[11] *See also supra* IV.A.1 (Court's ruling declining to exclude Rolewick's expert report based on plaintiff's general objection that Rolewick's report is deficient under Rule 26).

| Portion of Challenged Rolewick Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 3: "The defendants provided clear analysis based on their study of provable facts, experience and knowledge upon which their client could then make an informed decision." | The facts upon which this opinion is based are undisclosed. Moreover, Rolewick is not qualified to opine on whether the client was adequately advised to make an informed decision, nor qualified to opine about whether any consent the Defendants extracted from the Plaintiff was "informed consent" based on the Illinois Rules of Professional Conduct.<br><br>Furthermore, the opinion presents a fact question for the jury (based on | Under Rule 703, Rolewick has provided the basis for his opinions, namely his review of thousands of pages of deposition testimony and emails. The opinion is the type permitted by the Seventh Circuit. *United States v. Davis*, 471 F.3dat 789. |

---

[11] *See* Fed. R. Evid. 705 ("Unless the court orders otherwise, an expert may state an opinion–and give the reasons for it–without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.").

| | facts not disclosed in the opinion). | |
|---|---|---|

Plaintiff argues this opinion should be excluded because, *inter alia*, Rolewick is not qualified to opine on whether the client was adequately advised to make an informed decision, nor qualified to opine about whether any consent defendants extracted from plaintiff was "informed consent" based on the Illinois Rules of Professional Conduct. [448] 4. The Court surmises that this refers to Illinois Rules of Professional Conduct 1.0(e) and 1.4. Ill. Sup. Ct. R. 1.0(e), 1.4 (2010).

"[I]n a legal malpractice suit, an expert on the standard of professional care does not necessarily need to be qualified by experience in the particular specialty; a lawyer may instead be qualified by studying the law, i.e., by 'knowledge' rather than 'experience' under Rule 702, but general legal training and even standing in the local legal community do not always qualify a lawyer to opine on the standard of professional care." *Rivera*, 2018 WL 3093339, at *6 (collecting and comparing cases). In *Crim*, for example, the court granted a motion to exclude expert testimony because although the attorney expert "ha[d] more than two decades of experience as a successful trial lawyer, [he] ha[d] not demonstrated that he ha[d] any particular skill, experience, education, or training in the often specialized and complex matters of professional responsibility." *Crim*, 943 F.Supp.2d at 862–63. By contrast, in *Cox*, the court found that although it was true that the proposed expert "lack[ed] experience in prosecuting or defending legal malpractice or attorney disciplinary actions," the expert nevertheless had "significant practical experience representing clients, particularly in commercial transactions," and the instant question was whether the attorneys met the standard of care when they represented their clients in a real estate transaction. *Cox as Tr. for Est. of Cent. Ill. Energy Coop. v. Evans*, 457 F.Supp.3d 634, 647 (C.D. Ill. 2020). The court noted that "[a]s a practicing attorney, [the expert] would have been required to understand the rules of professional conduct governing his practice of law and to follow those rules. Those obligations encompassed the dispute at issue [t]here—ascertaining the standard of care for an attorney." *Id.* The court therefore found that the defendant satisfied its burden of establishing that the expert possessed the requisite knowledge and experience to opine on whether the attorneys met the standard of care. *Id.* (quoting *Hall*, 840 F.3d at 929 ("The fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility.")).

The Court denies plaintiff's request to exclude this statement. At the time he authored his report, Rolewick was an Illinois-licensed attorney who had been practicing and representing clients in Illinois for approximately forty-three years. [448] 16–18. It is clear to the Court that Rolewick is a seasoned attorney who is applying the general standard of what a reasonable attorney would do under the circumstances, just as plaintiff's expert, Bucheit, does in his report. And any criticism

that Rolewick is applying his own experience as a general litigator rather than any specialized knowledge of ethics and the Illinois Rules of Professional Conduct goes toward weight rather than admissibility.

Finally, in challenging the following two statements from Rolewick's report, plaintiff argues there is no basis for Rolewick's opinions and that he is not qualified to offer these opinions because he is not an expert in employment law litigation. [448] 4.

| Portion of Challenged Rolewick Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 3: "Their experienced belief of the likely result of trial and their client's failure to accept their opinion and recommendation could render their continued engagement unreasonably difficult." | Defendants were engaged to take Plaintiff's case to trial if an acceptable settlement could not be reached.<br><br>Rejecting a settlement offer does not render an engagement that contemplates a trial "unreasonably difficult."<br><br>Moreover, the opinion does not include the expert's assessment of the standard applicable to an "unreasonably difficult" attorney-client relationship.<br><br>Furthermore, Rolewick is not an expert in employment law litigation and is not qualified to evaluate or validate the Defendants "experienced belief." | Rolewick is qualified by experience to opine when the lawyer/client relationship becomes unreasonably difficult and its effect on continued representation. As set forth in his resume, he has background and experience in litigated and non-litigated matters. He has experience in representing clients. He has knowledge regarding the Rules of Professional Conduct. *Cox as Trustee v. Evans*, 457 F.Supp.3d 634, 647 (C.D.IL 2020) (attorney in Illinois required to understand the Rules of Professional Conduct governing his practice). Furthermore, whether an expert is a "specialist" goes to weight not admissibility. *Id.* The opinion is the type permitted by the Seventh Circuit. *United States v. Davis*, 471 F.3d at 789. |

| | | |
|---|---|---|
| Page 3: "The high likelihood of a trial result being less satisfactory than the settlement offer was not in the interest of the client or her attorneys." | There is no basis for Rolewick's assessment of the likelihood of success in the underlying case. Rolewick is not offered as an expert in employment law litigation. He is offered as an expert concerning ethical duties. | Rolewick relied on the data listed in 703. Including deposition transcripts and exhibits thereto. *See also Cox*, supra, the purported expertise in the field of employment law goes to weight not admissibility. |

There is an important distinction to be made in legal malpractice cases as to expert testimony opining on the merits of the underlying case-within-a-case versus testimony as to the standard of what a reasonable attorney would have done under the circumstances during representation of the client in the underlying case. Rolewick can testify that it is difficult for an attorney to continue representing a client who does not accept the attorney's advice or opinions. Rolewick is not opining on the merits of that advice or those opinions as it relates to the facts of the underlying employment case. So too can Rolewick testify that, assuming defendants' experienced belief of the likely result of trial to be true, defendants acted as reasonably careful attorneys would have under the circumstances. Rolewick is not opining on the accuracy or correctness of defendants' valuation of the underlying employment case or defendant's conclusions and opinions on the likely result of trial. Again, any criticism that Rolewick is applying his own experience as a general litigator and not as an employment lawyer can be emphasized on cross examination. It goes toward the weight of Rolewick's expert opinion testimony, not admissibility. Plaintiff has not established that under *Daubert*, Rolewick is not qualified to opine on the knowledge, skill, and care a reasonably careful lawyer would have exercised under the circumstances.

* * * * * *

As detailed above, the Court grants in part and denies in part plaintiff's motion to bar and/or limit the scope of Rolewick's expert testimony. The Court reiterates that Rolewick may not testify at trial as to legal conclusions by, for example, stating that defendants did not breach their fiduciary duties to plaintiff or did not breach the standard of care imposed on them as practicing attorneys in representing plaintiff in the underlying lawsuit. *See* [448] 14.

### B. Luke DeGrand

Defendants produce Luke DeGrand as an expert to opine on how defendants[12] handled aspects of the underlying litigation and settlement negotiations, as well as to respond to plaintiff's expert Bucheit. DeGrand Report, p. 1.[13] The Court notes that DeGrand was not deposed in this case.

Plaintiff argues DeGrand's report is "rife with inadmissible testimony and should be limited in various ways." [448] 5. Plaintiff provides arguments in a narrative format before turning again to a chart of individual statements from DeGrand's report that plaintiff asserts the Court should exclude. In her reply brief, plaintiff acknowledges that based on the parties' briefing, it appears that with respect to Bucheit and DeGrand, at least, "the better course is to leave the experts to defend their opinions on cross-examination." [462] 12.

First, plaintiff criticizes DeGrand for providing his own summary/statement of the facts relating to the underlying case, and for drawing conclusions of ultimate facts. [448] 5 (citing DeGrand Report, p. 22). *See also* [*id.*] 7 (arguing that "DeGrand inappropriately offers opinions on ultimate questions for fact, thus invading the province of the jury"). Plaintiff argues it is not for the expert to provide facts, as that invades the province of the jury. Plaintiff also asserts that DeGrand's "narrative cannot be offered as a substitute or summary of evidence that may have been presented in the underlying case." [448] 5. As defendants point out, plaintiff cites no authority in support of her assertion. [453] 8.

DeGrand's summary in his report of the relevant facts is not an impermissible "application of the law to the facts,' which 'invades the province of . . . the jury[.]" *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F.Supp.3d 1029, 1097 (N.D. Ill. 2022) (quoting *Anderson v. City of Chi.*, 454 F. Supp. 3d 808, 819 (N.D. Ill. 2020)). Rather, it reflects compliance with Rule 26's requirement that expert reports not only contain "a complete statement of all opinions the witness will express" but also must include "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Plaintiff's expert, Bucheit, also includes a summary of facts in his expert report. *See* [444-1] 4–6, 9–14.

Second, plaintiff points out that DeGrand's report includes a three-page discussion of the mediation process and emphasizes the Court's March 12, 2024 ruling as to the mediation. [448] 5–6. *See* [440]. Plaintiff requests that the Court bar

---

[12] DeGrand's expert report specifically states that he was "retained by Bryan J. Kirsch of the Law Offices of Edward J. Kozel to review and render opinions regarding aspects of the handling of litigation and settlement negotiations *by attorney David Lee* . . . ." DeGrand Report, p. 1 (emphasis added). DeGrand's report nevertheless includes Defendant Choate in discussions of the case and actions taken.

[13] DeGrand's expert report was originally filed on the docket but withdrawn after the parties and Judge Schenkier agreed it contained a substantial amount of confidential information. *See* [141].

DeGrand "from discussing any other 'facts' which the Court has found inadmissible through the date of his testimony." [448] 5–6. The Court expects the parties to abide by its rulings and to ensure that their experts do not run afoul of any of the Court's applicable pretrial orders.

Third, plaintiff argues that DeGrand should be barred from testifying to any part of the opinions expressed in Section III.A of his report. [448] 7 (citing DeGrand Report, pp. 33–44). Plaintiff contends that DeGrand offers "impermissible opinions to the effect that the settlement" in the underlying case was "objectively reasonable." [*Id.*] 6 (citing DeGrand Report, p. 33). Specifically, plaintiff criticizes DeGrand's application of the test for whether a decision to settle is reasonable as articulated in *Daily*: "whether, considering the totality of the circumstances, a prudent litigant in the position of the plaintiffs would have chosen to settle." DeGrand Report, p. 33 (quoting *Daily v. Greensfelder, Hemker & Gale, P.C.*, 98 N.E.3d 604, 616 (Ill. App. Ct. 2018)). Plaintiff argues that "the test the Court should apply is whether 'the plaintiff can show that [she] settled for a lesser amount than [she] could reasonably expect without the malpractice.'" [448] 6 (alterations in original) (quoting *Merritt v. Goldenberg*, 841 N.E.2d 1003, 1010 (Ill. App. Ct. 2005)).

Section III.A of DeGrand's report provides his opinion, to a reasonable degree of professional certainty, that "the settlement that Lee and his co-counsel achieved for Kormi in 2014 was objectively reasonable under the circumstances[.]" *See* DeGrand Report, pp. 1, 33–41. Upon reviewing the parties' arguments and the cases cited by each party, the Court is not convinced that DeGrand applied the incorrect law or standard as a matter of law such that this entire section of his expert report should be excluded. Plaintiff appears to criticize DeGrand for only opining on whether the settlement was "reasonable" under the circumstances and characterizes the appropriate question as "whether Plaintiff would have obtained a better result in the underlying case without the breaches of fiduciary duty, divided interests, and coercion that contaminated the Defendants' representation from the outset to the end." [448] 6. This goes to weight but is not a basis to exclude.

And there is nothing to indicate that *Daily* is not good law; the case has not been overturned or questioned and it involves an analysis of "existing Illinois law":

> [I]n Illinois the test for the reasonableness of the decision to settle, as well as the amount of the settlement, is objective rather than subjective. *See Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 56, 385 Ill.Dec. 904, 19 N.E.3d 1100. The test for whether the decision to settle is reasonable is whether, considering the totality of the circumstances, a prudent litigant in the position of the plaintiffs would have chosen to settle. *Id.* As to the reasonableness of the amount of the settlement, the test is—considering the totality of facts surrounding the lawsuit, including the risk of going to trial—what

amount a reasonable litigant in the position of the plaintiffs would have settled for on the merits of the claims of the doctors and SSM in the underlying lawsuit. *See id.*

*Daily*, 98 N.E.3d at 616. *See also CE Design Ltd. v. Franklin Edison Corp.*, 2022 WL 523052, at *6 (Ill. App. Ct. Feb. 22, 2022) (quoting *Daily*). The Court denies plaintiff's request to exclude Section III.A of DeGrand's expert report.

Additionally, plaintiff argues the Court should bar DeGrand's opinion testimony criticizing Bucheit's "incorrect damages calculations" because DeGrand mischaracterizes Bucheit's report. [448] 7–8 (citing DeGrand Report, p. 43). Plaintiff asserts that DeGrand based his opinion on the mistaken belief that Bucheit opined on what plaintiff necessarily would have received in the underlying litigation rather than on Deloitte's "worst day in court." [*Id.*] Plaintiff similarly faults DeGrand's opinions on plaintiff's standard of care expert for cherry-picking citations from a limited number of cases. [*Id.*] 8 (citing DeGrand Report, p. 35). However, these criticisms go toward the weight and credibility of DeGrand's opinion rather than admissibility and are appropriately addressed on cross examination.

Plaintiff provides a table of twenty-one additional statements that she argues are also inadmissible. [448] 8–11. Plaintiff states that some of these statements should be excluded before trial and that the Court "may wish to reserve" ruling on others until DeGrand's testimony. [*Id.*] 8. Plaintiff's chart does not distinguish these two categories and plaintiff does not indicate which objections the Court should rule on during trial. The Court addresses these statements out of the order presented by plaintiff in an effort to group similar objections together.

As plaintiff recognized in her reply brief, it appears that with respect to Bucheit and DeGrand, at least, "the better course is to leave the experts to defend their opinions on cross-examination." [462] 12. The following statements from DeGrand's report that plaintiff challenges are good examples of testimony that is more appropriately attacked on cross examination:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page [2]: "In my opinion, Kormi was well served by Lee's representation. Lee pursued, in a manner that was at once tenacious and professional,… He also demonstrated continued | Improper argument; Improper mischaracterization of evidence; Inadmissible under Rules 402, 403, and 702 | The opinion relates to the standard of care. Whether Lee breached the standard of care is a question of fact for the jury to decide on the basis of expert testimony. Barth, 139 Ill. 2d at 407. |

| | | |
|---|---|---|
| dedication to the client's interests despite client demands that made his job more difficult." | | DeGrand is an experienced employment law attorney and is qualified to analyze, critique, and give opinions about how the underlying case was litigated. See *supra*, 3 c, e, f. If DeGrand's standard-of-care opinions are barred for the reason stated, so too should Plaintiff's witnesses be barred from offering any standard of care opinions. |
| Page 37: "Because Kormi was unable to establish a causal relationship between many of her poor performance evaluations and any protected activity . . ." | Improper opinion that invades the province of the jury in the malpractice action | Kormi testified in the underlying litigation that she was unaware of any animosity toward her by the Deloitte personnel who prepared her performance evaluations, and that testimony negatively affected her ability to prove retaliation, and to prove that her poor performance evaluations were a pretext to discriminatory intent. This is information that forms the basis of an employment lawyer's assessment of the strengths and weaknesses of a case, and in that sense is information relevant to whether Defendants breached the standard of care. See *supra*, 3a,c,e. |

| | | |
|---|---|---|
| Page 44: "These limitations apply outside the context of litigation and settlement agreements; with respect to Kormi's agreement to settle her litigation against Deloitte, these limitations are inapt." | Improper legal opinion that is a question of law for the Court | The opinion relates to the standard of care. Whether Lee breached the standard of care is a question of fact for the jury to decide <u>on the basis of expert testimony</u>. *Barth*, 139 Ill. 2d at 407. If DeGrand's standard-of-care opinions are barred for the reason stated, so too should Bucheit's standard-of-care opinions (Opinions 1, 2, 3 and 7) be barred. See *supra*, 3a,c,e. |

All of these opinions are subject to cross examination and plaintiff has not shown that they are inadmissible.

As to the first row, plaintiff's bases for finding these statements inadmissible are perfunctory and unexplained. For example, plaintiff does not indicate how these statements mischaracterize the evidence. Nor does plaintiff explain why Rules 402 and 403 preclude DeGrand from testifying to these statements. And although plaintiff alleges that these statements are inadmissible under Rule 702, plaintiff does not indicate upon which aspect of Rule 702 she bases her challenge.

"In regard to qualifications, Federal Rule of Evidence 702 allows parties to introduce expert opinions if the expert has the requisite 'knowledge, skill, experience, training, or education.'" *Client Funding Sols. Corp.*, 943 F.Supp.2d at 859 (quoting Fed. R. Evid. 702). And the text of the rule states that a witness who is qualified as an expert may testify if the proponent of the expert demonstrates that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Court does not know under which of these aspects plaintiff challenges DeGrand as an expert or DeGrand's testimony as running afoul of Rule 702. *But see, e.g.*, DeGrand Report, p. 84 (DeGrand's resume indicating his experience as a practicing employment law attorney in Illinois).

As to row two, this statement is found in the portion of DeGrand's report opining on the merits and deficiencies of the underlying case and defendants' assessment of the likely outcome of summary judgment. DeGrand is not opining on a question for the jury and he can be cross examined on these statements.

The statement in row three is also admissible opinion and subject to cross examination.

But plaintiff also challenges many of DeGrand's statements as providing impermissible legal conclusions, which DeGrand is prohibited from testifying to at trial:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page [1]: "Lee did not commit legal malpractice in recommending that settlement to his client." | Improper legal opinion that is a question of fact for the jury to decide | The opinion relates to the standard of care. Whether Lee breached the standard of care is a question of fact for the jury to decide on the basis of expert testimony. *Barth*, 139 Ill. 2dat [sic] 407. If DeGrand's standard-of-care opinions are barred for the reason stated, so too should Plaintiff's expert witnesses be barred from offering any standard-of-care opinions. |
| Page [1]: "The Bucheit report contains no opinion that the 2014 settlement was unreasonable or that Kormi's claims had | Improper legal opinion and argument that is a question of law for the Court in the malpractice case. | This is a statement of fact, not opinion. The Bucheit report in fact does not set forth the subject opinions. Experts are permitted to give |

| | | |
|---|---|---|
| ultimate merit, and in my view such opinions are a prerequisite to finding that Kormi was harmed by Lee's conduct." | | opinions about facts. See *supra* 3a. |
| Page [1]: ". . . because Kormi has not shown that she was denied an employment opportunity (or had one terminated) based on Section 12, it does not appear that Kormi is in a position to establish that she was materially harmed by the existence of that contractual provision in any event." | Improper legal opinion. Further, Mr. DeGrand has not been offered as an expert to testify regarding Plaintiff's material harm | DeGrand's opinion relates to damages, which is a question of fact, not of law. *Hanumadass v. Coffield, Ungaretti & Harris*, 311 Ill. App. 3d 94, 101 (1st Dist. 1999). Moreover, DeGrand specifically opined that the terms of the Settlement Agreement were objectively reasonable, and DeGrand must be permitted to explain the bases for that opinion. Additionally, neither Lee's Rule 26(a)(2) disclosure of DeGrand and his opinions, nor DeGrand's opinions themselves, limit the scope of his opinions as suggested by Kormi's objection. If DeGrand's opinions on Kormi's damages are barred for the reason stated, so too should Plaintiffs' experts be barred from offering the same opinions. |
| Page 41: "The Opinions of Plaintiff's Expert to the Contrary Are Speculative and Fail to Establish . . ." | Improper legal opinion that is ultimately a question for the jury to decide; argument | The opinion relates to the standard of care. Whether Lee breached the standard of care is a |

| | | question of fact for the jury to decide <u>on the basis of expert testimony</u>. *Barth*, 139 Ill. 2d at 407. If DeGrand's standard-of-care opinions are barred for the reason stated, so too should Bucheit's standard-of-care opinions (Opinions 1, 2, 3 and 7) be barred. See also *supra*, 3f |
|---|---|---|

As the Court applied to Robinson's and Rolewick's expert reports, and as the Court has stated is applicable to all expert opinions in this case, DeGrand may not testify at trial as to legal conclusions. *See Client Funding Sols. Corp.*, 943 F.Supp.2d at 863; *Webster Bank, N.C.*, 2020 WL 616467, at *4. Opining, for example, that Defendant "Lee did not commit legal malpractice" is an impermissible legal conclusion and DeGrand is barred from testifying to such conclusions at trial.

By contrast, the statements from pages thirty-five through thirty-seven of DeGrand's expert report that plaintiff asserts recite the law do not constitute improper legal opinions:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Pages 35–37: recitation of the law on FMLA interference, FMLA/ADA retaliation, Title VII sex discrimination, Title VII hostile work environment, Title VII retaliation, and ADA discrimination | Improper legal opinions regarding the meaning of statutes and questions of law | These are not opinions but rather contextual recitations that form the basis of an employment lawyer's assessment of the strengths and weaknesses of a case, and in that sense is are facts relevant to whether Defendants breached the standard of care. Further, DeGrand is permitted to testify regarding the factual bases and reasons for his opinions including, *inter alia*, that Plaintiff would not have prevailed |

|  |  | in her underlying claim. See *supra*, 3a,c,e. |
| --- | --- | --- |

Rule 26 requires expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). Plaintiff criticized Rolewick's expert report for failing to provide the legal bases supporting his opinions and for failing to provide reference to specific cases. *See* [448] 2, 3. Although plaintiff does not provide specific examples of the statements that she believes should be barred, the Court has reviewed the pages of DeGrand's report to which plaintiff points and concludes that they do not provide improper legal opinions. Rather, DeGrand is providing context and the basis for his opinions, as well as supporting case cites—information which plaintiff criticizes Rolewick for omitting from his report. The Court denies plaintiff's request to exclude these statements, as DeGrand is permitted to testify to what he reviewed to form his opinions and the basis for those opinions. Of course, nothing in the Court's ruling should be interpreted to mean that the parties are not free to object to expert testimony during trial if they feel it begins to amount to an impermissible instruction on the law. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F.Supp.3d at 1097 (collecting cases).

Next, plaintiff challenges several statements as improper opinions that infringe on factual questions for the jury to decide. [448] 15, 16, 20–21.

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
| --- | --- | --- |
| Page 22: "Deloitte terminated Kormi's employment on June 8, 2010 based on her performance history." | Improper opinion that is a factual question for the jury to decide (the parties dispute why Plaintiff's employment was terminated, as Deloitte provided her with multiple varying reasons) | This is a statement of fact, not opinion. While Kormi may have disputed whether the reason stated by Deloitte for her termination was genuine or pretext, the stated reason from Deloitte was her poor performance reviews. Deloitte's position in this regard is relevant because it is a factor that Lee considered in evaluating the strengths and weaknesses of the |

| | | |
|---|---|---|
| | | underlying case, including settlement and verdict potentials, and in that sense is a fact relevant to whether Lee breached the standard of care. See *supra* 3a,c. |
| Page 32: ". . . Lee and Choate continued to negotiate settlement with counsel for Deloitte. These negotiations were extensive and detailed. . . . Kormi was involved in and kept apprised of these negotiations. . . . By August 11, 2014, Lee and Choate successfully negotiated an increase in Deloitte's monetary offer . . ." | Improper opinion that is a factual question for the jury to decide and is also argument | The opinion relates to the standard of care. Whether Lee breached the standard of care is a question of fact for the jury to decide on the basis of expert testimony. *Barth*, 139 Ill. 2d at 407. If DeGrand's standard-of-care opinions are barred for the reason stated, so too should Plaintiffs' expert witnesses be barred from offering any such opinions. Further, DeGrand must be permitted to testify regarding facts supporting his opinions. See *supra*, 3a,c,e |
| Page 36: "Finally, it does not appear that Holston had the power to hire, fire, demote, discipline or transfer a Senior Consultant like Kormi . . ." | Improper opinion that invades the province of the jury | This is not an opinion but rather a contextual observation that forms the basis of an employment lawyer's assessment of the strengths and weaknesses of a case, and in that sense is an observation relevant to whether Lee breached the standard of care. See *supra*, 3a,c,e. |

| | | |
|---|---|---|
| Page 44: "That, however, was not the intent of [Lee and Choate's] communication." | Improper opinion that is a factual question for the jury to decide | This is not an opinion, but an observation derived from the immediately following sentence, in which DeGrand quotes from an email from Choate to Kormi: "Rather, with time limited to respond to the pending Offer of Judgment, Choate provided Kormi with a 'quick first cut' of a damage and probability analysis, and explicitly noted that a 'much more elaborate damage and probability analysis can be made.' (ChoateProd0034823-25)" It is thus an observation of a fact that provides a basis (amongst others) of DeGrand's opinion that the Defendants did not breach the standard of care in providing this "quick first cut" damages and probability analysis. See *supra*, 3a,c,e. |
| Page 45: "Section 12 of the 2014 settlement agreement (including its sunset provision) was heavily negotiated, with Kormi's extensive involvement and consent." | Improper opinion that is a factual question for the jury to decide; argument | The opinion relates to the standard of care. Whether Lee breached the standard of care is a question of fact for the jury to decide on the basis of expert testimony. *Barth*, 139 Ill. 2d at 407. If DeGrand's standard-of- |

|  |  | care opinions are barred for the reason stated, so too should Bucheit's standard-of-care opinions (Opinions 1, 2, 3 and 7) be barred. See also *supra* 3, a, c, e. |
|---|---|---|

Defendants assert that these are "contextual observations" and not the kinds of facts that will be decided by the jury. Included in Rule 26 is the requirement that expert reports contain "a complete statement of all opinions the witness will express" and "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Furthermore, statements within these portions to which plaintiff objects are also appropriate opinions from DeGrand on the standard of care. *See, e.g.*, [448] 9–10 ("Kormi was involved in and kept apprised of these negotiations."), 11 (opining that that the "no future employment" section of the settlement agreement was "heavily negotiated, with Kormi's extensive involvement and consent"). And these are issues that plaintiff may raise on cross examination. The Court denies plaintiff's request to exclude these statements.

Plaintiff challenges several statements based on relevancy as well:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 24: "On June 12, 2012, Peel sent a settlement demand to then-counsel for Deloitte. In this letter, a copy of which was sent to Kormi, Peel demanded . . ." | Irrelevant under Rules 402 and 403; 2012 settlement demands by attorney who withdrew not relevant to Defendant's conduct and whether they met or failed to meet the requisite standard of care. | This is relevant to DeGrand's opinion that the settlement agreement terms that were ultimately reached were objectively reasonable. See *supra* 3a,c. Further, DeGrand's testimony regarding the settlement negotiations, demands, offers, and mediation will conform to this Court's March 12, 2024 ruling and be limited to that evidence which the Court ruled to be admissible. |
|  |  |  |

| | | |
|---|---|---|
| Pages 35-39: all references to Judge Darrah and his assumed proclivities for ruling on matters, e.g., page 39: "In the period between January 1, 2011 and July 1, 2014, Judge Darrah considered 17 motions for summary judgment in [employment cases] . . . and granted summary judgment in favor of the defense in 11 (approximately 65%) of those cases." | Irrelevant under Fox v. Seiden, 2016 IL App (1st) 141984, ¶ 16 (Ill. App. 1 Dist., 2016) ("The objective in a legal malpractice case is to consider what the result 'should have been' not what the particular underlying trial court would have done.") | *Fox* is inapposite. It involved a hypothetical ruling by the trial court that would have been error and reversible as a matter of law. Kormi does not contend that Judge Darrah's summary judgment rulings in similar cases were error and reversible as a matter of law. Moreover, this is the type of evidence a prudent attorney would consider in assessing the strengths and weaknesses of a similar case, i.e. past rulings from the same Judge who would be making rulings in the case, including settlement and verdict potentials, and in that sense is a fact relevant to whether Lee breached the standard of care. These are facts that DeGrand considered in forming his opinions regarding the likelihood of success in Plaintiff's underlying case. See *supra*, 3e. |
| Page 39: "In the period between January 1, 2011 and July 1, 2014, Judge Darrah considered 17 motions for summary judgment in cases classified as 'civil rights/ employment,' 'civil rights/ disability' and "FMLA." | Irrelevant under Rules 402 and 403; irrelevant under *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 16 (Ill.App. 1 Dist., 2016) ("The objective in a legal malpractice case is to consider what the result | *Fox* is inapposite. It involved a hypothetical ruling by the trial court that would have been error and reversible as a matter of law. Kormi does not contend that Judge Darrah's history of ruling on summary judgment in |

| He granted summary judgment in favor of the defense in 11 (approximately 65%) of those cases." | 'should have been' not what the particular underlying trial court would have done.") | similar cases was error and reversible as a matter of law. Moreover, this is the type of evidence a prudent attorney would consider in assessing the strengths and weaknesses of a similar case, including settlement and verdict potentials, and in that sense is a fact relevant to whether Lee breached the standard of care. These are facts that DeGrand considered in forming his opinions regarding the likelihood of success in Plaintiff's underlying case. See *supra*, 3e. |

The first statement regarding 2012 settlement efforts is part of DeGrand's summary of facts from the underlying case. *See* DeGrand Report, p. 24. This history provides context and relates to plaintiff's allegations surrounding the settlement agreement. Next, DeGrand's report provides these statements about Judge Darrah in opining on the existence of "significant risks that Kormi's claims would not survive summary judgment." DeGrand Report, page 35. DeGrand includes this discussion in response to plaintiff's expert Bucheit's opinion that it is "highly likely" that one or more of plaintiff's claims would have survived summary judgment. The Court thus questions whether "relevance" is the correct objection upon which to challenge these statements; for example, the implications of Judge Darrah's summary judgment statistics on plaintiff's underlying employment case strike the Court as potentially relevant, but speculative. And whether an expert's report amounts to mere speculation is something to be addressed on cross examination. As a result, subject to proper foundation, the Court declines to exclude these statements.

Plaintiff raises two hearsay objections to third party reports and articles cited by DeGrand in his report:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 39: "A 2008 report prepared by the Federal Judicial Center noted that summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation, in employment discrimination cases than other types of litigation." | Hearsay, no exception applies; irrelevant under Rules 402 and 403 | Admissible under Rule 703 and *Grant v. Chemrex, Inc.*, 1997 U.S. Dist. LEXIS 6058, *20 (N.D. Ill., April 23, 1997) (expert witnesses allowed to rely on hearsay in forming their opinions, as long as their opinions are based on the type of evidence reasonably relied on by experts in that particular field); in stark contrast to the failure of Kormi's expert, Bucheit, to employ proper methodology. *See also Adel v. Greensprings of Vermont, Inc.*, 363 F.Supp.2d 683, 692 (D.VT. 2005) ("[A]n expert may expand his or her knowledge by consulting colleagues and journal articles… Thus, as long as an expert witness is building upon a base of expertise, the Federal Rules of Evidence allow an expert to consult journal articles and colleagues when forming an opinion.") Moreover, this is the type of evidence a prudent attorney would consider in assessing the strengths and weaknesses of a similar case, including settlement and verdict |

| | | potentials, and in that sense is a fact relevant to whether Lee breached the standard of care. See *supra*, 3e. |
|---|---|---|
| Page 40: "A 2007 article observed that 'empirical studies on outcomes in employment discrimination litigation all reach the same conclusion: Plaintiffs have little chance of success.' Kotkin, *Outing Outcomes: An Empirical Study of Confidential Employment Discrimination Settlements*, 64 Wash. & Lee L. Rev. 111 (2007)." | Hearsay, no exception applies; irrelevant under Rules 402 and 403 | See immediately preceding position. |

Defendants argue that these statements are admissible under Federal Rule of Evidence 703, which "was intended to liberalize the rules relating to expert testimony," *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 808 (N.D. Ill. 2005), by providing that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, Rule 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods.*, 387 F.Supp.2d at 808 (citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir.2002); *TK–7 Corp. v. The Estate of Barbouti*, 993 F.2d 722, 731–34 (10th Cir. 1993); *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). *See also Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *4 (N.D. Ill. May 16, 2017) (same). "*Daubert* pointed out that Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" *Kumho Tire*, 526 U.S. at 148 (quoting *Daubert*, 509 U.S. at 592) (pointing out that experts may testify to opinions, including those that are not based on firsthand knowledge or observation). "The Rules grant that latitude to all experts, not just to 'scientific' ones." *Id.*

Beyond raising general "hearsay" objections, plaintiff provides no argument on why these two statements are not appropriately included in DeGrand's report under Rule 703. *See* [462] (plaintiff's reply brief). For example, "expert testimony relying on the opinions of others should be rejected if the testifying expert's opinion is too speculative or if the underlying basis is faulty." *Angelopoulos*, 2017 WL 2178504, at *4 (citing *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000)). Plaintiff has not demonstrated that either the 2007 article or the 2008 report cited in DeGrand's report are speculative or faulty. Furthermore, "[u]nder Rule 703, an expert may rely on hearsay in formulating his opinion, but the underlying hearsay is not admissible for the truth of the matter asserted." *Id.* (citing *Loeffel Steel Prods.*, 387 F.Supp.2d at 808). *See TK–7 Corp.*, 993 F.2d at 734 (stating that "the hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted"). Plaintiff provides no argument that defendants or DeGrand are seeking to prove the truth of the articles' assertions that "summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation, in employment discrimination cases than other types of litigation" and/or that "empirical studies on outcomes in employment discrimination litigation all" conclude that "plaintiffs have little chance of success." *See* DeGrand Report, pp. 39–40. While the articles themselves are inadmissible hearsay, DeGrand is permitted to testify that he reviewed these reports as part of a basis for forming his opinions on whether defendants met the standard of care in assessing the strengths and weaknesses of plaintiff's employment case, particularly in the context of summary judgment, trial verdict, and settlement potentials. *Id.* at pp. 33–41.

Finally, plaintiff raises challenges to statements in DeGrand's expert report that relate to other requests made by the parties in this case:

| Portion of Challenged DeGrand Testimony | Bases for Exclusion | Basis for Admissibility |
|---|---|---|
| Page 20: "Deloitte took the position that Kormi's April 5, 2010 email had been fabricated. . . . Kormi was unable to explain the discrepancy." | Subject to non-expert Motion *in Limine* No. 4. No property [sic] foundation; improper assertion of fact. No effort by DeGrand to investigate the truth of Deloitte's position. Beyond the scope of expert testimony. Further irrelevant and subject to Rule 403. | The assertion is not improper – Deloitte actually did take the position that Kormi fabricated evidence. Deloitte's position in this regard is relevant because it is a factor that Lee considered in evaluating the strengths and weaknesses of the underlying case, including settlement and |

| | | verdict potentials, which is proper fodder for expert opinion. See *supra*, 3a,c,e,f. Further, this fact also relevant to whether Lee breached the standard of care. |
|---|---|---|
| Page 38, footnote 25: "Kormi herself testified that her employment with Intuit terminated, not because it was temporary, but because she perceived that she was the victim of national origin discrimination." | Inadmissible "other acts" evidence under Rules 402, 403, and 404(b) | Kormi has told different people different stories as to why her Intuit employment terminated. This evidence is admissible under Rule 608(b). *See also*, Defendants' Opposition to Kormi's Motion *in Limine* No. 4. |
| Page 34: "[Identity of Mediatory] is a respected and experienced judge and mediator; during [his/her] fourteen years on the bench as a United States Magistrate Judge for the Northern District of Illinois, [Mediator] conducted over 1,500 mediations . . ." | Barred by the Court's March 12, 2024 ruling | DeGrand's testimony regarding the settlement negotiations, demands, offers, and mediation will conform to this Court's March 12, 2024 ruling and be limited to that evidence which the Court ruled to be admissible. |

As to the first row, DeGrand includes this information from page twenty of his expert report in his summary of the facts in the record from the underlying employment case. *See* DeGrand Report, pp. 2–23. Plaintiff cites no case law in support of her assertion that DeGrand, as an expert witness, had an obligation to investigate the truth of these facts. Raising doubts and criticisms of an expert is appropriately done on cross examination. So too can plaintiff raise a "no proper foundation" objection to DeGrand's testimony at trial. And DeGrand does not appear to be opining on the truth of Deloitte's position, but rather merely states that this was Deloitte's position. DeGrand Report, p. 20. As for plaintiff's assertion that this statement is subject to plaintiff's Motion *in Limine* No. 4 asking the Court to bar "prior acts" and

propensity evidence under Federal Rule of Evidence 404,[14] the Court has now denied this request as premature and articulated its expectation that the parties are familiar with the Federal Rules of Evidence and will follow the procedures and limitations of these rules during trial. *See supra* I.C. The Court applies the same ruling to the statement in the first row.

Similarly, plaintiff's objection in the second row argues that this statement constitutes inadmissible "other acts" evidence under Rules 402, 403, and 404(b). [448] 10. This information is also the subject of plaintiff's Motion *in Limine* No. 4, which seeks to bar under Rule 404 "purported evidence of Plaintiff's employment experience at Intuit (after she was terminated by Deloitte and before she retained the Defendants) and the reasons/circumstances concerning the termination of her employment." [447] 5. Again, the Court notes that it has denied plaintiff's Motion *in Limine* No. 4 as premature, *see supra* I.C, and applies the same ruling as to the second row.

As to the third row, the Court notes that DeGrand's expert report (like all the expert reports in this case) was authored long before the Court's March 12, 2024 ruling on the 2013 mediation, the mediation privilege, and the evidentiary limitations imposed therein [440]. The Court expects the parties, their witnesses, and their experts to comply with the Court's previous rulings. *See supra* I.A. This testimony is excluded as to the identity and qualifications of the mediator.

## Conclusion

For the foregoing reasons, the Court rules on the following portions of the parties' respective motions *in limine*:

- Plaintiff's Motion in Limine No. 2 is denied;
- Plaintiff's Motion in Limine No. 3 is denied;
- Plaintiff's Motion in Limine No. 4 is denied;
- Defendants' Motion in Limine No. 1 is denied;
- Defendant's Motion in Limine No. 4 is denied;
- Defendants' motion to limit the testimony of Mary Robinson is granted in part and denied in part;
- Defendants' motion to exclude Kathleen Graham as an expert is denied;
- Plaintiff's motion to bar and/or limit the testimony of David Rolewick is granted in part and denied in part; and
- Plaintiff's motion to limit the testimony of Luke DeGrand is granted in part and denied in part.

---

[14] *See* [447] 5 (requesting the Court bar under Rule 404 "purported evidence concerning Deloitte's unproven allegation that Plaintiff had contrived a document in discovery").

In light of the large number of pretrial motions filed by the parties and the Court's piecemeal rulings on those motions, the Court emphasizes that the parties are to holistically apply all of these rulings to their witnesses and exhibits where applicable. The Court further emphasizes its various rulings as to the parties' experts. For example, no expert will be permitted to testify to legal conclusions within the Court's domain, facts that invade the province of the jury, or conclusions contrary to the Court's rulings as to the assignment.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 7, 2024**